1               UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF COLUMBIA

2

     * * * * * * * * * * * * * * *  )
3   UNITED STATES OF AMERICA,    )   Criminal Action
                          )    No. 24-00265
4            Plaintiff,    )
                           )
5    vs.                )
                           )
6   ROBERT P. BURKE, YONGCHUL    )   Washington, D.C.
   "CHARLIE" KIM and MEGHAN      )   September 23, 2024
7   MESSENGER,              )   10:14 a.m.
                           )
8            Defendants.    )
                           )
9   * * * * * * * * * * * * * * *  )

10

11          TRANSCRIPT OF STATUS CONFERENCE
      BEFORE THE HONORABLE TREVOR N. McFADDEN
12         UNITED STATES DISTRICT JUDGE

13

14   APPEARANCES:

15   FOR THE GOVERNMENT:    JOSHUA S. ROTHSTEIN, ESQ.
                       UNITED STATES ATTORNEY'S OFFICE
16                    FOR THE DISTRICT OF COLUMBIA
                      601 D Street, Northwest
17                   Washington, D.C. 20530

18                   KATHRYN E. FIFIELD, ESQ.
                      U.S. DEPARTMENT OF JUSTICE
19                   1301 New York Avenue, Northwest
                      Suite 1000
20                   Washington, D.C. 20530

21

   FOR THE DEFENDANT     TIMOTHY PARLATORE, ESQ.
22        BURKE:       ANTOINETTE QUINN-O'NEILL, ESQ.
                      PARLATORE LAW GROUP, LLP
23                   260 Madison Avenue
                      17th Floor
24                   New York, New York 10016

25

```
 1     APPEARANCES, CONT'D:

 2     FOR THE DEFENDANT          WILLIAM A. BURCK, ESQ.
                    KIM:          AVI PERRY, ESQ.
 3                                QUINN, EMANUEL, URQUHART & SULLIVAN
                                  1300 I Street, Northwest
 4                                Suite 900
                                  Washington, D.C. 20005
 5

 6     FOR THE DEFENDANT          ROCCO F. D'AGOSTINO, ESQ.
                MESSENGER:        LAW OFFICES OF ROCCO F. D'AGOSTINO
 7                                445 Hamilton Avenue
                                  Suite 605
 8                                White Plains, New York 10601

 9
       REPORTED BY:              LISA EDWARDS, RDR, CRR
10                               Official Court Reporter
                                 United States District Court for the
11                                District of Columbia
                                 333 Constitution Avenue, Northwest
12                               Room 6706
                                 Washington, D.C. 20001
13                               (202) 354-3269

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              THE COURTROOM DEPUTY:  Your Honor, this is
 2    Criminal Case 24-265, the United States of America versus
 3    Robert Burke, Yongchul "Charlie" Kim and Meghan Messenger.
 4              Counsel, please come forward to identify
 5    yourselves for the record, starting with the Government.
 6              MS. FIFIELD:  Good morning, your Honor.  Kathryn
 7    Fifield on behalf of the United States.  And with me at
 8    counsel table is AUSA Joshua Rothstein.
 9              THE COURT:  Good morning, folks.
10              MR. PARLATORE:  Good morning, your Honor.  Timothy
11    Parlatore on behalf of Admiral Burke, joined by Toni
12    O'Neill.
13              THE COURT:  Good morning.
14              Good morning, Ms. O'Neill.
15              MR. BURCK:  Good morning, your Honor.  William
16    Burck and Avi Perry for Mr. Kim.
17              THE COURT:  Good morning, folks.
18              MR. D'AGOSTINO:  Good morning, your Honor.  Rocco
19    D'Agostino, attorney for Meghan Messenger.
20              THE COURT:  Good morning, Mr. D'Agostino.
21              And good morning, Ms. Messenger.
22              All right.  We're here primarily on the motion to
23    sever.  I'll tell you where I see things and I'll give you
24    all a brief opportunity to address this.
25              I feel like, A, the late motion on *Bruton* is
```

1   something that would not cause severance.  I mean, if the

2   Government wants to go forward with a joint trial, they

3   suffer the risk that some or all of the statements would be

4   suppressed.  But I would not sever on that basis.  And so I

5   don't think that's really something that we need to focus on

6   now.

7        The arguments about overly prejudicial evidence, a

8   kind of misbalance of evidence, also I frankly was not very

9   convinced by.  So I'm not very interested in hearing

10  arguments on that.

11       I think the closer question is the suggestion of

12  irreconcilable differences between defenses.  Especially I

13  think Mr. Parlatore probably has the best argument among the

14  defense that his client, who's saying, as I understand it,

15  that there was no quid pro quo during his course of

16  employment, whether that -- and while his Co-Defendants are

17  suggesting that there was a quid pro quo, but they believed

18  that it was acceptable, given various indicia they received

19  from Mr. Burke and his colleagues, I think that is a much

20  closer question as to whether this puts Admiral Burke in an

21  untenable situation.

22       So I think we should focus in on that.

23       And, Mr. Parlatore, I'm happy to hear first from

24  you.

25       MR. PARLATORE:  Well, when your Honor begins by

1    saying you think I had the best argument, I'm afraid to bury

2    it by saying anything more.

3            I do think that if you just simply look at the

4    briefings in this case and, you know, the differing

5    arguments between what we've raised versus what the

6    Co-Defendants have raised, I think that that illustrates

7    exactly what would happen during trial; you know, that we

8    have a situation where the Co-Defendant is, you know,

9    characterizing certain things as confessions and that of

10   course we would, you know, not do that.

11           And really you're going to have, you know, very

12   much a situation where, you know, the two Co-Defendants are

13   kind of pointing the fingers at each other and creating an

14   extremely confusing issue for the jury.

15           This is a kind of situation where I guess

16   ordinarily it would be the Government's dream to have two

17   Defendants that are willing to point the finger at each

18   other.  The problem is, neither Defendant, their version of

19   events matches what the Government wants somebody to come in

20   and cooperate and testify to.

21           So --

22           THE COURT:  Well, am I correct you do not expect

23   your client is going to be pointing the finger at anyone?

24   Am I understanding that correctly?

25           MR. PARLATORE:  Not in the context of saying that

1    anybody has committed a crime.

2            You know, there are certainly issues related to --

3    to the extent that emails from Mr. Kim and Ms. Messenger are

4    introduced by the Government, to where my client has a

5    significant interest in undermining their credibility and,

6    you know, attacking the credibility of the declarant, you

7    know, should they not testify in their defense.

8            But as far as, like, actually pointing the finger

9    and saying, you know, that the two of them committed a

10   crime, you know, my client is very adamant nobody committed

11   a crime here.  There was no quid pro quo.  And, you know,

12   that is really irreconcilably oppositional to the position

13   of the Co-Defendants.

14           THE COURT:  So I'm not sure that a theory of the

15   case necessarily is going to get you where you need to go.

16   What specific evidence do you expect that could be elicited,

17   and I suppose primarily by your co-counsel, that would put

18   your client in an untenable situation?

19           MR. PARLATORE:  The big thing that -- and I have

20   no idea what evidence they intend to introduce.  But just

21   reading the papers, it does appear that there's a

22   possibility that the Co-Defendants may testify.  And

23   certainly in that situation, where the Co-Defendants choose

24   to testify, if they're going to be pointing the finger at

25   Burke and saying, "Yes, we had this discussion; yes, there

1    was an agreement, you know, no contract, no job; but he said

2    it was okay because we weren't a defense contractor," you

3    know, that is exactly I think -- that is exactly the type of

4    evidence that would be the most oppositional.

5           That same -- and obviously, while it's most

6    obvious in the context of one of the Co-Defendants taking

7    the stand, it is the same type of thing that you would

8    expect to be a theme of their cross-examination of the

9    Government's witnesses and any other witnesses that they may

10   try to call, the way they're going to try to characterize,

11   you know, the Government's exhibits as, you know, yes,

12   showing that there was some type of a quid pro quo, but it

13   being okay because Admiral Burke said it was okay.

14          THE COURT:  Mr. Parlatore, going back to the idea

15   of one of the Co-Defendants testifying, how is that

16   different than, like, a cooperator, for instance?  Frankly,

17   it's not terribly unusual to have alleged co-conspirators

18   testifying.  And, you know, you're an accomplished defense

19   attorney.  I think you could take that in stride.  Why is

20   this different?

21          MR. PARLATORE:  Well, because that is when I am

22   cross-examining a Government witness.

23          But here, it's going to be a situation where the

24   Co-Defendants are cross-examining each other.  And I think

25   that that is exactly the type of thing that for the jury is

1    going to be, you know, all the more confusing and could lead

2    them to the improper conclusion where if the Co-Defendants

3    are offering these diametrically opposed defenses, which is

4    exactly what the standard is for severance, to where I'm

5    cross-examining the guy that's sitting two seats down from

6    me at the table this entire trial, you know, and saying that

7    he's essentially committing perjury before this jury, I do

8    think that that is -- it is -- it has similarities, yes, to

9    cross-examining a cooperating witness.

10           But here, it's going to be a situation where I'm

11    cross-examining a Co-Defendant.

12           And it's not -- and then yet on top of that,

13    you're going to end up having kind of three-way closing

14    arguments, where -- you know, usually, it's a Government

15    cooperator and then it's just me and the Government that are

16    arguing back and forth over whether you should believe this

17    person.

18           But here, you're going to have kind of three-way

19    oppositional -- it's very much a circular firing squad, if

20    you will.

21           THE COURT:  All right.  I take it your client has

22    not made a decision whether or not he's going to testify.

23    Is that fair to say?

24           MR. PARLATORE:  That is fair to say.  It's

25    something that I normally don't decide until after hearing

1   the Government's case in chief.

2          THE COURT:  Right.

3          MR. PARLATORE:  I'm not inclined to at this time,

4   but I always keep the option open.

5          THE COURT:  I think you all did the right thing by

6   filing a brief now.  But the posture -- obviously, the case

7   law is very much after the trial.

8          MR. PARLATORE:  It is.

9          THE COURT:  And there's good reason for that.  But

10  it makes -- we're all kind of speculating about how things

11  might go.  And this is a pretty drastic remedy for something

12  that might not happen at all.

13         MR. PARLATORE:  I see that, Judge.

14         And, you know, it is unique in that this is all

15  being brought up ahead of time.  But I think -- and I

16  suspect that when Mr. Burck gets up after me, he's going to

17  offer something from a different angle but of a very similar

18  theme, that, you know, this is not necessarily hypothetical,

19  you know.

20         If we all go to trial, unless there's a change in

21  strategy from the Co-Defendants' side, this is definitely

22  going to happen.  It's going to be something that -- I guess

23  we've preserved it very well.  But I'd rather deal with it,

24  you know, pretrial when we have the opportunity to remedy it

25  and get it right the first time than go through the trial at

1    which point then the standard -- you know, you're correct:

2    It's normally looked at after the fact.  And there, the

3    record is going to be much clearer and much more, you know,

4    obvious than in a lot of the other cases that the Circuit

5    has examined.

6              But here, we do have the opportunity to remedy it

7    prophylactically.

8              THE COURT:  So I'm hearing your concern about your

9    Co-Defendants testifying.  I'm hearing arguments that are

10   pointing the finger at your client.

11             Anything else that -- any other evidence that

12   you're expecting that would come out in a joint trial that

13   would not come out against your client were he being tried

14   alone?

15             MR. PARLATORE:  Well, you know, as your Honor

16   correctly noted about the *Bruton* issue in the beginning, you

17   know, that whole interview of Admiral Burke is something

18   that is -- it's already been presented as an exhibit by the

19   Co-Defendants.  So again, I don't know what type of evidence

20   they may want to put in, you know, during the trial that the

21   Government may decline to do.

22             And so there are -- to a certain extent, I'd like

23   to defer this until after Mr. Burck gets up and talks about

24   what he wants to introduce.  But I do believe it's going to

25   be more than just that.  I think it's going to be more

1    extensive.  I think it's going to include, you know, not

2    only the differing cross-examinations of the Government's

3    witnesses, of the Government's exhibits, but also things

4    that may be introduced by the Co-Defendants.

5            THE COURT:  I can't see how your client's

6    interview could possibly be a reason for severing -- for you

7    for severance.

8            MR. PARLATORE:  I understand that, Judge.

9            And quite frankly, if it's something that the

10   Government did want to introduce in their case in chief, you

11   know, there are suppression issues with that as well.  But

12   maybe we don't have to go there.  We'll see.

13           THE COURT:  Thank you.

14           Mr. Burck?

15           MR. BURCK:  Thank you, your Honor.

16           So I'll just start here, your Honor, on the issue

17   of the mutually antagonistic defenses.

18           Really the only viable path that we see for our

19   client to defend himself adequately in this case is to

20   inculpate Mr. Burke.  Not this Mr. Burck, but the Defendant

21   Mr. Burke.

22           And the reason for that -- and let me just back up

23   a little bit, your Honor.  We filed our motion to sever back

24   in July.  And it was actually before we even had gotten most

25   of the discovery.

1        And the reason we did it that early was because we

2   understood from some statements that were made in the press,

3   et cetera, that the defense that Mr. Burke was going to

4   present was essentially that there were no real discussions

5   about a job and there was no quid pro quo.

6        Now, our client, as is very clear from the papers,

7   understood the situation very differently, which was that,

8   yes, of course there were discussions.  And in fact, there's

9   plentiful evidence that Mr. Kim knew there were discussions

10  and had those discussions, because he talks to just about

11  anybody who will listen about those discussions in real time

12  when this alleged conspiracy is going on.

13       So from his perspective:  Yeah, we had

14  discussions.  But I didn't realize that there was anything

15  wrong with that, because Mr. Burke or Admiral Burke had told

16  me that this was fine because I'm not a defense contractor.

17       And I told everybody.  I thought it was a great

18  thing to tell everybody, all of my investors, all my

19  employees, really anyone who would listen.

20       So from his perspective, the issue here is:  What

21  was in his mind?  What was his intent?  Did he have a

22  corrupt intent in having the discussion he did with Admiral

23  Burke?

24       The answer to that from our perspective is he did

25  not.  We think the evidence will show that.

1          But in order to do that, we're going to have to

2     put in a lot of evidence if the Government doesn't do it

3     itself to show a critical issue, which is that Admiral Burke

4     is a -- for lack of a better term, he doesn't tell the

5     truth.  He lies.  He misleads people.  He tells people

6     things that will advance his own interests, but has no

7     semblance or resemblance to the truth.

8          We have plentiful evidence of that not just from

9     what Mr. Kim knows about his own interactions with Admiral

10    Burke, but also from the evidence the Government has

11    presented in this case.

12         And a lot of that evidence is not, we think,

13    admissible against Mr. Kim or Ms. Messenger as to the four

14    counts of the indictment that are only about Mr. Burke.  But

15    all of that evidence goes to his untruthfulness.  It goes to

16    the fact that he was misleading the Navy and he was telling

17    the Navy he was not engaged in job discussions while in fact

18    he was.

19         And in fact, Mr. Kim and Ms. Messenger both know

20    that he was because they were engaged in those discussions

21    with him.

22         In terms of the question of whether or not Mr. Kim

23    would testify, your Honor, we obviously can't commit to

24    anything right now.  But we can tell you that he is inclined

25    to testify.  He is very inclined to testify.  He has no

1    criminal history.  He has -- we're not aware of any 404(b)

2    issues for him.  We don't -- he doesn't have any personal

3    issues that we are aware of.

4         So he is inclined to testify.  We think he will

5    testify.  Obviously, we have to check to see what the

6    Government's case looks like to make that determination.

7    But that is his inclination.

8         THE COURT:  Mr. Burck, let me go back to the

9    purported lies that you'd be expecting to introduce against

10   Admiral Burke.  What do you think you'd be putting in that

11   the Government would not be likely to put in anyway?

12        MR. BURCK:  Your Honor, I think that the -- it's a

13   little hard to tell.  But there are a number of emails that

14   we have included as exhibits in our opening brief that go

15   through statements that Mr. Kim made or Ms. Messenger made

16   to their investors and others.

17        Some of that may have been -- or was quoted.  Some

18   aspects of it were quoted by the Government in the

19   indictment.  But we're not sure that the Government's going

20   to offer all of that to show what Mr. Kim was thinking, what

21   he was saying to people.  They might try to cherry-pick it

22   and use the idea that everything other than his own

23   statements that were inculpating of him were hearsay, not

24   co-conspirator statements, so we can't get those in unless

25   he testifies.

1          So our intention is to introduce all of this

2     evidence -- again, we don't know if the Government is going

3     to object or if they're going to offer it themselves -- that

4     would show exactly what he was saying about his

5     contemporaneous communications with Mr. Burke, Admiral

6     Burke, about the job discussions.

7          THE COURT:  Sorry.  You're expecting to bring your

8     own client's communications in?

9          MR. BURCK:  Yes, your Honor.

10         THE COURT:  Okay.

11         MR. BURCK:  We think they would come in for --

12    they're a hearsay exception; for example, state of mind.

13    So, your Honor, we don't think -- we think we can overcome

14    any evidentiary challenge the Government had to it.

15         THE COURT:  But how does that show that Admiral

16    Burke was lying?

17         MR. BURCK:  Your Honor, because we believe the

18    Government is going to show through witnesses, including --

19    I'm not sure exactly what to call her, but one of the star

20    witnesses --

21         THE COURT:  Person 3?

22         MR. BURCK:  Person 3.  Person 3.

23         -- that through her and others, that while he was

24    telling Mr. Kim and Ms. Messenger that we can have all these

25    discussions and we could have -- we can get to a deal even

 1    while I'm still an admiral and I have this contract that's

 2    pending before me, that he was acknowledging to other people

 3    through -- either directly about this contract or just

 4    generally about his position that of course he can't have

 5    job discussions with contractors who are before him, who he

 6    has to make decisions about whether or not to hire them.

 7            So while the Government's putting up its case and

 8    its witnesses and its documents, showing -- of course, your

 9    Honor, you've probably seen some of this in, I think, some

10    of the Government's filings, but also in ours -- that there

11    are a legion of WhatsApp messages, text messages, between

12    Person 3, if I'm right about that being Person 3, and

13    Admiral Burke about what he's doing and what he's saying to

14    my client and to Ms. Messenger.

15            And in contrast, what we're going to be showing is

16    what he was actually saying to them was two diametrically

17    opposed things, that on the one hand he's telling them, my

18    client, that:  No problem; we can have these discussions; no

19    issue.  In fact, we're having these discussions.

20            Meanwhile, he's telling other people other things.

21    And he also is -- he's telling people that he understands

22    the rules of the Navy, which they can't have these

23    discussions.

24            And with respect to the charges of the indictment

25    that are only about Admiral Burke, there's going to be a

1    wealth of evidence that we've seen to show that he was not

2    telling the truth.

3          There are WhatsApp messengers, your Honor, between

4    Person 3 and Admiral Burke, where he says things like, We

5    basically have a deal on the job with Mr. Kim.  We basically

6    have a deal on the job.

7          At the same time he's telling the Navy, Never had

8    any discussions until May of 2022, which is right before he

9    retired from the Navy.  And he has ongoing discussions with

10   other people that suggest very clearly that he was

11   misleading them about discussions he was having with Mr. Kim

12   and Ms. Messenger.  He was misleading them about what kind

13   of discussions he could have.

14         So there will be -- our case will largely be about

15   actually showing that Mr. Burke is not truthful, that he

16   lies habitually, that he lied to the Navy, that he lied to

17   Mr. Kim, that he lied to Ms. Messenger.  And there were some

18   people who knew what he was doing to some extent, like

19   Person 3, because he was having candid conversations with

20   them, given their personal relationship.  But others didn't.

21   The Navy didn't know and Mr. Kim and Ms. Messenger didn't

22   know.

23         THE COURT:  And so I think I can see how this

24   would -- how Mr. Parlatore would want to keep this out.  I

25   take it that's why you're telling me this, not so much that

1    you think this is a reason for your severance, but for

2    Mr. Parlatore's motion?

3              MR. BURCK:  Yes, your Honor.  I think that our --

4    we started this whole severance train.

5              THE COURT:  Yes.

6              MR. BURCK:  And I think the reason for that is

7    because from our perspective we understand the tension

8    there.  What we're doing is we're pointing the finger at

9    Admiral Burke.  We don't know exactly what he's going to say

10   about us that becomes relevant to the trial.

11             But for us, being in the same trial with somebody

12   that we are saying, "He's a liar, he's a liar, he's a liar,"

13   that will obviously create the incentive for Mr. Parlatore

14   to come back and try to attack our credibility, the

15   credibility of our evidence, our witnesses, especially if

16   Mr. Kim testifies.

17             So from our perspective, it still is not a great

18   outcome for our clients to be in a trial where they have to

19   say that he did everything and it's all his fault and he

20   lied to us and he lied to everybody, that, yes, it might

21   lead to an acquittal, but it could also just be a pox on all

22   your houses.  That's why we raised the issue, because we do

23   think it's a significant issue.

24             But to your point, I think that Admiral Burke, at

25   least the way that we hear it today, that he's the one who's

1    going to suffer severe prejudice, because our case will be

2    against Admiral Burke.  It'll probably be most of our case,

3    most of our defense, because at the end of the day, as

4    you've seen in our papers, no one on this side is saying

5    these discussions didn't happen.  They acknowledge it

6    readily.  They say:  Yes.  Of course it happened.  And in

7    fact, it was in contemporaneous emails as well.

8              The issue for us is:  What did Mr. Burke tell our

9    client about why they could have those discussions?  And

10   that's the issue that at the end of the day is extremely

11   prejudicial to our Co-Defendant.  And we think that

12   there's -- that the mountain of evidence the Government

13   has -- and it seems like a mountain to us -- that he was not

14   being truthful is stark.

15             Then we're adding on top of that and saying:

16   Yeah.  Exactly.  He lied, and he lied to us.  And that's why

17   we're not that crazy or stupid to tell everybody we're

18   engaged in a criminal conspiracy while it's happening.

19   Hundreds of people, your Honor, were told in these emails in

20   detail about exactly what conversations they were having.

21             And the reason why they were not crazy or stupid

22   is because they thought that they could do it because they

23   were told they could do it.

24             So we will spend all our time explaining why

25   Mr. Burke or Admiral Burke is a liar, effectively.

1          THE COURT:  I imagine Ms. Fifield is going to be

2     telling me that this evidence isn't terribly helpful to you,

3     that bribery is bribery, and somebody telling you that

4     you're allowed to bribe me is not a defense.  Why is she

5     wrong on that?

6          MR. BURCK:  Well, your Honor, I think that she's

7     wrong because there is still the corrupt intent that has to

8     be part of a bribery scheme.  And here, it is very -- it is

9     not -- there's no strict liability or very little strict

10    liability in criminal law, and there's certainly no strict

11    liability when it comes to bribery.

12          And here, a jury could very reasonably look at

13    this evidence, especially some of those contemporaneous

14    emails, and ask themselves the question:  What criminal

15    mastermind or person with bad intent would literally tell

16    everybody, "Here's what I'm doing," people that have nothing

17    to do with the conspiracy, who are not charged as

18    co-conspirators, who have -- who don't raise as far as we

19    can tell in the discovery any concerns about this, and

20    repeatedly tells them this?

21          And our defense is that what was in Charlie Kim's

22    mind was:  This is okay.  I can do this, because I was told

23    I could do this; and I believed him because he was a

24    four-star admiral who ran this entire unit of the Navy, ran

25    the whole thing.

```
 1              And he also -- Mr. Kim would say that there were

 2     other members of the military who were not charged as

 3     co-conspirators who were present for these conversations,

 4     not only Ms. Beyler in an early conversation, but also

 5     Person 3, who was not charged in this case.

 6              And Person 3, your Honor, as we explain in our

 7     brief, Admiral Burke lied to them about who she was.  He --

 8     and this is borne out also in the contemporaneous WhatsApp

 9     messages between Person 3 and Admiral Burke, where they come

10     up with a story about who she is.  And they -- and what they

11     tell Mr. Kim and Ms. Messenger is that she is a senior naval

12     official.  Now, she is a naval official.  But they tell her

13     that's why -- they tell my two clients, Why she's there is

14     because I want her to hear this.

15              And so in their minds, not only are they telling

16     all these investors and employees; they're talking to other

17     senior Navy people, including Ms. Beyler and then also

18     Person 3, and they're openly discussing the job prospect

19     with somebody who they've been misled again about who she

20     is, that they're not told that she's actually in a personal

21     relationship with Admiral Burke.  They're told that she's a

22     naval official that wants to hear about this and to some

23     extent vet it.

24              So from their perspective, they're being

25     constantly mislead.  All of that is critical both to our
```

1    defense, but also it's extremely prejudicial to Admiral

2    Burke.

3         And again, for a lot of this we don't even need

4    Mr. Kim to testify.  This is literally in the statements

5    which I'm sure the Government is not going to forego, the

6    WhatsApp messages between Person 3 and Admiral Burke.  I

7    mean, there's a legion of them.  There's all kinds of -- it

8    is probably the heart of their case.  As well as presumably

9    Person 3 will testify.  So all of that is going to be

10   central to how we present this case.

11        And one last point on Person 3, your Honor:

12   Person 3 -- and again, this is in our briefing.  Person 3

13   actually said to the Government in a 302 that she was

14   surprised by the way that Mr. Kim and Ms. Messenger talked

15   openly about a job in front of her with Mr. Burke at this

16   lunch they had in July of 2021.

17        And she had the impression that maybe they didn't

18   know that they couldn't do this, "they" being Mr. Kim and

19   Ms. Messenger.  She says that in the 302.  She says it a

20   couple times.

21        And so that type of evidence, you know, which to

22   some extent she obviously -- we're going to cross-examine

23   her if she testifies.  I'm sure she will testify.  But at

24   the same time, a lot of that is helpful to us.  Again, it

25   goes right back to her -- to Admiral Burke.

1              Now, there's no way, unless the Government has a

2     different conspiracy theory than they've already alleged,

3     but if our clients were acquitted on the conspiracy charge,

4     then Mr. Burke would have to be acquitted too, because he

5     needs to -- you need two people at least, of course, to be

6     in a conspiracy.

7              But the substantive bribery, he could still be

8     convicted on that, as our clients could also be, even if

9     there's no conspiracy.  But if we win the conspiracy charge,

10    we believe that we also win the bribery charge.

11             But for him, he might still be convicted of

12    bribery even if he's acquitted on the conspiracy because of

13    all the evidence that we're going to show and that the

14    Government is going to show that he was perpetual -- he knew

15    that he couldn't do this.  He knew that he couldn't have

16    these conversations.  He understood that very well.

17             And then he lies to the Navy very explicitly in

18    May of 2021 when he's -- right before he's going to retire

19    and he tells them he's never had any discussions and

20    actually tries to get Mr. Kim and Ms. Messenger to agree to

21    that.  They don't.

22             But, your Honor, I'm sorry to belabor the point;

23    but just for the evidence -- to show you how the evidence

24    would progress in the trial, after that period, after the

25    May 2022 document that Mr. -- that Admiral Burke sends to

1    the Navy saying that "I haven't had any job discussions,"

2    and he sends that to Mr. Kim and Ms. Messenger, thereafter,

3    just to show their level of confusion about what was going

4    on, they were told -- and again, this is in documents --

5    they were told by Admiral Burke that there was a problem

6    with the Navy, that they were looking at some of his

7    communications and his dealings with Next Jump, but it was

8    an internal issue.  It was not that big a deal.

9            And so for them, they persisted in highlighting

10   the fact that Admiral Burke was coming on board and telling

11   everybody again that he's coming on board, even though they

12   knew that he was now under investigation.

13           And they offered him a job and they brought him in

14   with a job anyway, all because, from our perspective, they

15   didn't think they were involved because they thought that,

16   Well, whatever issue he has between him and the Navy, we

17   have been told that this was fine, which is why we've been

18   so open about it.

19           So the case is going to be -- from beginning to

20   end is going to be about our clients, Mr. Kim and

21   Ms. Messenger, saying -- pointing the finger at Admiral

22   Burke and saying:  We are not crazy and we're not stupid.

23   So the reason why we were doing all this stuff is because we

24   believed it was okay because he told us it was okay.  And

25   we're going to try to corroborate that with all these

1    documents that'll show and all these witnesses that will

2    show that he was telling everybody different things.

3               THE COURT:  All right.

4               MR. BURCK:  That's the way we'll present the case,

5    your Honor.

6               THE COURT:  Thank you, Mr. Burck.

7               MR. BURCK:  Thank you, your Honor.

8               THE COURT:  Ms. Fifield.

9               MS. FIFIELD:  Your Honor, I think you put -- you

10   hit the nail on the head when you -- starting with

11   Mr. Parlatore's arguments as to Defendant Burke.  You asked

12   Mr. Parlatore whether his client was expecting to point the

13   finger at any other Defendant.

14               And the answer is no.  And that defeats the

15   mutually antagonistic defenses entirely.

16               All of these concerns that the attorneys for the

17   Defendants have outlined are strategic and tactical

18   concerns, which do not entitle these Defendants to

19   severance.  There must be a specific trial right that is

20   compromised.

21               You also asked, you know, What specific evidence

22   would your client be seeking to enter that would put your --

23   would your client be seeking to enter that would put your

24   client in an untenable position?

25               And Mr. Parlatore responded that he expects the

1    Defendants to testify.  Mr. Burck also said that he expects

2    Defendant Burke to testify.

3            But Defendants are not entitled to severance based

4    on a desire to keep out a Co-Defendant's testimony.  And

5    that's *United States versus Gilliam*, G-I-L-L-I-A-M, 167 F.3d

6    628, 635, D.C. Circuit, 1999.

7            Mr. Burck would not -- or Mr. Parlatore through

8    Defendant Burke would not be seeking to cross-examine any of

9    the Defendants furthermore for the purpose of proving that

10   the Co-Defendant committed a crime.  He would be

11   cross-examining for the purpose of proving that the

12   Co-Defendants did not commit the crimes that's been charged

13   in the indictment.

14           As to Kim and Messenger, it's important to note

15   that every complaint that they have about evidence coming in

16   as to Burke's concealment and how they did this both in the

17   Far More Damaging Evidence section of their brief as well as

18   the Conflicting Defenses section, this was part of the

19   conspiracy.

20           If Burke had not concealed the Defendants'

21   arrangement from the Navy, the conspiracy never would have

22   succeeded.  If Burke had disclosed that he had had these

23   employment conversations with Kim and Messenger as well

24   as -- and, you know, not even beginning to touch directing

25   the contract to them -- Burke would not have been -- you

1    know, that would have foiled Next Jump's chances to obtain

2    further contracts from the Navy, which was an integral part

3    of their goal in engaging with Defendant Burke, and Burke

4    would not have been able to join them as an employee after

5    his retirement.

6          THE COURT:  But what I'm hearing from the

7    Defendants, particularly Mr. Burck, is that he's going to be

8    saying that not only was Admiral Burke lying to the Navy,

9    but he was also lying to his Co-Defendants.  And are you

10   going to be entering that evidence?  And why isn't that

11   evidence problematic for this kind of second prosecutor

12   idea?

13         MS. FIFIELD:  What I understood Mr. Burck to be

14   saying was that they intend to paint Burke as a liar in one

15   instance based on their argument that he lied on other

16   instances.

17         And just off the top of my head, listening to his

18   argument just now, I believe that would be improper purpose.

19   I don't believe they would be able to use instances of him

20   having, according to them, lied on other occasions to prove

21   that he lied on a specific occasion to Kim and to Messenger.

22         As to the emails, you know, I heard Mr. Burck say,

23   We're not sure what the Government is going to enter.

24         And to the Court's point when Mr. Parlatore was up

25   here, this is premature.  The conflicts that the Defendants

1   complain about, A, even if they came to pass would not

2   entitle them to severance.  They're not entitled to

3   severance for a tactical advantage.  They're not entitled to

4   severance to keep out a Co-Defendant's testimony.  They are

5   not entitled to severance because they are hostile to each

6   other.

7          The degree of conflict that would be required --

8   and I think the prototypical example would be two guys in a

9   room.  No additional evidence.  One says he had -- Guy A had

10  the gun and he shot the victim.  The other one says Guy B

11  had the gun and he shot the victim.

12         And the jury would be required to believe one at

13  the expense of the other without any independent evidence

14  pushing the needle either way.

15         THE COURT:  So, Ms. Fifield, is your position that

16  they both must be pointing the finger at the other for it to

17  be problematic?

18         MS. FIFIELD:  Without independent evidence.  And

19  that's a key point.  And this is clear in the case law, too,

20  in *United States versus Edelin*, E-D-E-L-I-N, 118 F.Supp.2d

21  36.  And that's the D.C. District Court, 2000, relying on

22  *United States versus Leonard*, 494 F.2d 955, D.C. Circuit,

23  1974.

24         When there is independent evidence that all

25  members of the conspiracy are guilty, which we have in

1    spades here, where there is independent evidence of each

2    Defendant's guilt, this mutually antagonistic defenses

3    doctrine is inapplicable.  Those cases say that explicitly.

4           We have evidence that, you know, all of the

5    confessions, essentially, that Kim and Messenger put in

6    writing after their April meeting with Defendant Burke --

7    and just as an aside, you know, Mr. Burck made much of other

8    people being present in these conversations, and he relied

9    particularly on Juliette Beyler.  But there were two

10   meetings, importantly, in April of 2021.

11          In the first meeting, in which Ms. Beyler was in

12   attendance, they did not -- the evidence reflects that the

13   conversation was a sales pitch, whereas in a second April

14   meeting, which the evidence shows only included Defendant

15   Burke, Kim and Messenger, Kim put in an email that Messenger

16   felt slimy, which goes to their corrupt intent, because he

17   wants a job, but we're asking for a deal first.  Kim put

18   that in writing, quoting Meghan Messenger.

19          Kim further elaborated in email after email after

20   email the pieces of the scheme and he called it -- after the

21   their July meeting, he called it a three-phased plan.  He

22   wrote emails to -- both internal emails to Company A

23   personnel, which, contrary to what Mr. Burck just said, the

24   Government does not have evidence that these emails, as he

25   put it, went to hundreds of people.

1          But Kim wrote in these emails that in Phase 1,

2    Burke would direct Company A a contract.

3          In Phase 2, Burke would promote Company A to the

4    wider Navy and to former military in an effort to help

5    secure future contracts for Company A which would benefit

6    him personally, because in Phase 3 he's going to work for

7    them after his retirement.

8          He put that explicitly in emails to Company A

9    personnel and to investors.

10          And in the email to investors after the July

11    meeting, he said, "Please keep this confidential," as to

12    Burke joining Company A after his retirement.

13          The evidence will also show, as the Court probably

14    has gotten a feel for at this point, that Charlie Kim is a

15    chronic oversharer.  He puts everything in emails,

16    especially to Company A personnel.  He includes in these

17    emails the justification for doing this.  He calls it

18    "informating."  He needs to informate everyone in Company A

19    as to his and Messenger's internal thought processes.  And

20    they do this repeatedly.

21          But they were doing this with people whom they

22    trusted, internal Company A personnel, which I believe has

23    around two dozen employees.

24          And these listservs did not even include every

25    employee on -- that worked for Company A.

```
 1              THE COURT:  Ms. Fifield, I want to just think
 2    practically with you for a minute.  I mean, how long would
 3    you expect these -- if we did two separate cases, two cases
 4    instead of one, how long would you expect the Government's
 5    case in chief to last?
 6              MS. FIFIELD:  For each trial?
 7              THE COURT:  Yes.
 8              MS. FIFIELD:  I anticipate -- and this goes, you
 9    know, in favor of the Government's argument against
10    severance -- I believe the trials would be approximately
11    identical in length and in evidence.  I think what we said
12    was ten days.
13              THE COURT:  Ten days.
14              MS. FIFIELD:  Ten business days each.
15              THE COURT:  And I am a little concerned here.  As
16    I say, this is a very difficult call to make on the front
17    end.  And I think the case law favors you.
18              I am concerned, though, that we're going to come
19    to halfway through the trial or at the end of trial and
20    realize that there has been such prejudice to Admiral Burke
21    in particular that we've got to declare a mistrial or try
22    him all over again or something like that.
23              I mean, wouldn't it make more sense to try to
24    avoid this possibility from the outset?
25              MS. FIFIELD:  Your Honor, I don't think that's
```

1    what the law calls for.  I think the law says -- I don't

2    think; I know -- that the law says that severance is an

3    extreme remedy; and even when prejudice is created or the

4    risk of prejudice is created, the degree of prejudice

5    required is so extreme that it compromises a defendant's

6    specific -- a specific trial right or compromises a

7    defendant's right to a fair trial.

8         And, you know, accepting your hypothetical that --

9    or setting aside your hypothetical, rather, the risk of that

10    here is next to zero.  The Defendants -- the evidence shows

11    that the Defendants participated equally and independently

12    in the conspiracy.  The risk of prejudice here is very, very

13    small.

14         There was no evidence that Burke was lying to Kim

15    or Messenger.  And again, going back to what Mr. Burck has

16    said, I don't believe that they have admissible -- evidence

17    admissible for the purpose of arguing that Defendant Burke

18    was a liar and therefore he lied to Kim and Messenger on

19    specific occasions.  I don't believe that they would be able

20    to do that.  That's not what the evidence shows.

21         The evidence shows that each time the Defendants

22    had these conversations, which was repeatedly, that they

23    were -- that there was a meeting of the minds between them.

24    And these conversations happened in April of 2021; they

25    happened in July of 2021; they happened in November of 2021.

1    Each time, you know, and particularly reflecting on the fact

2    that this arrangement almost fell apart a couple of times,

3    the Defendants had to reengage and re-up and reconfirm their

4    commitment to this conspiracy and making sure that it

5    succeeded.

6             THE COURT:  But using this -- I think it was a

7    lunch conversation -- don't you agree there's evidence that

8    Admiral Burke and Person 3 kind of planned how they would

9    portray her to his Co-Defendants?  And why wouldn't they be

10   in a position to argue, We were fooled into thinking this is

11   all aboveboard because there was another high-profile DOD

12   official participating?  So, A, it's evidence of their

13   belief that what they're doing is okay and, B, going to feed

14   into this argument from the defense side as well as the

15   Government that Admiral Burke is a liar.  How is that not

16   prejudicial to him?

17            MS. FIFIELD:  Well, going back to -- simply

18   because it may be prejudicial is not a basis for severance.

19            THE COURT:  Well, sure it is.  Sure it is.  That's

20   what Rule 14 says.  "If the joinder of offenses or

21   Defendants in an indictment appears to prejudice a Defendant

22   or the Government, the Court may order separate trials of

23   counts."

24            MS. FIFIELD:  What the case law is clear is that

25   prejudice does not mandate severance.  Even great prejudice

1    does not mandate severance.

2              Setting that aside, that legal standard is clear.

3    That is inconsistent with the evidence.  The evidence will

4    show that this lunch was intimate.  It was casual.  At this

5    lunch, Kim and Messenger both tried to recruit Person 3 to

6    not necessarily come work at Company A, but they understood,

7    the evidence will show, that Person 3 and Burke were a

8    package deal, that convincing Burke to -- at this point,

9    they were trying to convince Burke to come work at

10   Company A.  They understood that Person 3 was coming with

11   him.  They shared drinks.

12             The evidence will show that Burke asked Person 3

13   to find an intimate location for them to have this lunch

14   because Meghan Messenger was already talking about a job.

15   That's in text messages.

16             THE COURT:  I'm sorry.  I don't think I understood

17   this before.

18             Your theory is that both Person 3 and the

19   Defendant Burke were going to be hired by his Co-Defendants?

20             MS. FIFIELD:  Not hired, per se, but they were --

21   the evidence will show that Kim and Messenger were trying to

22   sell Person 3 on at least Defendant Burke's employment with

23   Company A based on all the benefits that would be available

24   to her:  yoga; I think massage salon services that would be

25   available at their headquarters.

1          There was evidence that they were trying to appeal

2     to her on a personal basis because of her connection with

3     Burke, which to them was obvious.

4          THE COURT:  Okay.  Anything else, Ms. Fifield?

5          MS. FIFIELD:  Give me a moment to confer with

6     co-counsel.

7          (Confers with co-counsel privately.)

8          Just lastly, you know, there is no evidence that

9     Kim and Messenger believed that it was okay for them to

10    offer Burke a job in exchange for a contract.  There is no

11    evidence of that whatsoever.

12         What the evidence shows is that they had corrupt

13    intent when they, in their own words, were offering Burke a

14    job, but they wanted a deal first.

15         Messenger put in text messages, "No contract, no

16    job."  She said in an email that there was a universe in

17    which everything that they had tried to put together would

18    fall apart because Burke would accuse them of baiting him

19    into a contract for a job.

20         They never thought that it was okay for them to

21    exchange -- engage in a corrupt exchange with Burke, a

22    contract for a job.

23         THE COURT:  I get that that's your position.  But

24    that's not what we'll be hearing from the defense.

25         And the question for me is whether -- if they're

1    going forward with this theory that Admiral Burke tricked

2    them into it, whether that places him in an untenable

3    situation.  Right?

4            MS. FIFIELD:  It doesn't in -- in the lens of

5    severance, it doesn't place him in an untenable position

6    because he's not entitled to keep out their testimony.  The

7    law is clear about that.  He is not entitled to prevent them

8    from testifying.

9            He would have to deal with the exact same

10   evidence, as all of their communications would come in as

11   co-conspirator statements.  Neither of these -- neither sets

12   of Defendants have established that they would be subjected

13   to -- with the exception of Co-Defendants' testimony -- that

14   they would be subjected to a different trial if their cases

15   were severed.

16           And the law is clear that the threat of a

17   Co-Defendant testifying is not sufficient to justify

18   severance, which is an extreme remedy.

19           And I can't claim to have looked at every

20   severance case in this circuit.  I have looked at a lot.

21   And the Defendants have cited none under comparable facts

22   that would support a severance under these facts.

23           THE COURT:  The case law is very good for you in

24   this circuit.

25           MS. FIFIELD:  It is very good for us.

1          But there's a reason for that.  This is not a

2    close question.  This is not something that occurred

3    frequently.

4          This is something that the courts very clearly

5    approach with extreme skepticism.  And, you know, it's not

6    an unfair advantage for the Government; it's the law.

7          THE COURT:  All right.  Thank you, Ms. Fifield.

8          Mr. Parlatore, I'll give you a very brief last

9    word.

10          MR. PARLATORE:  Sure.

11          Your Honor hit the nail right on the head when you

12    read the text of Rule 14.  And this is something that your

13    Honor has the discretion to order a severance pretrial when

14    it appears that there is going to be prejudice, which is

15    clearly the case here.

16          All the case law that's been cited -- and I think

17    both sides have cited it for different propositions -- but

18    ultimately, that's a very different standard because that's

19    after a trial has been conducted in trying to look back and

20    decide whether to disturb a conviction.

21          And so bringing it at this stage, if you go back

22    to the very text of the rule -- and that's obviously

23    something that, when the Court orders a severance pretrial,

24    you don't end up with appellate case law on it because

25    you've exercised your discretion to sever it.  They go to

1    separate trials.  Nobody's going to -- at the end of that

2    conviction, nobody is going to say, Oh, no.  You should have

3    denied my motion.  So your Honor certainly has the

4    discretion.

5            I think the facts of this case are markedly

6    different from all of the ones -- you know, Ms. Fifield

7    correctly said we haven't cited a case on similar facts to

8    this, because there aren't really cases that are on similar

9    facts because the prejudice in this case is markedly

10   different and markedly more severe than all of the reported

11   cases that either side has been able to find.

12           THE COURT:  What about her hypothetical of the two

13   men in a room?  Frankly, that's kind of my understanding of

14   how this has worked.

15           MR. PARLATORE:  Yes.

16           THE COURT:  And I think that's right that that's

17   not this situation, where your client is saying, "Neither of

18   us shot him."  And so we only have one person pointing the

19   finger.

20           MR. PARLATORE:  So -- and in -- you know, I saw

21   that.  And to pull that back a little bit, Admiral Burke is

22   not pointing the finger to say either one of those

23   Co-Defendants have committed a crime that's charged in the

24   indictment.  Okay?  That doesn't mean that he's not going to

25   point the finger at them and say, "They lied to their

1    investors."  Okay?  That's not something that's charged, but

2    "Charlie Kim lied to his investors."

3            Based on the evidence and based on the arguments

4    of Mr. Burck, do we believe that Charlie Kim engaged in

5    attempted bribery?  Yes, we do.

6            If the Government would take, you know, Admiral

7    Burke as a witness and recharge this as an attempted

8    bribery, then I think Charlie Kim is going to jail.  That's

9    a very strong case.

10            In this circumstance, they had conversations.  And

11    the evidence shows that while they may have had some

12    preliminary conversations, Admiral Burke pushed back and

13    says, "I am not ready to have a serious conversation about

14    this right now.  I can come back to you at a later point."

15    That's what the evidence shows.

16            And the evidence shows that when he then got the

17    authorization from the Navy, that's when he went back to

18    Charlie Kim and said, "Now I have authorization.  Now we can

19    actually begin discussions."

20            All of the evidence about what happened before

21    then, you have Government witnesses who are saying very

22    different things from what Charlie Kim is saying.  You

23    have -- even the numbers.  You know, the Individual 3 or

24    Person 3, who obviously has significant credibility issues

25    that we haven't addressed today, she initially said this was

1    for a salary of 1.2 million a year.  That's clearly very

2    different from what Charlie Kim is telling everybody

3    happened at that meeting.

4           The evidence shows that these two Co-Defendants,

5    they say things.  They do overshare.  There's a lot that

6    Ms. Fifield said that I agree with.  They overshare.  And a

7    lot of it is aspirational.  They say things that they hope

8    will happen as if they have already happened so that they

9    can manifest that to be.

10           And so when they are hoping that Admiral Burke

11    will help them out and that Admiral Burke will come over,

12    that is something that they're saying as if it's already

13    happened.  And that is, you know, where at trial you're

14    going to end up in a situation where Admiral Burke is going

15    to correctly and honestly be presenting to this jury, "There

16    was no quid pro could."

17           And Charlie Kim and Ms. Messenger are going to

18    instead say, "Yes, there was a quid pro quo, but we didn't

19    think there was anything was wrong."

20           Now, that goes squarely into the standard here

21    where you have oppositional defenses that could result in a

22    jury improperly finding both of them guilty, because at the

23    end of this case -- you know, we haven't discussed the jury

24    instructions, but you asked a good question of Mr. Burck:

25    Well, at the end of this, is that even really a defense?

1    The fact that your Co-Defendant said it's okay, is that

2    something that you're going to tell the jury that they can

3    consider, and that's an affirmative defense to this, is

4    that?  You know, is this state in Charlie Kim's mind

5    actually going to be a defense?

6         Because we may get to the end of this, where we've

7    said there is no quid pro quo.  They've said that there is.

8    And the jury says:  Well, okay.  I believe them, but I also

9    believe the judge and the prosecutors who say that's not a

10   defense.

11        And so you end up with all Defendants that have

12   been convicted of a quid pro quo that didn't happen.

13        THE COURT:  All right.  Thank you, sir.

14        MR. BURCK:  Real quickly, if I may.

15        THE COURT:  Quickly, Mr. Burck.

16        MR. BURCK:  Your Honor, I just wanted to address

17   two issues that I think the Government raised in terms of

18   the length of the trial, the practical issue.

19        They said that the two trials will be the same

20   length.  I'm not sure how that's possible, given that there

21   are, I believe, two or three independent charges against

22   Admiral Burke.  They're not against our clients.

23        We will of course -- if the Government's intention

24   is to offer up all the evidence they're going to present for

25   those three charges against our clients, who are not

1    charged, we're obviously going to seek to have that

2    excluded.

3            And there are reams of WhatsApps between Person 3

4    and Admiral Burke, which we think are incriminating as to

5    Admiral Burke.  But they shouldn't be admissible against our

6    clients.

7            In fact, our clients were on the face of it

8    deceived about who she was.  There was no co-conspirator

9    statements between Person 3 and Admiral Burke and our

10   clients.  So there's all this other evidence, including when

11   she testifies.  She had one meeting with them.  One meeting

12   with Mr. Kim and Ms. Messenger.  She had a relationship with

13   Admiral Burke.

14           So the length of the trial, your Honor, I question

15   whether or not that could possibly be true.

16           THE COURT:  Yes.

17           MR. BURCK:  So that's the one thing.

18           The only other last point, your Honor, is that on

19   Person 3, just the point -- and this is something the

20   Government had mentioned, but I just wanted to highlight

21   again the prejudice -- a strange position to be in -- to my

22   Co-Defendant here:  That in sworn testimony, Person 3 has

23   said that she was surprised by Mr. Kim and Ms. Messenger's

24   discussion with her present at this lunch about this job

25   for -- this job for Admiral Burke.  And she says that she

1    thought maybe they just didn't understand what was going on,

2    that they just didn't understand the rules.

3            In contrast, she says, Of course Admiral Burke

4    knew we weren't supposed to be having this conversation,

5    that he was not supposed to be having his conversation.

6    That's been her sworn testimony.  And that's what we believe

7    will be on the stand.

8            THE COURT:  Thank you.

9            Yes.  I think we've got to draw a line on this.

10           Let me take a moment.  I want to consider this.

11           MR. ROTHSTEIN:  Sorry, your Honor.  Just one --

12           THE COURT:  No.

13           (Thereupon a recess was taken, after which the

14    following proceedings were had:)

15           THE COURT:  All right.  Before the Court is ECF

16    26, Defendants Kim's and Messenger's joint motion to sever;

17    also, ECF 44, Defendant Burke's motion to sever; the

18    Government's opposition; and the Defendants' replies.

19           Under Rule 14, if joinder of offenses or

20    Defendants in an indictment, an information or a

21    consolidation for trial appears to prejudice a Defendant or

22    the Government, the Court may order separate trials of

23    counts, sever the Defendants' trials or provide any other

24    relief that justice requires.

25           As an initial matter, the Defendants raise several

1    theories.  First, they claim that severance is warranted

2    based on a mismatch in evidence.

3         I am not persuaded on that point.  I think the

4    case law is decidedly against them there.

5         They also raise a concern about -- well,

6    Defendants Kim and Messenger raise *Bruton* concerns involving

7    Defendant Burke's post-arrest statements.

8         I think that would also not be a basis for

9    severance.

10        I do, however, find that the Defendants, in

11   particular Defendant Burke, has met his burden on the motion

12   to sever on irreconcilable conflicts between the theories

13   and evidence here.

14        I think that Defendants Kim and Messenger have

15   both been very clear that they are going to be portraying

16   him as a liar and someone who portrayed what he was doing as

17   aboveboard and portrayed what they were doing as permissible

18   because this was not a defense contract.

19        I understand the Government's argument that that

20   is not really a defense to the charge of bribery.  However,

21   I think it would theoretically go to the corrupt intent with

22   which they were acting.  And I can certainly see how they

23   would have an incentive to describe him as a liar.

24        I think as to the potential conflict going the

25   other way, that is certainly less strong.  However,

1    Mr. Parlatore's point at the end that he would be suggesting

2    that Defendants Kim and Messenger may well be guilty of

3    attempted bribery, well, as I understand the case law, that

4    would be a crime here as an inchoate offense, that the

5    Government could be seeking an instruction at trial.

6         And so to the extent that Mr. Parlatore would be

7    pointing the finger at the Defendants Kim and Messenger and

8    saying that they were trying to bribe his client, but

9    unsuccessfully, we indeed have mutually inconsistent and

10   irreconcilable theories, with both sides on the defense

11   pointing fingers at the other.

12        This is not a decision I make lightly.  It is, I

13   think, a very close call.  But given the arguments and the

14   evidence from all sides here, I think that the more prudent

15   course is to sever the trial now rather than waiting to see

16   whether things work out exactly as the defense expects it to

17   be.

18        All right.  Mr. Burck, you'd been seeking an early

19   trial.  I'm not even sure if we could-- well, I'm not sure I

20   could potentially do something in November.

21        Let me ask, Ms. Fifield, is that even realistic at

22   this point from the Government's perspective?

23        MS. FIFIELD:  The date is not firmly set, but I

24   have another trial that I anticipate being set for the first

25   week in December in Jackson, Mississippi, that will of

1    course involve travel and trial prep.  So Government counsel

2    is not available for the rest of this year.

3              THE COURT:  Okay.  So I think what I'm going to do

4    is look to keep the currently set trial, but as to

5    Defendants Kim and Messenger.

6              Mr. Parlatore, are you looking for a continuance?

7              MR. PARLATORE:  Yes, your Honor, we are.

8              THE COURT:  It looks like I'm wide open starting

9    in May.  How about Tuesday, May 6th, for a trial as to

10   Defendant Burke?

11             Ms. Fifield, does that work for the Government?

12             MS. FIFIELD:  One moment, please, your Honor.

13             (Confers with co-counsel privately.)

14             MR. ROTHSTEIN:  Your Honor, there's an issue I

15   think we would have to address *ex parte* at sidebar.

16             THE COURT:  Oh, sure.

17             (Whereupon, the following bench conference was

18   held:)

19   ██████████████████████████████████████████

20   ████████████████████████████████████████

21   ████████████████████████████████████

22   ████████████████████████████████████████████

23   ██████████████████

24   ██████████████████████████████████████████

25   ████████████████████████████████████████████



1

2

3

4          (Whereupon, the following proceedings were had in

5     open court:)

6          THE COURT:  That'll be under seal.

7          In light of the Government's *ex parte*

8     representations, I'm switching my mind as to where we're --

9     who's being continued.

10          Mr. Parlatore, you're on for the currently set

11     date.

12          Mr. Burck and Mr. D'Agostino, I want to look with

13     you all as to May.

14          May 6th.  Does that work for your client,

15     Mr. Burck?

16          MR. BURCK:  Your Honor, could we be heard briefly

17     on that?

18          Your Honor, we're not privy to what the Government

19     has said.  However, I think Mr. Parlatore would also join me

20     in this, that for both Defendants we would prefer -- we are

21     ready to go on February 19th.  And I think Mr. Parlatore

22     would prefer to go later, even if he of course -- the

23     defense will be ready.

24          But we'd request that the Court reconsider the

25     dates.  Again, we don't know what the Government said.  But

1  we would request that we have a speedy trial, including --

2  if it's going to be in November, we'll ask for November.

3  The Government's big.  They have a lot of lawyers.  But that

4  would -- that'll be extending their wait for trial for

5  almost a year from indictment.

6         So we would object to having our trial date put

7  out that far.

8         THE COURT:  I understand.

9         I'm overruling your objection.  Obviously, I've

10 just granted you the severance that you requested.

11        MR. BURCK:  Yes, your Honor.

12        THE COURT:  And I'm going to decide who goes

13 first.

14        MR. BURCK:  Okay, your Honor.

15        THE COURT:  So April -- I'm sorry.  May 6th.  Does

16 that work for your client, Mr. Burck?

17        MR. BURCK:  Your Honor, if I may have a moment.

18        THE COURT:  Sure.

19        MR. BURCK:  (Confers with client privately.)

20        Yes, your Honor.  That works.

21        THE COURT:  And Mr. D'Agostino?

22        MR. D'AGOSTINO:  Yes, your Honor.  May 6th does

23 work.

24        THE COURT:  So we'll set Defendants Kim and

25 Messenger for a jury trial on May 6th at 9:00 a.m. here in

1      Courtroom 2.

2              Let's set a pretrial conference.  How about

3      Friday, April 18th, at 10:00 a.m.?  Does that work for the

4      Government?

5              MS. FIFIELD:  Yes, your Honor.

6              THE COURT:  And, Mr. Burck, does that work for

7      you?

8              MR. BURCK:  Yes, your Honor.

9              THE COURT:  And Mr. D'Agostino?

10             MR. D'AGOSTINO:  Yes, your Honor.

11             THE COURT:  So we're setting that for pretrial

12     conference on April 18th.

13             I'm not going to set other briefing just yet.

14     We've got a while yet.

15             Do we have a briefing schedule as to Defendant

16     Burke, Ms. Fifield?

17             MS. FIFIELD:  I believe the Court has not yet set

18     a briefing schedule.

19             THE COURT:  So let's set -- I do want to set a

20     briefing schedule for Defendant Burke.  We have a pretrial

21     conference, though.  Yes?

22             MS. FIFIELD:  Yes, your Honor.

23             THE COURT:  Great.

24             MR. PERRY:  Your Honor?

25             THE COURT:  Yes.

```
 1                    MR. PERRY:  Avi Perry on behalf of Mr. Kim.

 2                    If it's possible to set the pretrial one week

 3          earlier so it doesn't conflict with Passover, that would be

 4          appreciated.

 5                    THE COURT:  That's fine.

 6                    MR. PERRY:  Thank you, your Honor.

 7                    THE COURT:  I think I had said April 18.  So April

 8          11.

 9                    Any objection?

10                    MS. FIFIELD:  No objection.

11                    THE COURT:  Without objection, April 11th, 10:00

12          a.m., will be the pretrial conference for Defendants Kim and

13          Messenger.

14                    Ms. Fifield, do you remember when my pretrial

15          conference date is for Defendant Burke?

16                    MS. FIFIELD:  I believe it was January 31st.

17                    THE COURT:  Okay.  So I want to work backwards

18          from there.  January 17th will be the date for any replies

19          in support of motions.  That will also be the date that I'll

20          be looking for proposed final jury instructions and

21          preliminary jury instructions and proposed voir dire

22          questions.

23                    I'll look for all of those from the parties by

24          January 17th.

25                    As to the voir dire questions and preliminary jury
```

1    instructions, my hope is that the parties will be able to

2    work cooperatively to give joint proposed responses to

3    those.  To the extent the parties cannot agree, I'll ask you

4    to just indicate where you disagree and briefly explain why.

5            I'll send you my standard voir dire questions.

6    I'm certainly happy to consider tweaks to them, but not

7    wholesale rewriting.  I try to keep the voir dire pretty

8    quick, so don't be expecting a number of new questions.

9            So that's all on January 17th.

10            I think I'll give the parties longer than usual

11   because we've got the holidays there.  I'll say December

12   20th should be your date for any oppositions.

13            And how about November 22nd as your date for any

14   motions *in limine*, motions to dismiss, 404(b) notices and

15   expert notices.  All of those should be filed by November

16   22nd.

17            Any questions -- again, that's obviously only as

18   to Defendant Burke.

19            Any questions about that schedule, Ms. Fifield?

20            MS. FIFIELD:  No questions.

21            THE COURT:  And Mr. Parlatore?

22            MR. PARLATORE:  Just if we can get a quick idea

23   from the Government as to the state of discovery.

24            THE COURT:  Yes.  I'll ask them that.

25            MR. PARLATORE:  Because we may -- you know, in

1    those motions there, you gave a list; but suppression is

2    also going to be potentially an issue in there.

3            THE COURT:  Yes.  If I didn't say motions to

4    suppress, that should be in there.

5            MR. PARLATORE:  I wanted to make sure.

6            THE COURT:  Ms. Fifield, why don't you tell us

7    where things stand as to discovery and otherwise where the

8    case is.

9            MS. FIFIELD:  The Government sent out Production

10   4, I believe, two weeks -- approximately two weeks ago.  The

11   Government anticipates one more production, which will be

12   Production 5, which should be sent out on September 30.  And

13   that should substantially complete the Government's

14   discovery in this case subject to additional investigation,

15   interviews and the like.

16           THE COURT:  Okay.  Ms. Fifield, I'm not thinking

17   we need to do another status conference as to Defendant

18   Burke.  Well, does that make sense to you?

19           MS. FIFIELD:  Yes.  The Government does not

20   require an additional status conference as to Defendant

21   Burke.

22           But the Government would be moving to exclude time

23   within which speedy trial must commence, I think, until the

24   deadline -- or the beginning of the briefing schedule, so

25   until November 22nd.

1          THE COURT:  And I take it there's no plea offers

2      that we need to be putting on the record?

3          MS. FIFIELD:  There is nothing to put on the

4      record, your Honor.

5          THE COURT:  Thank you.

6          Mr. Parlatore, any concerns or responses to any of

7      that?

8          MR. PARLATORE:  That sounds fine, as long as that

9      last production isn't another 3 million pages.

10         THE COURT:  Let's then look for a status

11     conference for the other two Defendants.  How about 2:00

12     p.m. on November 22nd?

13         Ms. Fifield, does that work for you?

14         MS. FIFIELD:  No objection from the Government.

15         THE COURT:  Mr. Burck, does that work for you?

16         MR. BURCK:  Yes, your Honor.

17         THE COURT:  And Mr. D'Agostino?

18         MR. D'AGOSTINO:  Yes, your Honor.  That's the day

19     after Thanksgiving, I believe.

20         THE COURT:  It's a week before Thanksgiving.

21         MR. D'AGOSTINO:  Okay.  That's okay.

22         THE COURT:  I think it is.

23         MR. BURCK:  That's right, your Honor.

24         THE COURT:  I definitely did not intend to do a

25     day after Thanksgiving.

1          MR. D'AGOSTINO:  I just wasn't sure.  Thank you.

2          THE COURT:  So we'll set as to Defendants Kim and

3   Messenger a 2:00 p.m. status conference on November 22nd.

4          Ms. Fifield, I think just for the record we should

5   make clear speedy trial is as to those Defendants as well.

6          MS. FIFIELD:  Yes.  The Government would move to

7   exclude time from speedy trial as to Kim and Messenger as

8   well.

9          THE COURT:  Mr. Burck, any objection?

10          MR. BURCK:  Your Honor, an objection -- I'm just

11   preserving a prior objection.  Of course, the Court has

12   granted us a severance.  So just for the record, we would

13   object to that.

14          THE COURT:  Understood.

15          Mr. D'Agostino?

16          MR. D'AGOSTINO:  No objection.

17          THE COURT:  So I am tolling the speedy trial clock

18   as to Defendant Burke until the start of the briefing

19   schedule.

20          I do think it sounds like there's another

21   production that is expected to be made as to all Defendants.

22   As Mr. Parlatore referenced a moment ago, I recognize that

23   significant discovery has been going out and that there's a

24   need for all defense attorneys to be able to review it and

25   prepare for it.

```
1            I'm also tolling the speedy trial clock as to

2   Defendants Kim and Messenger until the next status

3   conference.  I do note I've just granted a severance motion

4   for them, which has required me to push out the trial longer

5   than I expected.  But I think that is in recognition of the

6   concerns that they've raised.  And of course, the same

7   discovery issues remain with them.

8            Ms. Fifield, anything further for the Government?

9            MS. FIFIELD:  Nothing further.

10           THE COURT:  Mr. Parlatore?

11           MR. PARLATORE:  No, your Honor.

12           THE COURT:  Mr. Burck?

13           MR. BURCK:  No, your Honor.  Thank you.

14           THE COURT:  Mr. D'Agostino?

15           MR. D'AGOSTINO:  No, your Honor.

16           THE COURT:  Thanks.

17           And, Mr. Burck and Mr. D'Agostino, if you want to

18   waive your clients' presence at the next status conference,

19   that's fine with me.

20           MR. BURCK:  Thank you, your Honor.

21           THE COURT:  Thanks, folks.

22           (Proceedings concluded.)

23

24

25
```

1                              **<u>CERTIFICATE</u>**

2

3                    I, LISA EDWARDS, RDR, CRR, do hereby

4     certify that the foregoing constitutes a true and accurate

5     transcript of my stenographic notes, and is a full, true,

6     and complete transcript of the proceedings produced to the

7     best of my ability.

8

9

10                   Dated this 24th day of September, 2024.

11

12                <u>/s/ Lisa Edwards, RDR, CRR</u>
                  Official Court Reporter
13                United States District Court for the
                    District of Columbia
14                333 Constitution Avenue, Northwest
                  Washington, D.C. 20001
15                (202) 354-3269

16

17

18

19

20

21

22

23

24

25

## /

**/s** [1] - 57:12

## 1

**1** [1] - 30:1
**1.2** [1] - 40:1
**1000** [1] - 1:19
**10016** [1] - 1:24
**10601** [1] - 2:8
**10:00** [2] - 50:3, 51:11
**10:14** [1] - 1:7
**11** [1] - 51:8
**118** [1] - 28:20
**11th** [1] - 51:11
**1300** [1] - 2:3
**1301** [1] - 1:19
**14** [3] - 33:20, 37:12, 43:19
**167** [1] - 26:5
**17th** [4] - 1:23, 51:18, 51:24, 52:9
**18** [1] - 51:7
**18th** [2] - 50:3, 50:12
**1974** [1] - 28:23
**1999** [1] - 26:6
**19th** [1] - 48:21

## 2

**2** [2] - 30:3, 50:1
**2000** [1] - 28:21
**20001** [2] - 2:12, 57:14
**20005** [1] - 2:4
**202** [2] - 2:13, 57:15
**2021** [6] - 22:16, 23:18, 29:10, 32:24, 32:25
**2022** [2] - 17:8, 23:25
**2024** [2] - 1:6, 57:10
**20530** [2] - 1:17, 1:20
**20th** [1] - 52:12
**22nd** [5] - 52:13, 52:16, 53:25, 54:12, 55:3
**23** [1] - 1:6
**24-00265** [1] - 1:3
**24-265** [1] - 3:2
**24th** [1] - 57:10
**26** [1] - 43:16
**260** [1] - 1:23
**2:00** [2] - 54:11, 55:3

## 3

**3** [31] - 15:21, 15:22, 16:12, 17:4, 17:19, 21:5, 21:6, 21:9, 21:18, 22:6, 22:9, 22:11, 22:12, 30:6, 33:8, 34:5, 34:7, 34:10, 34:12, 34:18, 34:22, 39:23, 39:24, 42:3, 42:9, 42:19, 42:22, 54:9
**30** [1] - 53:12
**302** [2] - 22:13, 22:19
**31st** [1] - 51:16
**333** [2] - 2:11, 57:14
**354-3269** [2] - 2:13, 57:15
**36** [1] - 28:21

## 4

**4** [1] - 53:10
**404(b** [2] - 14:1, 52:14
**44** [1] - 43:17
**445** [1] - 2:7
**494** [1] - 28:22

## 5

**5** [1] - 53:12

## 6

**601** [1] - 1:16
**605** [1] - 2:7
**628** [1] - 26:6
**635** [1] - 26:6
**6706** [1] - 2:12
**6th** [5] - 46:9, 48:14, 49:15, 49:22, 49:25

## 9

**900** [1] - 2:4
**955** [1] - 28:22
**9:00** [1] - 49:25

## A

**a.m** [4] - 1:7, 49:25, 50:3, 51:12
**ability** [1] - 57:7
**able** [6] - 27:4, 27:19, 32:19, 38:11, 52:1,
55:24
**aboveboard** [2] - 33:11, 44:17
**acceptable** [1] - 4:18
**accepting** [1] - 32:8
**accomplished** [1] - 7:18
**according** [1] - 27:20
**accurate** [1] - 57:4
**accuse** [1] - 35:18
**acknowledge** [1] - 19:5
**acknowledging** [1] - 16:2
**acquittal** [1] - 18:21
**acquitted** [2] - 23:3, 23:4, 23:12
**acting** [1] - 44:22
**Action** [1] - 1:3
**adamant** [1] - 6:10
**adding** [1] - 19:15
**additional** [3] - 28:9, 53:14, 53:20
**address** [3] - 3:24, 41:16, 46:15
**addressed** [1] - 39:25
**adequately** [1] - 11:19
**Admiral** [46] - 3:11, 4:20, 7:13, 10:17, 12:15, 12:22, 13:3, 13:9, 14:10, 15:5, 15:15, 16:13, 16:25, 17:4, 18:9, 18:24, 19:2, 19:25, 21:7, 21:9, 21:21, 22:1, 22:6, 22:25, 23:25, 24:5, 24:10, 24:21, 27:8, 31:20, 33:8, 33:15, 36:1, 38:21, 39:6, 39:12, 40:10, 40:11, 40:14, 41:22, 42:4, 42:5, 42:9, 42:13, 42:25, 43:3
**admiral** [2] - 16:1, 20:24
**admissible** [4] - 13:13, 32:16, 32:17, 42:5
**advance** [1] - 13:6
**advantage** [2] - 28:3, 37:6
**afraid** [1] - 5:1
**ago** [2] - 53:10, 55:22
**agree** [4] - 23:20, 33:7, 40:6, 52:3
**agreement** [1] - 7:1
**ahead** [1] - 9:15
**alleged** [3] - 7:17, 12:12, 23:2
**allowed** [1] - 20:4
**almost** [2] - 33:2, 49:5
**alone** [1] - 10:14
**America** [1] - 3:2
**AMERICA** [1] - 1:3
**angle** [1] - 9:17
**answer** [2] - 12:24, 25:14
**antagonistic** [3] - 11:17, 25:15, 29:2
**anticipate** [2] - 31:8, 45:24
**anticipates** [1] - 53:11
**ANTOINETTE** [1] - 1:22
**anyway** [2] - 14:11, 24:14
**apart** [2] - 33:2, 35:18
**appeal** [1] - 35:1
**appear** [1] - 6:21
**APPEARANCES** [1] - 2:1
**aPPEARANCES** [1] - 1:14
**appellate** [1] - 37:24
**appreciated** [1] - 51:4
**approach** [1] - 37:5
**April** [10] - 29:6, 29:10, 29:13, 32:24, 49:15, 50:3, 50:12, 51:7, 51:11
**argue** [1] - 33:10
**arguing** [2] - 8:16, 32:17
**argument** [7] - 4:13, 5:1, 27:15, 27:18, 31:9, 33:14, 44:19
**arguments** [8] - 4:7, 4:10, 5:5, 8:14, 10:9, 25:11, 39:3, 45:13
**arrangement** [2] - 26:21, 33:2
**arrest** [1] - 44:7
**aside** [3] - 29:7, 32:9, 34:2
**aspects** [1] - 14:18
**aspirational** [1] - 40:7
**attack** [1] - 18:14
**attacking** [1] - 6:6
**attempted** [3] - 39:5, 39:7, 45:3
**attendance** [1] - 29:12
**attorney** [2] - 3:19, 7:19
**ATTORNEY'S** [1] - 1:15
**attorneys** [2] - 25:16, 55:24
**AUSA** [1] - 3:8
**authorization** [2] - 39:17, 39:18
**available** [3] - 34:23, 34:25, 46:2
**Avenue** [5] - 1:19, 1:23, 2:7, 2:11, 57:14
**Avi** [2] - 3:16, 51:1
**AVI** [1] - 2:2
**avoid** [1] - 31:24
**aware** [2] - 14:1, 14:3

## B

**backwards** [1] - 51:17
**bad** [1] - 20:15
**baiting** [1] - 35:18
**based** [6] - 26:3, 27:15, 34:23, 39:3, 44:2
**basis** [4] - 4:4, 33:18, 35:2, 44:8
**becomes** [1] - 18:10
**BEFORE** [1] - 1:11
**begin** [1] - 39:19
**beginning** [4] - 10:16, 24:19, 26:24, 53:24
**begins** [1] - 4:25
**behalf** [3] - 3:7, 3:11, 51:1
**belabor** [1] - 23:22
**belief** [1] - 33:13
**bench** [1] - 46:17
**benefit** [1] - 30:5
**benefits** [1] - 34:23
**best** [3] - 4:13, 5:1, 57:7
**better** [1] - 13:4
**between** [11] - 4:12, 5:5, 16:11, 17:3, 21:9, 22:6, 24:16, 32:23, 42:3, 42:9, 44:12
**Beyler** [4] - 21:4, 21:17, 29:9, 29:11
**big** [3] - 6:19, 24:8, 49:3
**bit** [2] - 11:23, 38:21
**board** [2] - 24:10, 24:11
**borne** [1] - 21:8
**bribe** [2] - 20:4, 45:8

**bribery** [11] - 20:3, 20:8, 20:11, 23:7, 23:10, 23:12, 39:5, 39:8, 44:20, 45:3

**brief** [6] - 3:24, 9:6, 14:14, 21:7, 26:17, 37:8

**briefing** [7] - 22:12, 50:13, 50:15, 50:18, 50:20, 53:24, 55:18

**briefings** [1] - 5:4

**briefly** [2] - 48:16, 52:4

**bring** [1] - 15:7

**bringing** [1] - 37:21

**brought** [2] - 9:15, 24:13

**Bruton** [3] - 3:25, 10:16, 44:6

**BURCK** [27] - 2:2, 3:15, 11:15, 14:12, 15:9, 15:11, 15:17, 15:22, 18:3, 18:6, 20:6, 25:4, 25:7, 41:14, 41:16, 42:17, 48:16, 49:11, 49:14, 49:17, 49:19, 50:8, 54:16, 54:23, 55:10, 56:13, 56:20

**Burck** [27] - 3:16, 9:16, 10:23, 11:14, 11:20, 14:8, 25:6, 26:1, 26:7, 27:7, 27:13, 27:22, 29:7, 29:23, 32:15, 39:4, 40:24, 41:15, 45:18, 48:12, 48:15, 49:16, 50:6, 54:15, 55:9, 56:12, 56:17

**burden** [1] - 44:11

**burke** [1] - 19:25

**Burke** [94] - 3:3, 3:11, 4:19, 4:20, 6:25, 7:13, 10:17, 11:20, 11:21, 12:3, 12:15, 12:23, 13:3, 13:10, 13:14, 14:10, 15:5, 15:6, 15:16, 16:13, 16:25, 17:4, 17:15, 18:9, 18:24, 19:2, 19:8, 19:25, 21:7, 21:9, 21:21, 22:2, 22:6, 22:15, 22:25, 23:4, 23:25, 24:5, 24:10, 24:22, 25:11, 26:2, 26:8, 26:20, 26:22, 26:25, 27:3, 27:8, 27:14, 29:6, 29:15, 30:2, 30:3, 30:12, 31:20, 32:14,

32:17, 33:8, 33:15, 34:7, 34:8, 34:9, 34:12, 34:19, 35:3, 35:10, 35:13, 35:18, 35:21, 36:1, 38:21, 39:7, 39:12, 40:10, 40:11, 40:14, 41:22, 42:4, 42:5, 42:9, 42:13, 42:25, 43:3, 44:11, 46:10, 50:16, 50:20, 51:15, 52:18, 53:18, 53:21, 55:18

**BURKE** [2] - 1:6, 1:22

**Burke's** [4] - 26:16, 34:22, 43:17, 44:7

**bury** [1] - 5:1

**business** [1] - 31:14

**BY** [1] - 2:9

---

## C

**candid** [1] - 17:19

**cannot** [1] - 52:3

**case** [35] - 5:4, 6:15, 9:1, 9:6, 11:10, 11:19, 13:11, 14:6, 16:7, 17:14, 19:1, 19:2, 21:5, 22:8, 22:10, 24:19, 25:4, 28:19, 31:5, 31:17, 33:24, 36:20, 36:23, 37:15, 37:16, 37:24, 38:5, 38:7, 38:9, 39:9, 40:23, 44:4, 45:3, 53:8, 53:14

**Case** [1] - 3:2

**cases** [7] - 10:4, 29:3, 31:3, 36:14, 38:8, 38:11

**casual** [1] - 34:4

**central** [1] - 22:10

**certain** [2] - 5:9, 10:22

**certainly** [7] - 6:2, 6:23, 20:10, 38:3, 44:22, 44:25, 52:6

**CERTIFICATE** [1] - 57:1

**certify** [1] - 57:4

**cetera** [1] - 12:3

**challenge** [1] - 15:14

**chances** [1] - 27:1

**change** [1] - 9:20

**characterize** [1] - 7:10

**characterizing** [1] - 5:9

**charge** [4] - 23:3,

23:9, 23:10, 44:20

**charged** [7] - 20:17, 21:2, 21:5, 26:12, 38:23, 39:1, 42:1

**charges** [3] - 16:24, 41:21, 41:25

**CHARLIE** [1] - 1:6

**Charlie** [11] - 3:3, 20:21, 30:14, 39:2, 39:4, 39:8, 39:18, 39:22, 40:2, 40:17, 41:4

**check** [1] - 14:5

**cherry** [1] - 14:21

**cherry-pick** [1] - 14:21

**chief** [3] - 9:1, 11:10, 31:5

**choose** [1] - 6:23

**chronic** [1] - 30:15

**circuit** [2] - 36:20, 36:24

**Circuit** [3] - 10:4, 26:6, 28:22

**circular** [1] - 8:19

**circumstance** [1] - 39:10

**cited** [4] - 36:21, 37:16, 37:17, 38:7

**claim** [2] - 36:19, 44:1

**clear** [8] - 12:6, 28:19, 33:24, 34:2, 36:7, 36:16, 44:15, 55:5

**clearer** [1] - 10:3

**clearly** [4] - 17:10, 37:4, 37:15, 40:1

**client** [22] - 4:14, 5:23, 6:4, 6:10, 6:18, 8:21, 10:10, 10:13, 11:19, 12:6, 16:14, 16:18, 19:9, 25:12, 25:22, 25:23, 25:24, 38:17, 45:8, 48:14, 49:16, 49:19

**client's** [2] - 11:5, 15:8

**clients** [10] - 18:18, 21:13, 23:3, 23:8, 24:20, 41:22, 41:25, 42:6, 42:7, 42:10

**clients'** [1] - 56:18

**clock** [2] - 55:17, 56:1

**close** [2] - 37:2, 45:13

**closer** [2] - 4:11, 4:20

**closing** [1] - 8:13

**Co** [30] - 4:16, 5:6, 5:8, 5:12, 6:13, 6:22, 6:23, 7:6, 7:15, 7:24, 8:2, 8:11, 9:21, 10:9, 10:19, 11:4, 19:11, 26:4, 26:10, 26:12, 27:9, 28:4, 33:9, 34:19, 36:13, 36:17, 38:23, 40:4, 41:1, 42:22

**co** [10] - 6:17, 7:17, 14:24, 20:18, 21:3, 35:6, 35:7, 36:11, 42:8, 46:13

**co-conspirator** [3] - 14:24, 36:11, 42:8

**co-conspirators** [3] - 7:17, 20:18, 21:3

**co-counsel** [4] - 6:17, 35:6, 35:7, 46:13

**Co-Defendant** [7] - 5:8, 8:11, 19:11, 26:10, 36:17, 41:1, 42:22

**Co-Defendant's** [2] - 26:4, 28:4

**Co-Defendants** [19] - 4:16, 5:6, 5:12, 6:13, 6:22, 6:23, 7:6, 7:15, 7:24, 8:2, 10:9, 10:19, 11:4, 26:12, 27:9, 33:9, 34:19, 38:23, 40:4

**Co-Defendants'** [2] - 9:21, 36:13

**colleagues** [1] - 4:19

**Columbia** [2] - 2:11, 57:13

**COLUMBIA** [2] - 1:1, 1:16

**coming** [4] - 24:10, 24:11, 26:15, 34:10

**commence** [1] - 53:23

**commit** [2] - 13:23, 26:12

**commitment** [1] - 33:4

**committed** [5] - 6:1, 6:9, 6:10, 26:10, 38:23

**committing** [1] - 8:7

**communications** [1] - 15:5, 15:8, 24:7, 36:10

**Company** [13] - 29:22, 30:2, 30:3, 30:5, 30:8, 30:12, 30:16, 30:18, 30:22,

30:25, 34:6, 34:10, 34:23

**comparable** [1] - 36:21

**complain** [1] - 28:1

**complaint** [1] - 26:15

**complete** [2] - 53:13, 57:6

**compromised** [1] - 25:20

**compromises** [2] - 32:5, 32:6

**concealed** [1] - 26:20

**concealment** [1] - 26:16

**concern** [2] - 10:8, 44:5

**concerned** [2] - 31:15, 31:18

**concerns** [6] - 20:19, 25:16, 25:18, 44:6, 54:6, 56:6

**concluded** [1] - 56:22

**conclusion** [1] - 8:2

**conducted** [1] - 37:19

**confer** [1] - 35:5

**conference** [12] - 46:17, 50:2, 50:12, 50:21, 51:12, 51:15, 53:17, 53:20, 54:11, 55:3, 56:3, 56:18

**CONFERENCE** [1] - 1:11

**confers** [3] - 35:7, 46:13, 49:19

**confessions** [2] - 5:9, 29:5

**confidential** [1] - 30:11

**conflict** [3] - 28:7, 44:24, 51:3

**Conflicting** [1] - 26:18

**conflicts** [2] - 27:25, 44:12

**confusing** [2] - 5:14, 8:1

**confusion** [1] - 24:3

**connection** [1] - 35:2

**consider** [3] - 41:3, 43:10, 52:6

**consolidation** [1] - 43:21

**conspiracy** [14] - 12:12, 19:18, 20:17, 23:2, 23:3, 23:6, 23:9, 23:12, 26:19, 26:21,

28:25, 32:12, 33:4

**conspirator** [3] - 14:24, 36:11, 42:8

**conspirators** [3] - 7:17, 20:18, 21:3

**constantly** [1] - 21:25

**constitutes** [1] - 57:4

**Constitution** [2] - 2:11, 57:14

**CONT'D** [1] - 2:1

**contemporaneous** [4] - 15:5, 19:7, 20:13, 21:8

**context** [2] - 5:25, 7:6

**continuance** [1] - 46:6

**continued** [1] - 48:9

**contract** [10] - 7:1, 16:1, 16:3, 26:25, 30:2, 35:10, 35:15, 35:19, 35:22, 44:18

**contractor** [2] - 7:2, 12:16

**contractors** [1] - 16:5

**contracts** [2] - 27:2, 30:5

**contrary** [1] - 29:23

**contrast** [2] - 16:15, 43:3

**conversation** [6] - 21:4, 29:13, 33:7, 39:13, 43:4, 43:5

**conversations** [6] - 17:19, 19:20, 21:3, 23:16, 26:23, 29:8, 32:22, 32:24, 39:10, 39:12

**convicted** [3] - 23:8, 23:11, 41:12

**conviction** [2] - 37:20, 38:2

**convince** [1] - 34:9

**convinced** [1] - 4:9

**convincing** [1] - 34:8

**cooperate** [1] - 5:20

**cooperating** [1] - 8:9

**cooperatively** [1] - 52:2

**cooperator** [2] - 7:16, 8:15

**correct** [2] - 5:22, 10:1

**correctly** [4] - 5:24, 10:16, 38:7, 40:15

**corroborate** [1] - 24:25

**corrupt** [6] - 12:22,

20:7, 29:16, 35:12, 35:21, 44:21

**Counsel** [1] - 3:4

**counsel** [6] - 3:8, 6:17, 35:6, 35:7, 46:1, 46:13

**counts** [3] - 13:14, 33:23, 43:23

**couple** [1] - 22:20, 33:2

**course** [14] - 4:15, 5:10, 12:8, 16:4, 16:8, 19:6, 23:5, 41:23, 43:3, 45:15, 46:1, 48:22, 55:11, 56:6

**COURT** [89] - 1:1, 3:9, 3:13, 3:17, 3:20, 5:22, 6:14, 7:14, 8:21, 9:2, 9:5, 9:9, 10:8, 11:5, 11:13, 14:8, 15:7, 15:10, 15:15, 15:21, 17:23, 18:5, 20:1, 25:3, 25:6, 25:8, 27:6, 28:15, 31:1, 31:7, 31:13, 31:15, 33:6, 33:19, 34:16, 35:4, 35:23, 36:23, 37:7, 38:12, 38:16, 41:13, 41:15, 42:16, 43:8, 43:12, 43:15, 46:3, 46:8, 46:16, 48:6, 49:8, 49:12, 49:15, 49:18, 49:21, 49:24, 50:6, 50:9, 50:11, 50:19, 50:23, 50:25, 51:5, 51:7, 51:11, 51:17, 52:21, 52:24, 53:3, 53:6, 53:16, 54:1, 54:5, 54:10, 54:15, 54:17, 54:20, 54:22, 54:24, 55:2, 55:9, 55:14, 55:17, 56:10, 56:12, 56:14, 56:16, 56:21

**court** [1] - 48:5

**Court** [13] - 2:10, 2:10, 28:21, 30:13, 33:22, 37:23, 43:15, 43:22, 48:24, 50:17, 55:11, 57:12, 57:13

**Court's** [1] - 27:24

**COURTROOM** [1] - 3:1

**Courtroom** [1] - 50:1

**courts** [1] - 37:4

**crazy** [3] - 19:17, 19:21, 24:22

**create** [1] - 18:13

**created** [2] - 32:3, 32:4

**creating** [1] - 5:13

**credibility** [5] - 6:5, 6:6, 18:14, 18:15, 39:24

**crime** [6] - 6:1, 6:10, 6:11, 26:10, 38:23, 45:4

**crimes** [1] - 26:12

**criminal** [4] - 14:1, 19:18, 20:10, 20:14

**Criminal** [1] - 1:3, 3:2

**critical** [2] - 13:3, 21:25

**cross** [10] - 7:8, 7:22, 7:24, 8:5, 8:9, 8:11, 11:2, 22:22, 26:8, 26:11

**cross-examination** [1] - 7:8

**cross-examinations** [1] - 11:2

**cross-examine** [2] - 22:22, 26:8

**cross-examining** [6] - 7:22, 7:24, 8:5, 8:9, 8:11, 26:11

**CRR** [3] - 2:9, 57:3, 57:12

## D

**D'Agostino** [9] - 3:19, 3:20, 48:12, 49:21, 50:9, 54:17, 55:15, 56:14, 56:17

**D'AGOSTINO** [10] - 2:6, 2:6, 3:18, 49:22, 50:10, 54:18, 54:21, 55:1, 55:16, 56:15

**D.C** [9] - 1:6, 1:17, 1:20, 2:4, 2:12, 26:6, 28:21, 28:22, 57:14

**Damaging** [1] - 26:17

**date** [8] - 45:23, 48:11, 49:6, 51:15, 51:18, 51:19, 52:12, 52:13

**Dated** [1] - 57:10

**dates** [1] - 48:25

**days** [3] - 31:12, 31:13, 31:14

**deadline** [1] - 53:24

**deal** [9] - 9:23, 15:25, 17:5, 17:6, 24:8, 29:17, 34:8, 35:14, 36:9

**dealings** [1] - 24:7

**deceived** [1] - 42:8

**December** [2] - 45:25, 52:11

**decide** [3] - 8:25, 37:20, 49:12

**decidedly** [1] - 44:4

**decision** [2] - 8:22, 45:12

**decisions** [1] - 16:6

**declarant** [1] - 6:6

**declare** [1] - 31:21

**decline** [1] - 10:21

**defeats** [1] - 25:14

**defend** [1] - 11:19

**DEFENDANT** [3] - 1:21, 2:2, 2:6

**Defendant** [32] - 5:8, 5:18, 8:11, 11:20, 19:11, 25:11, 25:13, 26:2, 26:8, 26:10, 27:3, 29:6, 29:14, 32:17, 33:21, 34:19, 34:22, 36:17, 41:1, 42:22, 43:17, 43:21, 44:7, 44:11, 46:10, 50:15, 50:20, 51:15, 52:18, 53:17, 53:20, 55:18

**defendant's** [2] - 32:5, 32:7

**Defendant's** [3] - 26:4, 28:4, 29:2

**Defendants** [53] - 1:8, 4:16, 5:6, 5:12, 5:17, 6:13, 6:22, 6:23, 7:6, 7:15, 7:24, 8:2, 10:9, 10:19, 11:4, 25:17, 25:18, 26:1, 26:3, 26:9, 26:12, 27:7, 27:9, 27:25, 32:10, 32:11, 32:21, 33:3, 33:9, 33:21, 34:19, 36:12, 36:21, 38:23, 40:4, 41:11, 43:16, 43:20, 43:25, 44:6, 44:10, 44:14, 45:2, 45:7, 46:5, 48:20, 49:24, 51:12, 54:11, 55:2, 55:5, 55:21, 56:2

**Defendants'** [5] - 9:21, 26:20, 36:13, 43:18, 43:23

**defense** [22] - 4:14, 6:7, 7:2, 7:18, 12:3, 12:16, 19:3, 20:4, 20:21, 22:1, 33:14, 35:24, 40:25, 41:3, 41:5, 41:10, 44:18,

44:20, 45:10, 45:16, 48:23, 55:24

**Defenses** [1] - 26:18

**defenses** [6] - 4:12, 8:3, 11:17, 25:15, 29:2, 40:21

**defer** [1] - 10:23

**definitely** [2] - 9:21, 54:24

**degree** [2] - 28:7, 32:4

**denied** [1] - 38:3

**DEPARTMENT** [1] - 1:18

**DEPUTY** [1] - 3:1

**describe** [1] - 44:23

**desire** [1] - 26:4

**detail** [1] - 19:20

**determination** [1] - 14:6

**diametrically** [2] - 8:3, 16:16

**differences** [1] - 4:12

**different** [12] - 7:16, 7:20, 9:17, 23:2, 25:2, 36:14, 37:17, 37:18, 38:6, 38:10, 39:22, 40:2

**differently** [1] - 12:7

**differing** [2] - 5:4, 11:2

**difficult** [1] - 31:16

**dire** [4] - 51:21, 51:25, 52:5, 52:7

**direct** [1] - 30:2

**directing** [1] - 26:24

**directly** [1] - 16:3

**disagree** [1] - 52:4

**disclosed** [1] - 26:22

**discovery** [7] - 11:25, 20:19, 52:23, 53:7, 53:14, 55:23, 56:7

**discretion** [3] - 37:13, 37:25, 38:4

**discussed** [1] - 40:23

**discussing** [1] - 21:18

**discussion** [3] - 6:25, 12:22, 42:24

**discussions** [23] - 12:4, 12:8, 12:9, 12:10, 12:11, 12:14, 13:17, 13:20, 15:6, 15:25, 16:5, 16:18, 16:19, 16:23, 17:8, 17:9, 17:11, 17:13, 19:5, 19:9, 23:19, 24:1, 39:19

**dismiss** [1] - 52:14
**DISTRICT** [4] - 1:1,
1:1, 1:12, 1:16
**District** [4] - 2:10,
2:11, 28:21, 57:13
**district** [1] - 57:13
**disturb** [1] - 37:20
**doctrine** [1] - 29:3
**document** [1] - 23:25
**documents** [3] -
16:8, 24:4, 25:1
**DOD** [1] - 33:11
**down** [1] - 8:5
**dozen** [1] - 30:23
**drastic** [1] - 9:11
**draw** [1] - 43:9
**dream** [1] - 5:16
**drinks** [1] - 34:11
**during** [3] - 4:15, 5:7,
10:20

## E

**early** [3] - 12:1, 21:4,
45:18
**ECF** [2] - 43:15,
43:17
**Edelin** [1] - 28:20
**EDELIN** [1] - 28:20
**Edwards** [1] - 57:12
**EDWARDS** [2] - 2:9,
57:3
**effectively** [1] -
19:25
**effort** [1] - 30:4
**either** [4] - 16:3,
28:14, 38:11, 38:22
**elaborated** [1] -
29:19
**elicited** [1] - 6:16
**email** [6] - 29:15,
29:19, 29:20, 30:10,
35:16
**emails** [13] - 6:3,
14:13, 19:7, 19:19,
20:14, 27:22, 29:22,
29:24, 30:1, 30:8,
30:15, 30:17
**EMANUEL** [1] - 2:3
**employee** [2] - 27:4,
30:25
**employees** [3] -
12:19, 21:16, 30:23
**employment** [3] -
4:16, 26:23, 34:22
**end** [14] - 8:13, 19:3,
19:10, 24:20, 31:17,
31:19, 37:24, 38:1,
40:14, 40:23, 40:25,

41:6, 41:11, 45:1
**engage** [1] - 35:21
**engaged** [4] - 13:17,
13:20, 19:18, 39:4
**engaging** [1] - 27:3
**enter** [3] - 25:22,
25:23, 27:23
**entering** [1] - 27:10
**entire** [2] - 8:6, 20:24
**entirely** [1] - 25:15
**entitle** [2] - 25:18,
28:2
**entitled** [6] - 26:3,
28:2, 28:3, 28:5, 36:6,
36:7
**equally** [1] - 32:11
**especially** [4] - 4:12,
18:15, 20:13, 30:16
**ESQ** [7] - 1:15, 1:18,
1:21, 1:22, 2:2, 2:2,
2:6
**essentially** [3] - 8:7,
12:4, 29:5
**established** [1] -
36:12
**et** [1] - 12:3
**events** [1] - 5:19
**evidence** [67] - 4:7,
4:8, 6:16, 6:20, 7:4,
10:11, 10:19, 12:9,
12:25, 13:2, 13:8,
13:10, 13:12, 13:15,
15:2, 17:1, 18:15,
19:12, 20:2, 20:13,
22:21, 23:13, 23:23,
25:21, 26:15, 27:10,
27:11, 28:9, 28:13,
28:18, 28:24, 29:1,
29:4, 29:12, 29:14,
29:24, 30:13, 31:11,
32:10, 32:14, 32:16,
32:20, 32:21, 33:7,
33:12, 34:3, 34:7,
34:12, 34:21, 35:1,
35:8, 35:11, 35:12,
36:10, 39:3, 39:11,
39:15, 39:16, 39:20,
40:4, 41:24, 42:10,
44:2, 44:13, 45:14
**Evidence** [1] - 26:17
**evidentiary** [1] -
15:14
**ex** [2] - 46:15, 48:7
**exact** [1] - 36:9
**exactly** [11] - 5:7,
7:3, 7:25, 8:4, 15:4,
15:19, 18:9, 19:16,
19:20, 45:16
**examination** [1] - 7:8
**examinations** [1] -

11:2
**examine** [2] - 22:22,
26:8
**examined** [1] - 10:5
**examining** [6] - 7:22,
7:24, 8:5, 8:9, 8:11,
26:11
**example** [2] - 15:12,
28:8
**exception** [2] -
15:12, 36:13
**exchange** [3] -
35:10, 35:21
**exclude** [2] - 53:22,
55:7
**excluded** [1] - 42:2
**exercised** [1] - 37:25
**exhibit** [1] - 10:18
**exhibits** [7] - 7:11,
11:3, 14:14
**expect** [5] - 5:22,
6:16, 7:8, 31:3, 31:4
**expected** [2] - 55:21,
56:5
**expecting** [5] -
10:12, 14:9, 15:7,
25:12, 52:8
**expects** [3] - 25:25,
26:1, 45:16
**expense** [1] - 28:13
**expert** [1] - 52:15
**explain** [2] - 21:6,
52:4
**explaining** [1] -
19:24
**explicitly** [3] - 23:17,
29:3, 30:8
**extending** [1] - 49:4
**extensive** [1] - 11:1
**extent** [7] - 6:3,
10:22, 17:18, 21:23,
22:22, 45:6, 52:3
**extreme** [4] - 32:3,
32:5, 36:18, 37:5
**extremely** [3] - 5:14,
19:10, 22:1

## F

**F.2d** [1] - 28:22
**F.3d** [1] - 26:5
**F.Supp.2d** [1] -
28:20
**face** [1] - 42:7
**fact** [11] - 10:2, 12:8,
13:16, 13:17, 13:19,
16:19, 19:7, 24:10,
33:1, 41:1, 42:7
**facts** [5] - 36:21,

36:22, 38:5, 38:7,
38:9
**fair** [3] - 8:23, 8:24,
32:7
**fall** [1] - 35:18
**Far** [1] - 26:17
**far** [3] - 6:8, 20:18,
49:7
**fault** [1] - 18:19
**favor** [1] - 31:9
**favors** [1] - 31:17
**February** [1] - 48:21
**feed** [1] - 33:13
**fell** [1] - 33:2
**felt** [1] - 29:16
**Fifield** [3] - 3:7,
20:1, 25:8, 28:15,
31:1, 35:4, 37:7, 38:6,
40:6, 45:21, 46:11,
51:14, 52:19, 53:6,
53:16, 54:13, 55:4,
56:8
**fifield** [1] - 50:16
**FIFIELD** [29] - 1:18,
3:6, 25:9, 27:13,
28:18, 31:6, 31:8,
31:14, 31:25, 33:17,
33:24, 34:20, 35:5,
36:4, 36:25, 45:23,
46:12, 50:5, 50:17,
50:22, 51:10, 51:16,
52:20, 53:9, 53:19,
54:3, 54:14, 55:6,
56:9
**filed** [2] - 11:23,
52:15
**filing** [1] - 9:6
**filings** [1] - 16:10
**final** [1] - 51:20
**fine** [5] - 12:16,
24:17, 51:5, 54:8,
56:19
**finger** [13] - 5:17,
5:23, 6:8, 6:24, 10:10,
18:8, 24:21, 25:13,
28:16, 38:19, 38:22,
38:25, 45:7
**fingers** [2] - 5:13,
45:11
**firing** [1] - 8:19
**firmly** [1] - 45:23
**first** [8] - 4:23, 9:25,
29:11, 29:17, 33:14,
44:1, 45:24, 49:13
**Floor** [1] - 1:23
**focus** [2] - 4:5, 4:22
**foiled** [1] - 27:1
**folks** [3] - 3:9, 3:17,
56:21
**following** [3] - 43:14,

46:17, 48:4
**fooled** [1] - 33:10
**FOR** [6] - 1:1, 1:15,
1:16, 1:21, 2:2, 2:6
**forego** [1] - 22:5
**foregoing** [1] - 57:4
**former** [1] - 30:4
**forth** [1] - 8:16
**forward** [3] - 3:4, 4:2,
36:1
**four** [2] - 13:13,
20:24
**four-star** [1] - 20:24
**frankly** [4] - 4:8,
7:16, 11:9, 38:13
**frequently** [1] - 37:3
**Friday** [1] - 50:3
**front** [2] - 22:15,
31:16
**full** [1] - 57:5
**furthermore** [1] -
26:9
**future** [1] - 30:5

## G

**generally** [1] - 16:4
**Gilliam** [1] - 26:5
**GILLIAM** [1] - 26:5
**given** [4] - 4:18,
17:20, 41:20, 45:13
**goal** [1] - 27:3
**GOVERNMENT** [1] -
1:15
**Government** [45] -
3:5, 4:2, 5:19, 6:4,
7:22, 8:14, 8:15,
10:21, 11:10, 13:2,
13:10, 14:11, 14:18,
15:2, 15:14, 15:18,
19:12, 22:5, 22:13,
23:1, 23:14, 27:23,
29:24, 33:15, 33:22,
37:6, 39:6, 39:21,
41:17, 42:20, 43:22,
45:5, 46:1, 46:11,
48:18, 48:25, 50:4,
52:23, 53:9, 53:11,
53:19, 53:22, 54:14,
55:6, 56:8
**Government's** [19] -
5:16, 7:9, 7:11, 9:1,
11:2, 11:3, 14:6,
14:19, 16:7, 16:10,
31:4, 31:9, 41:23,
43:18, 44:19, 45:22,
48:7, 49:3, 53:13
**granted** [3] - 49:10,
55:12, 56:3

great [4] - 12:17, 18:17, 33:25, 50:23
GROUP [1] - 1:22
guess [2] - 5:15, 9:22
guilt [1] - 29:2
guilty [3] - 28:25, 40:22, 45:2
gun [2] - 28:10, 28:11
guy [1] - 8:5
Guy [2] - 28:9, 28:10
guys [1] - 28:8

**H**

habitually [1] - 17:16
halfway [1] - 31:19
Hamilton [1] - 2:7
hand [1] - 16:17
happy [2] - 4:23, 52:6
hard [1] - 14:13
head [3] - 25:10, 27:17, 37:11
headquarters [1] - 34:25
hear [4] - 4:23, 18:25, 21:14, 21:22
heard [2] - 27:22, 48:16
hearing [6] - 4:9, 8:25, 10:8, 10:9, 27:6, 35:24
hearsay [2] - 14:23, 15:12
heart [1] - 22:8
held [1] - 46:18
help [2] - 30:4, 40:11
helpful [2] - 20:2, 22:24
hereby [1] - 57:3
high [1] - 33:11
high-profile [1] - 33:11
highlight [1] - 42:20
highlighting [1] - 24:9
himself [1] - 11:19
hire [1] - 16:6
hired [2] - 34:19, 34:20
history [1] - 14:1
hit [2] - 25:10, 37:11
holidays [1] - 52:11
honestly [1] - 40:15
Honor [59] - 3:1, 3:6, 3:10, 3:15, 3:18, 4:25, 10:15, 11:15, 11:16,

11:23, 13:23, 14:12, 15:9, 15:13, 15:17, 16:9, 17:3, 18:3, 19:19, 20:6, 21:6, 22:11, 23:22, 25:5, 25:7, 25:9, 31:25, 37:11, 37:13, 38:3, 41:16, 42:14, 42:18, 43:11, 46:7, 46:12, 46:14, 48:16, 48:18, 49:11, 49:14, 49:17, 49:20, 49:22, 50:5, 50:8, 50:10, 50:22, 50:24, 51:6, 54:4, 54:16, 54:18, 54:23, 55:10, 56:11, 56:13, 56:15, 56:20
HONORABLE [1] - 1:11
hope [2] - 40:7, 52:1
hoping [1] - 40:10
hostile [1] - 28:5
houses [1] - 18:22
hundreds [2] - 19:19, 29:25
hypothetical [4] - 9:18, 32:8, 32:9, 38:12

**I**

idea [5] - 6:20, 7:14, 14:22, 27:12, 52:22
identical [1] - 31:11
identify [1] - 3:4
illustrates [1] - 5:6
imagine [1] - 20:1
important [1] - 26:14
importantly [1] - 29:10
impression [1] - 22:17
improper [2] - 8:2, 27:18
improperly [1] - 40:22
inapplicable [1] - 29:3
incentive [2] - 18:13, 44:23
inchoate [1] - 45:4
inclination [1] - 14:7
inclined [4] - 9:3, 13:24, 13:25, 14:4
include [2] - 11:1, 30:24
included [2] - 14:14, 29:14
includes [1] - 30:16

including [4] - 15:18, 21:17, 42:10, 49:1
inconsistent [2] - 34:3, 45:9
incriminating [1] - 42:4
inculpate [1] - 11:20
inculpating [1] - 14:23
indeed [1] - 45:9
independent [5] - 28:13, 28:18, 28:24, 29:1, 41:21
independently [1] - 32:11
indicate [1] - 52:4
indicia [1] - 4:18
indictment [8] - 13:14, 14:19, 16:24, 26:13, 33:21, 38:24, 43:20, 49:5
Individual [1] - 39:23
informate [1] - 30:18
informating [1] - 30:18
information [1] - 43:20
initial [1] - 43:25
instance [2] - 7:16, 27:15
instances [1] - 27:16, 27:19
instead [2] - 31:4, 40:18
instruction [1] - 45:5
instructions [4] - 40:24, 51:20, 51:21, 52:1
integral [1] - 27:2
intend [3] - 6:20, 27:14, 54:24
intent [7] - 12:21, 12:22, 20:7, 20:15, 29:16, 35:13, 44:21
intention [2] - 15:1, 41:23
interactions [1] - 13:9
interest [1] - 6:5
interested [1] - 4:9
interests [1] - 13:6
internal [4] - 24:8, 29:22, 30:19, 30:22
interview [2] - 10:17, 11:6
interviews [1] - 53:15
intimate [2] - 34:4, 34:13
introduce [5] - 6:20,

10:24, 11:10, 14:9, 15:1
introduced [2] - 6:4, 11:4
investigation [2] - 24:12, 53:14
investors [7] - 12:18, 14:16, 21:16, 30:9, 30:10, 39:1, 39:2
involve [1] - 46:1
involved [1] - 24:15
involving [1] - 44:6
irreconcilable [4] - 4:12, 44:12, 45:10
irreconcilably [1] - 6:12
issue [15] - 5:14, 10:16, 11:16, 12:20, 13:3, 16:19, 18:22, 18:23, 19:8, 19:10, 24:8, 24:16, 41:18, 46:14, 53:2
issues [7] - 6:2, 11:11, 14:2, 14:3, 39:24, 41:17, 56:7
it'll [1] - 19:2
itself [1] - 13:3

**J**

Jackson [1] - 45:25
jail [1] - 39:8
January [4] - 51:16, 51:18, 51:24, 52:9
job [21] - 7:1, 12:5, 13:17, 15:6, 16:5, 17:5, 17:6, 21:18, 22:15, 24:1, 24:13, 24:14, 29:17, 34:14, 35:10, 35:14, 35:16, 35:19, 35:22, 42:24, 42:25
join [2] - 27:4, 48:19
joinder [2] - 33:20, 43:19
joined [1] - 3:11
joining [1] - 30:12
joint [4] - 4:2, 10:12, 43:16, 52:2
JOSHUA [1] - 1:15
Joshua [1] - 3:8
Judge [2] - 9:13, 11:8
JUDGE [1] - 1:12
judge [1] - 41:9
Juliette [1] - 29:9
July [5] - 11:24, 22:16, 29:21, 30:10, 32:25

Jump [1] - 24:7
Jump's [1] - 27:1
jury [14] - 5:14, 7:25, 8:7, 20:12, 28:12, 40:15, 40:22, 40:23, 41:2, 41:8, 49:25, 51:20, 51:21, 51:25
JUSTICE [1] - 1:18
justice [1] - 43:24
justification [1] - 30:17
justify [1] - 36:17

**K**

Kathryn [1] - 3:6
KATHRYN [1] - 1:18
keep [8] - 9:4, 17:24, 26:4, 28:4, 30:11, 36:6, 46:4, 52:7
key [1] - 28:19
KIM [2] - 1:6, 2:2
Kim [59] - 3:3, 3:16, 6:3, 12:9, 13:9, 13:13, 13:19, 13:22, 14:15, 14:20, 15:24, 17:5, 17:11, 17:17, 17:21, 18:16, 21:1, 21:11, 22:4, 22:14, 22:18, 23:20, 24:2, 24:20, 26:14, 26:23, 27:21, 29:5, 29:15, 29:17, 29:19, 30:1, 30:14, 32:14, 32:18, 34:5, 34:21, 35:9, 39:2, 39:4, 39:8, 39:18, 39:22, 40:2, 40:17, 42:12, 42:23, 44:6, 44:14, 45:2, 45:7, 46:5, 49:24, 51:1, 51:12, 55:2, 55:7, 56:2
Kim's [3] - 20:21, 41:4, 43:16
kind [10] - 4:8, 5:13, 5:15, 8:13, 8:18, 9:10, 17:12, 27:11, 33:8, 38:13
kinds [1] - 22:7
knows [1] - 13:9

**L**

lack [1] - 13:4
largely [1] - 17:14
last [5] - 22:11, 31:5, 37:8, 42:18, 54:9
lastly [1] - 35:8
late [1] - 3:25

law [16] - 9:7, 20:10, 28:19, 31:17, 32:1, 32:2, 33:24, 36:7, 36:16, 36:23, 37:6, 37:16, 37:24, 44:4, 45:3
LAW [2] - 1:22, 2:6
lawyers [1] - 49:3
lead [2] - 8:1, 18:21
least [3] - 18:25, 23:5, 34:22
legal [1] - 34:2
legion [2] - 16:11, 22:7
length [4] - 31:11, 41:18, 41:20, 42:14
lens [1] - 36:4
Leonard [1] - 28:22
less [1] - 44:25
level [1] - 24:3
liability [3] - 20:9, 20:10, 20:11
liar [9] - 18:12, 19:25, 27:14, 32:18, 33:15, 44:16, 44:23
lied [14] - 17:16, 17:17, 18:20, 19:16, 21:7, 27:15, 27:20, 27:21, 32:18, 38:25, 39:2
lies [4] - 13:5, 14:9, 17:16, 23:17
light [1] - 48:7
lightly [1] - 45:12
likely [1] - 14:11
limine [1] - 52:14
line [1] - 43:9
LISA [2] - 2:9, 57:3
Lisa [1] - 57:12
list [1] - 53:1
listen [2] - 12:11, 12:19
listening [1] - 27:17
listservs [1] - 30:24
literally [2] - 20:15, 22:4
LLP [1] - 1:22
location [1] - 34:13
look [7] - 5:3, 20:12, 37:19, 46:4, 48:12, 51:23, 54:10
looked [3] - 10:2, 36:19, 36:20
looking [3] - 24:6, 46:6, 51:20
looks [2] - 14:6, 46:8
lunch [6] - 22:16, 33:7, 34:4, 34:5, 34:13, 42:24
lying [4] - 15:16,

27:8, 27:9, 32:14

## M

Madison [1] - 1:23
mandate [2] - 33:25, 34:1
manifest [1] - 40:9
markedly [3] - 38:5, 38:9, 38:10
massage [1] - 34:24
mastermind [1] - 20:15
matches [1] - 5:19
matter [1] - 43:25
McFADDEN [1] - 1:11
mean [5] - 4:1, 22:7, 31:2, 31:23, 38:24
meanwhile [1] - 16:20
meeting [9] - 29:6, 29:11, 29:14, 29:21, 30:11, 32:23, 40:3, 42:11
meetings [1] - 29:10
MEGHAN [1] - 1:6
Meghan [4] - 3:3, 3:19, 29:18, 34:14
members [2] - 21:2, 28:25
men [1] - 38:13
mentioned [1] - 42:20
messages [6] - 16:11, 21:9, 22:6, 34:15, 35:15
MESSENGER [2] - 1:7, 2:6
Messenger [44] - 3:3, 3:19, 3:21, 6:3, 13:13, 13:19, 14:15, 15:24, 16:14, 17:12, 17:17, 17:21, 21:11, 22:14, 22:19, 23:20, 24:2, 24:21, 26:14, 26:23, 27:21, 29:5, 29:15, 29:18, 32:15, 32:18, 34:5, 34:14, 34:21, 35:9, 35:15, 40:17, 42:12, 44:6, 44:14, 45:2, 45:7, 46:5, 49:25, 51:13, 55:3, 55:7, 56:2
Messenger's [3] - 30:19, 42:23, 43:16
messengers [1] - 17:3
met [1] - 44:11

might [5] - 9:11, 9:12, 14:21, 18:20, 23:11
military [2] - 21:2, 30:4
million [2] - 40:1, 54:9
mind [5] - 12:21, 15:12, 20:22, 41:4, 48:8
minds [2] - 21:15, 32:23
minute [1] - 31:2
misbalance [1] - 4:8
mislead [1] - 21:25
misleading [3] - 13:16, 17:11, 17:12
misleads [1] - 13:5
misled [1] - 21:19
mismatch [1] - 44:2
Mississippi [1] - 45:25
mistrial [1] - 31:21
moment [5] - 35:5, 43:10, 46:12, 49:17, 55:22
morning [10] - 3:6, 3:9, 3:10, 3:13, 3:14, 3:15, 3:17, 3:18, 3:20, 3:21
most [5] - 7:4, 7:5, 11:24, 19:2, 19:3
motion [9] - 3:22, 3:25, 11:23, 18:2, 38:3, 43:16, 43:17, 44:11, 56:3
motions [5] - 51:19, 52:14, 53:1, 53:3
mountain [2] - 19:12, 19:13
move [1] - 55:6
moving [1] - 53:22
MR [59] - 3:10, 3:15, 3:18, 4:25, 5:25, 6:19, 7:21, 8:24, 9:3, 9:8, 9:13, 10:15, 11:8, 11:15, 14:12, 15:9, 15:11, 15:17, 15:22, 18:3, 18:6, 20:6, 25:4, 25:7, 37:10, 38:15, 38:20, 41:14, 41:16, 42:17, 43:11, 46:7, 46:14, 48:16, 49:11, 49:14, 49:17, 49:19, 49:22, 50:8, 50:10, 50:24, 51:1, 51:6, 52:22, 52:25, 53:5, 54:8, 54:16, 54:18, 54:21, 54:23, 55:1, 55:10, 55:16, 56:11,

56:13, 56:15, 56:20
MS [28] - 3:6, 25:9, 27:13, 28:18, 31:6, 31:8, 31:14, 31:25, 33:17, 33:24, 34:20, 35:5, 36:4, 36:25, 45:23, 46:12, 50:5, 50:17, 50:22, 51:10, 51:16, 52:20, 53:9, 53:19, 54:3, 54:14, 55:6, 56:9
must [3] - 25:19, 28:16, 53:23
mutually [4] - 11:17, 25:15, 29:2, 45:9

## N

nail [2] - 25:10, 37:11
naval [3] - 21:11, 21:12, 21:22
Navy [18] - 13:16, 13:17, 16:22, 17:7, 17:9, 17:16, 17:21, 20:24, 21:17, 23:17, 24:1, 24:6, 24:16, 26:21, 27:2, 27:8, 30:4, 39:17
necessarily [3] - 6:15, 9:18, 34:6
need [7] - 4:5, 6:15, 22:3, 23:5, 53:17, 54:2, 55:24
needle [1] - 28:14
needs [2] - 23:5, 30:18
Never [1] - 17:7
never [3] - 23:19, 26:21, 35:20
new [1] - 52:8
New [4] - 1:19, 1:24, 2:8
Next [2] - 24:7, 27:1
next [2] - 32:10, 56:2, 56:18
nobody [2] - 6:10, 38:2
nobody's [1] - 38:1
none [7] - 36:21
normally [2] - 8:25, 10:2
Northwest [5] - 1:16, 1:19, 2:3, 2:11, 57:14
note [2] - 26:14, 56:3
noted [1] - 10:16
notes [1] - 57:5
nothing [3] - 20:16, 54:3, 56:9
notices [2] - 52:14,

52:15
November [9] - 32:25, 45:20, 49:2, 52:13, 52:15, 53:25, 54:12, 55:3
number [2] - 14:13, 52:8
numbers [1] - 39:23

## O

O'NEILL [1] - 1:22
O'Neill [2] - 3:12, 3:14
object [3] - 15:3, 49:6, 55:13
objection [9] - 49:9, 51:9, 51:10, 51:11, 54:14, 55:9, 55:10, 55:11, 55:16
obtain [1] - 27:1
obvious [3] - 7:6, 10:4, 35:3
obviously [11] - 7:5, 9:6, 13:23, 14:5, 18:13, 22:22, 37:22, 39:24, 42:1, 49:9, 52:17
occasion [1] - 27:21
occasions [2] - 27:20, 32:19
occurred [1] - 37:2
OF [6] - 1:1, 1:3, 1:11, 1:16, 1:18, 2:6
offense [1] - 45:4
offenses [2] - 33:20, 43:19
offer [5] - 9:17, 14:20, 15:3, 35:10, 41:24
offered [1] - 24:13
offering [2] - 8:3, 35:13
offers [1] - 54:1
OFFICE [1] - 1:15
OFFICES [1] - 2:6
official [5] - 21:12, 21:22, 33:12, 57:12
Official [1] - 2:10
one [21] - 7:6, 7:15, 15:19, 16:17, 18:25, 19:4, 22:11, 27:14, 28:9, 28:10, 28:12, 31:4, 38:18, 38:22, 42:11, 42:17, 43:11, 46:12, 51:2, 53:11
ones [1] - 38:6
ongoing [1] - 17:9
open [4] - 9:4, 24:18,

64

46:8, 48:5
**opening** [1] - 14:14
**openly** [2] - 21:18, 22:15
**opportunity** [3] - 3:24, 9:24, 10:6
**opposed** [2] - 8:3, 16:17
**opposition** [1] - 43:18
**oppositional** [4] - 6:12, 7:4, 8:19, 40:21
**oppositions** [1] - 52:12
**option** [1] - 9:4
**order** [4] - 13:1, 33:22, 37:13, 43:22
**orders** [1] - 37:23
**ordinarily** [1] - 5:16
**otherwise** [1] - 53:7
**outcome** [1] - 18:18
**outlined** [1] - 25:17
**outset** [1] - 31:24
**overcome** [1] - 15:13
**overly** [1] - 4:7
**overruling** [1] - 49:9
**overshare** [2] - 40:5, 40:6
**oversharer** [1] - 30:15
**own** [5] - 13:6, 13:9, 14:22, 15:8, 35:13

### P

**p.m** [2] - 54:12, 55:3
**package** [1] - 34:8
**pages** [1] - 54:9
**paint** [1] - 27:14
**papers** [3] - 6:21, 12:6, 19:4
**PARLATORE** [22] - 1:21, 1:22, 3:10, 4:25, 5:25, 6:19, 7:21, 8:24, 9:3, 9:8, 9:13, 10:15, 11:8, 37:10, 38:15, 38:20, 46:7, 52:22, 52:25, 53:5, 54:8, 56:11
**Parlatore** [20] - 3:11, 4:13, 4:23, 7:14, 17:24, 18:13, 25:12, 25:25, 26:7, 27:24, 37:8, 45:6, 46:6, 48:10, 48:19, 48:21, 52:21, 54:6, 55:22, 56:10
**Parlatore's** [3] - 18:2, 25:11, 45:1

**part** [3] - 20:8, 26:18, 27:2
**parte** [2] - 46:15, 48:7
**participated** [1] - 32:11
**participating** [1] - 33:12
**particular** [2] - 31:21, 44:11
**particularly** [3] - 27:7, 29:9, 33:1
**parties** [4] - 51:23, 52:1, 52:3, 52:10
**pass** [1] - 28:1
**Passover** [1] - 51:3
**path** [1] - 11:18
**pending** [1] - 16:2
**people** [15] - 13:5, 14:21, 16:2, 16:20, 17:10, 17:17, 17:18, 19:19, 20:16, 21:17, 23:5, 29:8, 29:25, 30:21
**per** [1] - 34:20
**period** [1] - 23:24
**perjury** [1] - 8:7
**permissible** [1] - 44:17
**perpetual** [1] - 23:14
**PERRY** [4] - 2:2, 50:24, 51:1, 51:6
**Perry** [2] - 3:16, 51:1
**persisted** [1] - 24:9
**person** [3] - 8:17, 20:15, 38:18
**Person** [28] - 15:21, 15:22, 16:12, 17:4, 17:19, 21:5, 21:6, 21:9, 21:18, 22:6, 22:9, 22:11, 22:12, 33:8, 34:5, 34:7, 34:10, 34:12, 34:18, 34:22, 39:24, 42:3, 42:9, 42:19, 42:22
**personal** [4] - 14:2, 17:20, 21:20, 35:2
**personally** [1] - 30:6
**personnel** [4] - 29:23, 30:9, 30:16, 30:22
**perspective** [8] - 12:13, 12:20, 12:24, 18:7, 18:17, 21:24, 24:14, 45:22
**persuaded** [1] - 44:3
**Phase** [3] - 30:1, 30:3, 30:6
**phased** [1] - 29:21
**pick** [1] - 14:21

**pieces** [1] - 29:20
**pitch** [1] - 29:13
**place** [1] - 36:5
**places** [1] - 36:2
**Plains** [1] - 2:8
**Plaintiff** [1] - 1:4
**plan** [1] - 29:21
**planned** [1] - 33:8
**plea** [1] - 54:1
**plentiful** [2] - 12:9, 13:8
**point** [17] - 5:17, 10:1, 18:24, 22:11, 23:22, 25:12, 27:24, 28:19, 30:14, 34:8, 38:25, 39:14, 42:18, 42:19, 44:3, 45:1, 45:22
**pointing** [12] - 5:13, 5:23, 6:8, 6:24, 10:10, 18:8, 24:21, 28:16, 38:18, 38:22, 45:7, 45:11
**portray** [1] - 33:9
**portrayed** [2] - 44:16, 44:17
**portraying** [1] - 44:15
**position** [8] - 6:12, 16:4, 25:24, 28:15, 33:10, 35:23, 36:5, 42:21
**possibility** [2] - 6:22, 31:24
**possible** [2] - 41:20, 51:2
**possibly** [1] - 11:6, 42:15
**post** [1] - 44:7
**post-arrest** [1] - 44:7
**posture** [1] - 9:6
**potential** [1] - 44:24
**potentially** [2] - 45:20, 53:2
**pox** [1] - 18:21
**practical** [1] - 41:18
**practically** [1] - 31:2
**prefer** [2] - 48:20, 48:22
**prejudice** [13] - 19:1, 31:20, 32:3, 32:4, 32:12, 33:21, 33:25, 37:14, 38:9, 42:21, 43:21
**prejudicial** [5] - 4:7, 19:11, 22:1, 33:16, 33:18
**preliminary** [3] - 39:12, 51:21, 51:25
**premature** [1] -

27:25
**prep** [1] - 46:1
**prepare** [1] - 55:25
**presence** [1] - 56:18
**present** [7] - 12:4, 21:3, 22:10, 25:4, 29:8, 41:24, 42:24
**presented** [2] - 10:18, 13:11
**presenting** [1] - 40:15
**preserved** [1] - 9:23
**preserving** [1] - 55:11
**press** [1] - 12:2
**presumably** [1] - 22:8
**pretrial** [9] - 9:24, 37:13, 37:23, 50:2, 50:11, 50:20, 51:2, 51:12, 51:14
**pretty** [2] - 9:11, 52:7
**prevent** [1] - 36:7
**primarily** [2] - 3:22, 6:17
**privately** [3] - 35:7, 46:13, 49:19
**privy** [1] - 48:18
**pro** [9] - 4:15, 4:17, 6:11, 7:12, 12:5, 40:16, 40:18, 41:7, 41:12
**problem** [3] - 5:18, 16:18, 24:5
**problematic** [2] - 27:11, 28:17
**Proceedings** [1] - 56:22
**proceedings** [3] - 43:14, 48:4, 57:6
**processes** [1] - 30:19
**produced** [1] - 57:6
**Production** [2] - 53:9, 53:12
**production** [3] - 53:11, 54:9, 55:21
**profile** [1] - 33:11
**progress** [1] - 23:24
**promote** [1] - 30:3
**prophylactically** [1] - 10:7
**proposed** [3] - 51:20, 51:21, 52:2
**propositions** [1] - 37:17
**prosecutor** [1] - 27:11
**prosecutors** [1] - 41:9

**prospect** [1] - 21:18
**prototypical** [1] - 28:8
**prove** [1] - 27:20
**provide** [1] - 43:23
**proving** [2] - 26:9, 26:11
**prudent** [1] - 45:14
**pull** [1] - 38:21
**purported** [1] - 14:9
**purpose** [4] - 26:9, 26:11, 27:18, 32:17
**push** [1] - 56:4
**pushed** [1] - 39:12
**pushing** [1] - 28:14
**put** [16] - 6:17, 10:20, 13:2, 14:11, 25:9, 25:22, 25:23, 29:5, 29:15, 29:17, 29:25, 30:8, 35:15, 35:17, 49:6, 54:3
**puts** [2] - 4:20, 30:15
**putting** [3] - 14:10, 16:7, 54:2

### Q

**questions** [7] - 51:22, 51:25, 52:5, 52:8, 52:17, 52:19, 52:20
**quick** [2] - 52:8, 52:22
**quickly** [2] - 41:14, 41:15
**quid** [9] - 4:15, 4:17, 6:11, 7:12, 12:5, 40:16, 40:18, 41:7, 41:12
**QUINN** [2] - 1:22, 2:3
**QUINN-O'NEILL** [1] - 1:22
**quite** [1] - 11:9
**quo** [8] - 4:15, 4:17, 6:11, 7:12, 12:5, 40:18, 41:7, 41:12
**quoted** [2] - 14:17, 14:18
**quoting** [1] - 29:18

### R

**raise** [4] - 20:18, 43:25, 44:5, 44:6
**raised** [5] - 5:5, 5:6, 18:22, 41:17, 56:6
**ran** [2] - 20:24
**rather** [3] - 9:23,

32:9, 45:15
**RDR** [3] - 2:9, 57:3, 57:12
**re** [1] - 33:3
**re-up** [1] - 33:3
**read** [1] - 37:12
**readily** [1] - 19:6
**reading** [1] - 6:21
**ready** [3] - 39:13, 48:21, 48:23
**real** [3] - 12:4, 12:11, 41:14
**realistic** [1] - 45:21
**realize** [2] - 12:14, 31:20
**really** [8] - 4:5, 5:11, 6:12, 11:18, 12:19, 38:8, 40:25, 44:20
**reams** [1] - 42:3
**reason** [9] - 9:9, 11:6, 11:22, 12:1, 18:1, 18:6, 19:21, 24:23, 37:1
**reasonably** [1] - 20:12
**received** [1] - 4:18
**recess** [1] - 43:13
**recharge** [1] - 39:7
**recognition** [1] - 56:5
**recognize** [1] - 55:22
**reconfirm** [1] - 33:3
**reconsider** [1] - 48:24
**record** [6] - 3:5, 10:3, 54:2, 54:4, 55:4, 55:12
**recruit** [1] - 34:5
**reengage** [1] - 33:3
**referenced** [1] - 55:22
**reflecting** [1] - 33:1
**reflects** [1] - 29:12
**related** [1] - 6:2
**relationship** [3] - 17:20, 21:21, 42:12
**relevant** [1] - 18:10
**relied** [1] - 29:8
**relief** [1] - 43:24
**relying** [1] - 28:21
**remain** [1] - 56:7
**remedy** [5] - 9:11, 9:24, 10:6, 32:3, 36:18
**remember** [1] - 51:14
**repeatedly** [3] - 20:20, 30:20, 32:22
**replies** [2] - 43:18, 51:18
**REPORTED** [1] - 2:9

**reported** [1] - 38:10
**Reporter** [2] - 2:10, 57:12
**representations** [1] - 48:8
**request** [2] - 48:24, 49:1
**requested** [1] - 49:10
**require** [1] - 53:20
**required** [4] - 28:7, 28:12, 32:5, 56:4
**requires** [1] - 43:24
**resemblance** [1] - 13:7
**respect** [1] - 16:24
**responded** [1] - 25:25
**responses** [2] - 52:2, 54:6
**rest** [1] - 46:2
**result** [1] - 40:21
**retire** [1] - 23:18
**retired** [1] - 17:9
**retirement** [3] - 27:5, 30:7, 30:12
**review** [1] - 55:24
**rewriting** [1] - 52:7
**risk** [4] - 4:3, 32:4, 32:9, 32:12
**ROBERT** [1] - 1:6
**Robert** [1] - 3:3
**Rocco** [1] - 3:18
**ROCCO** [2] - 2:6, 2:6
**room** [2] - 28:9, 38:13
**Room** [1] - 2:12
**Rothstein** [1] - 3:8
**ROTHSTEIN** [3] - 1:15, 43:11, 46:14
**Rule** [3] - 33:20, 37:12, 43:19
**rule** [1] - 37:22
**rules** [2] - 16:22, 43:2

## S

**salary** [1] - 40:1
**sales** [1] - 29:13
**salon** [1] - 34:24
**saw** [1] - 38:20
**schedule** [6] - 50:15, 50:18, 50:20, 52:19, 53:24, 55:19
**scheme** [2] - 20:8, 29:20
**se** [1] - 34:20
**seal** [1] - 48:6
**seats** [1] - 8:5

**second** [2] - 27:11, 29:13
**section** [2] - 26:17, 26:18
**secure** [1] - 30:5
**see** [9] - 3:23, 9:13, 11:5, 11:12, 11:18, 14:5, 17:23, 44:22, 45:15
**seek** [1] - 42:1
**seeking** [5] - 25:22, 25:23, 26:8, 45:5, 45:18
**sell** [1] - 34:22
**semblance** [1] - 13:7
**send** [1] - 52:5
**sends** [2] - 23:25, 24:2
**senior** [2] - 21:11, 21:17
**sense** [2] - 31:23, 53:18
**sent** [2] - 53:9, 53:12
**separate** [4] - 31:3, 33:22, 38:1, 43:22
**September** [3] - 1:6, 53:12, 57:10
**serious** [1] - 39:13
**services** [1] - 34:24
**set** [12] - 45:23, 45:24, 46:4, 48:10, 49:24, 50:2, 50:13, 50:17, 50:19, 51:2, 55:2
**sets** [1] - 36:11
**setting** [3] - 32:9, 34:2, 50:11
**sever** [9] - 3:23, 4:4, 11:23, 37:25, 43:16, 43:17, 43:23, 44:12, 45:15
**several** [1] - 43:25
**severance** [27] - 4:1, 8:4, 11:7, 18:1, 18:4, 25:19, 26:3, 28:2, 28:3, 28:4, 28:5, 31:10, 32:2, 33:18, 33:25, 34:1, 36:5, 36:18, 36:20, 36:22, 37:13, 37:23, 44:1, 44:9, 49:10, 55:12, 56:3
**severe** [2] - 19:1, 38:10
**severed** [1] - 36:15
**severing** [1] - 11:6
**shared** [1] - 34:11
**shot** [3] - 28:10, 28:11, 38:18
**show** [18] - 12:25,

13:3, 14:20, 15:4, 15:15, 15:18, 17:1, 23:13, 23:14, 23:23, 24:3, 25:1, 25:2, 30:13, 34:4, 34:7, 34:12, 34:21
**showing** [4] - 7:12, 16:8, 16:15, 17:15
**shows** [9] - 29:14, 32:10, 32:20, 32:21, 35:12, 39:11, 39:15, 39:16, 40:4
**side** [4] - 9:21, 19:4, 33:14, 38:11
**sidebar** [1] - 46:15
**sides** [3] - 37:17, 45:10, 45:14
**significant** [4] - 6:5, 18:23, 39:24, 55:23
**similar** [3] - 9:17, 38:7, 38:8
**similarities** [1] - 8:8
**simply** [2] - 5:3, 33:17
**sitting** [1] - 8:5
**situation** [12] - 4:21, 5:8, 5:12, 5:15, 6:18, 6:23, 7:23, 8:10, 12:7, 36:3, 38:17, 40:14
**skepticism** [1] - 37:5
**slimy** [1] - 29:16
**small** [1] - 32:13
**someone** [1] - 44:16
**sorry** [5] - 15:7, 23:22, 34:16, 43:11, 49:15
**sounds** [2] - 54:8, 55:20
**spades** [1] - 29:1
**specific** [7] - 6:16, 25:19, 25:21, 27:21, 32:6, 32:19
**speculating** [1] - 9:10
**speedy** [6] - 49:1, 53:23, 55:5, 55:7, 55:17, 56:1
**spend** [1] - 19:24
**squad** [1] - 8:19
**squarely** [1] - 40:20
**stage** [1] - 37:21
**stand** [3] - 7:7, 43:7, 53:7
**standard** [6] - 8:4, 10:1, 34:2, 37:18, 40:20, 52:5
**star** [2] - 15:19, 20:24
**stark** [1] - 19:14
**start** [2] - 11:16,

55:18
**started** [1] - 18:4
**starting** [3] - 3:5, 25:10, 46:8
**state** [3] - 15:12, 41:4, 52:23
**statements** [9] - 4:3, 12:2, 14:15, 14:23, 14:24, 22:4, 36:11, 42:9, 44:7
**States** [7] - 2:10, 3:2, 3:7, 26:5, 28:20, 28:22, 57:13
**STATES** [4] - 1:1, 1:3, 1:12, 1:15
**status** [6] - 53:17, 53:20, 54:10, 55:3, 56:2, 56:18
**STATUS** [1] - 1:11
**stenographic** [1] - 57:5
**still** [5] - 16:1, 18:17, 20:7, 23:7, 23:11
**story** [1] - 21:10
**strange** [1] - 42:21
**strategic** [1] - 25:17
**strategy** [1] - 9:21
**Street** [2] - 1:16, 2:3
**strict** [2] - 20:9, 20:10
**stride** [1] - 7:19
**strong** [2] - 39:9, 44:25
**stuff** [1] - 24:23
**stupid** [3] - 19:17, 19:21, 24:22
**subject** [1] - 53:14
**subjected** [2] - 36:12, 36:14
**substantially** [1] - 53:13
**substantive** [1] - 23:7
**succeeded** [2] - 26:22, 33:5
**suffer** [2] - 4:3, 19:1
**sufficient** [1] - 36:17
**suggest** [1] - 17:10
**suggesting** [2] - 4:17, 45:1
**suggestion** [1] - 4:11
**Suite** [3] - 1:19, 2:4, 2:7
**SULLIVAN** [1] - 2:3
**support** [2] - 36:22, 51:19
**suppose** [1] - 6:17
**supposed** [2] - 43:4, 43:5
**suppress** [1] - 53:4

**suppressed** [1] - 4:4
**suppression** [2] - 11:11, 53:1
**surprised** [2] - 22:14, 42:23
**suspect** [1] - 9:16
**switching** [1] - 48:8
**sworn** [2] - 42:22, 43:6

## T

**table** [2] - 3:8, 8:6
**tactical** [2] - 25:17, 28:3
**talks** [2] - 10:23, 12:10
**ten** [3] - 31:12, 31:13, 31:14
**tension** [1] - 18:7
**term** [1] - 13:4
**terms** [2] - 13:22, 41:17
**terribly** [2] - 7:17, 20:2
**testifies** [4] - 14:25, 18:16, 22:23, 42:11
**testify** [15] - 5:20, 6:7, 6:22, 6:24, 8:22, 13:23, 13:25, 14:4, 14:5, 22:4, 22:9, 22:23, 26:1, 26:2
**testifying** [5] - 7:15, 7:18, 10:9, 36:8, 36:17
**testimony** [6] - 26:4, 28:4, 36:6, 36:13, 42:22, 43:6
**text** [5] - 16:11, 34:15, 35:15, 37:12, 37:22
**Thanksgiving** [3] - 54:19, 54:20, 54:25
**that'll** [3] - 25:1, 48:6, 49:4
**THE** [96] - 1:1, 1:11, 1:15, 1:16, 1:21, 2:2, 2:6, 3:1, 3:9, 3:13, 3:17, 3:20, 5:22, 6:14, 7:14, 8:21, 9:2, 9:5, 9:9, 10:8, 11:5, 11:13, 14:8, 15:7, 15:10, 15:15, 15:21, 17:23, 18:5, 20:1, 25:3, 25:6, 25:8, 27:6, 28:15, 31:1, 31:7, 31:13, 31:15, 33:6, 33:19, 34:16, 35:4, 35:23, 36:23, 37:7, 38:12,

38:16, 41:13, 41:15, 42:16, 43:8, 43:12, 43:15, 46:3, 46:8, 46:16, 48:6, 49:8, 49:12, 49:15, 49:18, 49:21, 49:24, 50:6, 50:9, 50:11, 50:19, 50:23, 50:25, 51:5, 51:7, 51:11, 51:17, 52:21, 52:24, 53:3, 53:6, 53:16, 54:1, 54:5, 54:10, 54:15, 54:17, 54:20, 54:22, 54:24, 55:2, 55:9, 55:14, 55:17, 56:10, 56:12, 56:14, 56:16, 56:21
**theme** [2] - 7:8, 9:18
**themselves** [2] - 15:3, 20:14
**theoretically** [1] - 44:21
**theories** [3] - 44:1, 44:12, 45:10
**theory** [4] - 6:14, 23:2, 34:18, 36:1
**thereafter** [1] - 24:2
**therefore** [1] - 32:18
**Thereupon** [1] - 43:13
**they've** [4] - 21:19, 23:2, 41:7, 56:6
**thinking** [3] - 14:20, 33:10, 53:16
**threat** [1] - 36:16
**three** [5] - 8:13, 8:18, 29:21, 41:21, 41:25
**three-phased** [1] - 29:21
**three-way** [2] - 8:13, 8:18
**TIMOTHY** [1] - 1:21
**Timothy** [1] - 3:10
**today** [2] - 18:25, 39:25
**together** [1] - 35:17
**tolling** [2] - 55:17, 56:1
**Toni** [1] - 3:11
**top** [3] - 8:12, 19:15, 27:17
**touch** [1] - 26:24
**train** [1] - 18:4
**TRANSCRIPT** [1] - 1:11
**transcript** [2] - 57:5, 57:6
**travel** [1] - 46:1
**TREVOR** [1] - 1:11
**trial** [41] - 4:2, 5:7,

8:6, 9:7, 9:20, 9:25, 10:12, 10:20, 18:10, 18:11, 18:18, 23:24, 25:19, 31:6, 31:19, 32:6, 32:7, 36:14, 37:19, 40:13, 41:18, 42:14, 43:21, 45:5, 45:15, 45:19, 45:24, 46:1, 46:4, 46:9, 49:1, 49:4, 49:6, 49:25, 53:23, 55:5, 55:7, 55:17, 56:1, 56:4
**trials** [6] - 31:10, 33:22, 38:1, 41:19, 43:22, 43:23
**tricked** [1] - 36:1
**tried** [3] - 10:13, 34:5, 35:17
**tries** [1] - 23:20
**true** [3] - 42:15, 57:4, 57:5
**trusted** [1] - 30:22
**truth** [3] - 13:5, 13:7, 17:2
**truthful** [2] - 17:15, 19:14
**try** [8] - 7:10, 14:21, 18:14, 24:25, 31:21, 31:23, 52:7
**trying** [5] - 34:9, 34:21, 35:1, 37:19, 45:8
**Tuesday** [1] - 46:9
**tweaks** [1] - 52:6
**two** [20] - 5:12, 5:16, 6:9, 8:5, 16:16, 21:13, 23:5, 28:8, 29:9, 30:23, 31:3, 38:12, 40:4, 41:17, 41:19, 41:21, 53:10, 54:11
**type** [6] - 7:3, 7:7, 7:12, 7:25, 10:19, 22:21

## U

**U.S** [1] - 1:18
**ultimately** [1] - 37:18
**under** [5] - 24:12, 36:21, 36:22, 43:19, 48:6
**undermining** [1] - 6:5
**understood** [8] - 12:2, 12:7, 23:16, 27:13, 34:6, 34:10, 34:16, 55:14
**unfair** [1] - 37:6
**unique** [1] - 9:14

**unit** [1] - 20:24
**UNITED** [4] - 1:1, 1:3, 1:12, 1:15
**united** [1] - 2:10
**United** [6] - 3:2, 3:7, 26:5, 28:20, 28:22, 57:13
**universe** [1] - 35:16
**unless** [3] - 9:20, 14:24, 23:1
**unsuccessfully** [1] - 45:9
**untenable** [5] - 4:21, 6:18, 25:24, 36:2, 36:5
**untruthfulness** [1] - 13:15
**unusual** [1] - 7:17
**up** [13] - 8:13, 9:15, 9:16, 10:23, 11:22, 16:7, 21:10, 27:24, 33:3, 37:24, 40:14, 41:11, 41:24
**URQUHART** [1] - 2:3
**usual** [1] - 52:10

## V

**various** [1] - 4:18
**version** [1] - 5:18
**versus** [5] - 3:2, 5:5, 26:5, 28:20, 28:22
**vet** [1] - 21:23
**viable** [1] - 11:18
**victim** [2] - 28:10, 28:11
**voir** [4] - 51:21, 51:25, 52:5, 52:7
**vs** [1] - 1:5

## W

**wait** [1] - 49:4
**waiting** [1] - 45:15
**waive** [1] - 56:18
**wants** [5] - 4:2, 5:19, 10:24, 21:22, 29:17
**warranted** [1] - 44:1
**Washington** [6] - 1:6, 1:17, 1:20, 2:4, 2:12, 57:14
**wealth** [1] - 17:1
**week** [3] - 45:25, 51:2, 54:20
**weeks** [2] - 53:10
**WhatsApp** [4] - 16:11, 17:3, 21:8, 22:6

**WhatsApps** [1] - 42:3
**whatsoever** [1] - 35:11
**whereas** [1] - 29:13
**White** [1] - 2:8
**whole** [3] - 10:17, 18:4, 20:25
**wholesale** [1] - 52:7
**wide** [1] - 46:8
**wider** [1] - 30:4
**WILLIAM** [1] - 2:2
**William** [1] - 3:15
**willing** [1] - 5:17
**win** [2] - 23:9, 23:10
**witness** [3] - 7:22, 8:9, 39:7
**witnesses** [9] - 7:9, 11:3, 15:18, 15:20, 16:8, 18:15, 25:1, 39:21
**word** [1] - 37:9
**words** [1] - 35:13
**works** [1] - 49:20
**writing** [2] - 29:6, 29:18
**wrote** [2] - 29:22, 30:1

## Y

**year** [3] - 40:1, 46:2, 49:5
**yoga** [1] - 34:24
**YONGCHUL** [1] - 1:6
**Yongchul** [1] - 3:3
**York** [4] - 1:19, 1:24, 2:8
**yourselves** [1] - 3:5

## Z

**zero** [1] - 32:10