**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| United States of America<br><br>v.<br><br>Robert P. Burke, Yongchul "Charlie" Kim, and Meghan Messenger,<br><br>      Defendants. | **Case No. 1:24-cr-00265-TNM** |

**MEMORANDUM OF LAW IN SUPPORT OF**
**JOINT MOTION TO SUPPRESS SEARCH WARRANT EVIDENCE**

## TABLE OF CONTENTS

**Page**

Preliminary Statement ........................................................................................................ 1

Background ....................................................................................................................... 2

    A.    The Virginia Court's Adverse Credibility Finding Against Witness 1 .................... 2

    B.    Witness 1's Statements to Law Enforcement ........................................................ 4

    C.    Witness 1's Cell Phone Communications ............................................................. 5

    D.    The February 2023 Search Warrant Application ................................................... 7

    E.    The September 2023 Search Warrant Application .................................................. 10

Legal Standard ................................................................................................................. 11

Argument.......................................................................................................................... 12

I.    THE COURT SHOULD SUPPRESS EVIDENCE GATHERED PURSUANT TO THE FEBRUARY 2023 SEARCH WARRANT ................................................... 13

II.    AT THE VERY LEAST, THE COURT SHOULD ORDER A *FRANKS* HEARING ...................................................................................................... 20

III.    THE COURT SHOULD SUPPRESS EVIDENCE GATHERED PURSUANT TO THE SEPTEMBER 2023 SEARCH WARRANT ............................................... 22

Conclusion....................................................................................................................... 23

# TABLE OF AUTHORITIES

**Page**

**Cases**

██████████████

████████████████████████ .............................................................. 4, 14, 15

*DiStefano v. Sedita*,
2014 WL 349251 (E.D.N.Y. Jan. 31, 2014) ............................................................. 21

*Franks v. Delaware*,
438 U.S. 154 (1978) ............................................................................................... 12, 21

*Hudson v. Michigan*,
547 U.S. 586 (2006) ..................................................................................................... 23

*Illinois v. Gates*,
462 U.S. 213 (1983) ............................................................................................... 11, 19

*Jones v. United States*,
362 U.S. 257 (1960) ..................................................................................................... 11

*McDonnell v. United States*,
579 U.S. 550 (2016) ..................................................................................................... 15

*Mistretta v. Prokesch*,
5 F. Supp. 2d 128 (E.D.N.Y. 1998) ............................................................................. 21

*Morris v. City of New York*,
2013 WL 5781672 (E.D.N.Y. Oct. 28, 2013) .............................................................. 16

*United States v. Ali*,
870 F. Supp. 2d 10 (D.D.C. 2012) ............................................................................... 12

*United States v. Brodie*,
742 F.3d 1058 (D.C. Cir. 2014) ................................................................................... 23

*United States v. Brooks*,
966 F.2d 1500 (D.C. Cir. 1992) ................................................................................... 17

*United States v. Caldwell*,
581 F. Supp. 3d 1 (D.D.C. 2021) ................................................................................. 18

*United States v. Colkley*,
899 F.2d 297 (4th Cir. 1990) ....................................................................................... 16

*United States v. Dorman*,
  860 F.3d 675 (D.C. Cir. 2017) ............................................................................12, 19

*United States v. Glover*,
  755 F.3d 811 (7th Cir. 2014) ....................................................................................16

*United States v. Jones*,
  2024 WL 2269428 (D.D.C. May 20, 2024) ...............................................................11

*United States v. Leon*,
  468 U.S. 897 (1984) ...........................................................................................11, 12

*United States v. Locklear*,
  2012 WL 5845459 (E.D.N.C. Nov. 19, 2012) ..........................................................16

*United States v. Maxwell*,
  920 F.2d 1028 (D.C. Cir. 1990) ................................................................................12

*United States v. Peyton*,
  745 F.3d 546 (D.C. Cir. 2014) ..................................................................................22

*United States v. Rafaraci*,
  No. 21-cr-610 ............................................................................................................19

*United States v. Sparks*,
  594 F. Supp. 3d 9 (D.D.C. 2022) ..............................................................................11

*United States v. Spencer*,
  530 F.3d 1003 (D.C. Cir. 2008) ................................................................................12

*United States v. Stanert*,
  762 F.2d 775 (9th Cir.), *amended*, 769 F.2d 1410 (9th Cir. 1985) .........................17

*United States v. Tanguay*,
  787 F.3d 44 (1st Cir. 2015) .......................................................................................21

*Wilson v. Russo*,
  212 F.3d 781 (3d Cir. 2000) ......................................................................................20

*Wong Sun v. United States*,
  371 U.S. 471 (1963) ..................................................................................................11

## **Statutes**

18 U.S.C. § 201(b)(1) ........................................................................................................18

## **Other Authorities**

Fourth Amendment ...................................................................................................11, 22

Federal Rules of Criminal Procedure 12 and 41(h)..........................................................11

U.S. Const. amend. IV ...................................................................................................11

## PRELIMINARY STATEMENT

The government's key witness in this prosecution ("Witness 1," identified in the indictment as "Person 3") was the subject of an adverse credibility finding in 2011. A trial court judge in Virginia found that Witness 1 had lied extensively about her ex-husband in contentious divorce and child custody proceedings. The search warrants obtained by the government in this case are fatally defective because they omit any reference to this judicial adverse credibility finding, even though Witness 1's statements provided the foundation for the government's showing of probable cause in the warrant applications. The search warrant applications also fail to disclose Witness 1's exculpatory statement to law enforcement that she believed defendants Yongchul "Charlie" Kim and Meghan Messenger ("Movants") did not know they were doing anything wrong by engaging in contracting and job discussions with co-defendant Admiral Robert Burke. This evidence—*i.e.*, that Movants lacked criminal intent—is the core of Movants' defense and should have been presented to the magistrate judge. (ECF 27-1 at 9–10, 19.) And the applications do not disclose that Witness 1 misled Movants about her relationship with Adm. Burke, or that she made internally contradictory statements as to her own contemporaneous perception of whether Movants' discussions with Adm. Burke were criminal in nature.

In light of these material omissions, Movants respectfully move the Court to suppress evidence gathered pursuant to: (1) the February 2023 warrant authorizing the government to search Movants' email accounts; and (2) the September 2023 warrant authorizing the government to search Movants' personal electronic devices, the Next Jump offices, and Ms. Messenger's personal residence. At the very least, the Court should hold a *Franks* hearing to determine whether the omissions from the search warrant applications were reckless. Movants will demonstrate at the *Franks* hearing that suppression is appropriate.

## BACKGROUND

**A.    The Virginia Court's Adverse Credibility Finding Against Witness 1**

In an opinion dated August 1, 2011, a trial court judge in Arlington County, Virginia, found that Witness 1 repeatedly lied to the court and court-mandated personnel throughout her divorce and child custody proceedings, including trial.  The court opened its opinion by summarizing its view of Witness 1's credibility: ███████████████████████████████████

████████████████████████████████████████████████████████

██████ (Ex. 1 at 3.)  The court proceeded to detail Witness 1's lies:

- ████████████████████████████████████████████
  ████

- ████████████████████████████████████████████
  ████████ ██████ ████████ ████████ ██████ ██████ ████ ████ ████
  ████████████████████

- ████████████████████████████████████████████
  ████████████████████████████████████████████
  ████████████████████████████████████████████
  ████

- ████████████████████████████████████████████
  ████████████████████████████████████████████
  ████████████████

- ████████████████████████████████████████████
  ████████████████████████████████████████████
  ████████████████

- ████████████████████████████████████████████
  ████████████████████████████████████████████
  ████████████████████████

- ████████████████████████████████████████████
  ████████████████████████████████████████████
  ████████████████████████████████████████████
  ████

- ████████████████████████████████████████████
  ████████████████████████████████



The court ultimately ruled that ██████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███

    The Circuit Court of Appeals for Arlington County affirmed the trial court's decision.  In an opinion dated February 26, 2013, the appellate court recounted the trial court's lengthy findings that Witness 1 was not a credible witness and did not overrule or question any of them.  The court reversed only one sliver of the opinion: the equitable distribution of a single property in South Carolina.  The opinion is publicly available and is one of the first results provided by Google when

searching Witness 1's name. ███████████████████████████████████

████████████████████████████████████████████[1]

### B.    Witness 1's Statements to Law Enforcement

This investigation commenced with Witness 1's whistleblower complaint to the

Department of Defense Office of Inspector General ("DoD OIG") in mid-2022.  During her initial

recorded interview with the DoD OIG on June 17, 2022, █████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████ (Ex. 2 at 30.) ████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████ (Ex. 2 at 29.)  Witness 1 also explained

that, unlike her and Adm. Burke, ████████ ██████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████ (*Id.* at 40.)[2]

---

[1]  It appears the government was aware pre-indictment of the appellate decision summarizing and upholding the trial court's adverse credibility finding, but did not actually bother to obtain the trial court decision until after Movants requested it post-indictment.  To say the least, that shows a concerning disregard for the (in)credibility of the key government witness.

[2]  When Witness 1 testified in grand jury, after the relevant search warrants were executed, she (and the prosecutor) again tied her understanding that the conduct in question was wrongful to her training and experience as a federal employee, which Movants obviously lack:

███ █████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████

### C.  Witness 1's Cell Phone Communications

From November 17, 2022, to January 10, 2023, the government reviewed ███████████
████████████████████████. (Ex. 3).  The search was performed by ████████
████████████ of the DoD OIG, Defense Criminal Investigative Service ("DCIS").  (*Id.*)  The DCIS is the criminal investigative arm of the DoD OIG—the same office that received Witness 1's whistleblower complaint and conducted her intake interview on June 17, 2022.

The investigative activity report documenting the government's search of Witness 1's cell phone states that ████████████████████████████████████████
████████████████ (*Id.*)  Paradoxically, however, the report states ████████████
████████████████████████████████████████████ (*Id.*) ████████
████████████████ (*id.*), so it is impossible to test this claim.  But both statements cannot be true since ████████████████████████████████████
████████████████████████████████████████████
████████ ████████ ███ ██ ████ ████████ ████ █ ████ ██ ██
████████

Witness 1's cell phone contained private WhatsApp messages between her and Adm. Burke. ████████████████████████████████████████
████████████████████████████████████████████
████████████████. (Ex. 4 at 45). ████████████████████
████████████████████████████████████████████

_____

██  ██

██  ████████████

██  ████████████████████

████████████████████████

████████████████    (*Id.*).  In fact, Witness 1 and Adm. Burke were in a secret romantic relationship, notwithstanding that Adm. Burke was married at the time.  WhatsApp messages from the day after the lunch show that Witness 1 was practically giddy with excitement about Adm. Burke's job prospects with Next Jump, Inc. ("Next Jump"):



### D.    The February 2023 Search Warrant Application

On February 8, 2023, the government submitted to Magistrate Judge Meriweather an application for a warrant to search two Next Jump email accounts associated with Movants.  (Ex. 6 at 1.)  The affiant was ███████████████████, who had searched Witness 1's cell phone.  The affidavit supporting the application asserts that there was probable cause to believe that Adm. Burke, while commander of U.S. Naval forces in Europe and Africa, accepted bribes from Movants in exchange for steering a $300,000 contract to Next Jump.  (*Id.* at 15–16.)

In a footnote, the affidavit notes that ██████████████████████████████ ████████████████████  (*Id.* at 18 n.3.)  Presumably because of the government's obligation to inform the magistrate judge of information bearing upon a witness's bias, the affidavit ████████████████████████████████████████ ████████████████████████████████████  (*Id.*)  The affidavit then attempts to ███████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████  (*Id.*)

Nowhere does the affidavit disclose the fact that a Virginia judge had found that Witness 1 lied extensively in divorce and child custody proceedings against her ex-husband.  The government—and ██████████████████ in particular—clearly was aware of those proceedings, since in the months leading up to the warrant application ████████████████████ ████████████████████████████████████████████████████ ██████████████████  (Ex. 3.)  The affidavit also omits any mention of the fact that Witness 1 informed the DoD OIG in her intake interview that she did not believe Movants knew they had done anything wrong, unlike Adm. Burke, given Movants' lack of government experience.  Nor did the affidavit disclose that Witness 1 had given Movants a fake name and lied about her

relationship to Adm. Burke—a fact that is evident in her WhatsApp messages and undercuts the notion that Movants acted with any corrupt intent, given the implausibility that Movants would have knowingly and openly discussed an unlawful scheme to bribe a high-ranking naval official in front of another naval officer whom they had never met and whom they were unaware was in a romantic relationship with Adm. Burke.  And the affidavit does not disclose that, despite Witness 1's claim that she immediately was uncomfortable with the contracting and job discussions during the July 23, 2021 lunch, her private WhatsApp messages with Adm. Burke *the next day* show that she actually was excited about the prospect of him working for Next Jump.

The affidavit does, however, rely heavily on Witness 1 for establishing the alleged quid pro quo between Adm. Burke and Movants.  Specifically, the affidavit describes ███████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████  (Ex. 4 at 7.)  The affidavit further asserts that, ████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████  (*Id.*)  The affidavit then asserts that ████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████



There is no corroboration that Mr. Kim ever ███████████████████████. When

Adm. Burke was knock-and-talked, ████████████ told him that ████████

██████████████████████████████████████████████████████

(Ex. 7 at 69.)  Similarly, ██████████████ told Adm. Burke that ███████████

█████████████████████████████████████████ (*Id.*

at 76.)  But when asked by defense counsel, the prosecution team ██████████████

████████████████████████(Ex. 8.)  In other words, ████████

████████ lied.

The warrant affidavit sets forth no other evidence that explicitly links the contract with the

Navy to the job offer for Burke, *i.e.*, the quid pro quo underlying the allegation that Adm. Burke

accepted bribes from Movants in exchange for steering a $300,000 contract to Next Jump.  (*See*

Ex. 6.) Nor does the affidavit recount the WhatsApp exchange in which Witness 1 asked Adm.

Burke ████████████████████████████████████████████

██████████████████████ (Ex. 4 at 55.)

Based on the allegations in the affidavit, Magistrate Judge Meriweather signed the search

warrant.  (Ex. 6.)

### E.    The September 2023 Search Warrant Application

On September 28, 2023, the government submitted to Magistrate Judge Wang an application for a warrant to search Next Jump's offices, Ms. Messenger's personal residence, and Movants' personal devices. (Ex. 9 at 2–3.) Again, ███████████████ was the affiant.

Similar to the February 2023 warrant application, the affidavit supporting the September 2023 application asserts there was probable cause to believe that Adm. Burke accepted an offer of future employment and other things of value from Movants in exchange for steering a $300,000 contract to Next Jump and promoting Next Jump to U.S. Navy senior officers. (*Id.* at 4.)

Also similar to the earlier warrant application, the affidavit supporting the September 2023 application ████████████████████████████████ ██████████████████████████████████████████████ ███████████████████████████. (*See id.* at 12–14.)

Unlike the earlier warrant application, however, the affidavit supporting the September 2023 application quotes and summarizes numerous emails that were obtained pursuant to the February 2023 search of Movants' email accounts. Indeed, the government's evidence that Movants had offered Adm. Burke a job at Next Jump as early as 2021—an essential piece of the alleged offenses—rested principally on these emails. (Ex. 9 at 13–14).

Aside from those emails and what allegedly occurred at the in-person lunch meeting, the affidavit sets forth no other evidence that explicitly links the Navy-Next Jump contract to the job offer for Adm. Burke, *i.e.*, the quid pro quo underlying the allegations of criminal conduct in the affidavit, much less evidence that Movants acted with criminal intent. The same material information that was omitted from the February 2023 warrant application also was omitted from the September 2023 application.

**LEGAL STANDARD**

The Fourth Amendment guarantees that "no Warrants shall issue, but upon probable cause . . . ." U.S. Const. amend. IV.  In evaluating whether a warrant is supported by probable cause, the reviewing magistrate must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  The reviewing magistrate must ensure that s/he has "a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Id.* (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)).

Evidence obtained in violation of the Fourth Amendment is "generally subject to the exclusionary rule, which requires courts to suppress evidence obtained through unconstitutional means." *United States v. Sparks*, 594 F. Supp. 3d 9, 16 (D.D.C. 2022).[3]  The exclusionary rule "applies not only to evidence obtained 'during' the unlawful invasion, but also evidence obtained 'as a direct result of' it." *United States v. Jones*, 2024 WL 2269428, at *4 (D.D.C. May 20, 2024) (quoting *Wong Sun v. United States*, 371 U.S. 471, 485 (1963)).  Suppression is required "if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth," *United States v. Leon*, 468 U.S. 897, 923 (1984), or "if the affidavit supporting the warrant was 'so lacking indicia of probable cause as to render official belief in its existence entirely

---

[3]  Pursuant to Federal Rules of Criminal Procedure 12 and 41(h), defendants may move to suppress evidence obtained in violation of the Fourth Amendment.

unreasonable.'" *United States v. Spencer*, 530 F.3d 1003, 1007 (D.C. Cir. 2008) (Kavanaugh, J.) (quoting *Leon*, 468 U.S. at 923).

A court must order that a hearing on a motion to suppress "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). To obtain a *Franks* hearing, a defendant "must show that (1) the affidavit contained false statements or omitted certain facts; (2) the false statements or omitted facts were material to the finding of probable cause; and (3) the false statements or omissions were made knowingly and intentionally, or with reckless disregard for the truth." *United States v. Ali*, 870 F. Supp. 2d 10, 27 (D.D.C. 2012).[4] "In this context, 'material' means that the 'inclusion [of the omitted information] in the affidavit would defeat probable cause.'" *United States v. Dorman*, 860 F.3d 675, 684 (D.C. Cir. 2017) (citation omitted).

## **ARGUMENT**

The Court should suppress evidence gathered pursuant to the February 2023 and September 2023 warrants because the warrant applications omitted material information concerning Witness 1's credibility and other critical exculpatory and impeachment information relating to Witness 1. By omitting this information, the affiant misled the magistrate judges who signed the warrants into

---

[4] Generally, the exclusionary rule does not "exclude evidence seized pursuant to a defective search warrant if the officers conducting the search acted in 'objectively reasonable reliance' on the warrant and the warrant was issued by a detached and neutral magistrate." *United States v. Maxwell*, 920 F.2d 1028, 1034 (D.C. Cir. 1990) (quoting *Leon*, 468 U.S. at 987–88). However, this good-faith exception does not apply where "the magistrate or judge in issuing a warrant was misled by information in an affidavit," or by material omissions from the affidavit, "that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *Spencer*, 530 F.3d at 1007 (citing *Leon*, 468 U.S. at 923).

concluding that the applications were supported by probable cause. At bottom, the magistrate judges would not have issued the warrants if the affiant had truthfully disclosed that the government's key witness: (1) was the subject of an adverse credibility finding and was found to have lied extensively to try to inculpate a different former romantic partner (*i.e.*, her ex-husband); (2) had stated on the record that Movants lacked the government experience to recognize that their conduct was wrongful; (3) had deceived Movants about her name and relationship with Adm. Burke; and (4) exchanged private WhatsApp messages with Adm. Burke that contradicted her whistleblower claim that she protested immediately about the job/contract discussions—especially coupled with the disclosure that Witness 1 only came forward *a year after* the July 23, 2021 lunch, and only after her relationship with Adm. Burke ended—*i.e.*, after she no longer stood to benefit.

## I.    THE COURT SHOULD SUPPRESS EVIDENCE GATHERED PURSUANT TO THE FEBRUARY 2023 SEARCH WARRANT

In applying for the February 2023 search warrant, the affiant omitted information that, if it had been included, would have defeated a showing of probable cause. Specifically, the affidavit omitted material information concerning the credibility of Witness 1, who was the sole witness to the alleged quid pro quo at the heart of the government's allegations. (*See supra* at 7–9.) The affidavit notes that ███████████████████████████████████████████████ ███████████████████████████████████████████. (Ex. 6 ¶ 17 n.3.) But the affidavit wholly omits that a Virginia judge previously found Witness 1 to have lied repeatedly throughout contentious divorce and custody proceedings. (*See supra* at 7–8.)

This omission is inexcusable because Witness 1's adverse credibility finding is directly relevant to the veracity of her claims and, worse still, was so readily available to the government. To be clear, Movants are not alleging here, that the prosecutors had actual knowledge prior to seeking the warrants of Witness 1's adverse credibility finding. Indeed, Witness 1 has represented

13

to Movants' counsel that she first informed the prosecutors of the adverse credibility finding in March 2024. She could not recall whether or specifically when, before March 2024, she may have notified DoD OIG or the case agents of the finding. But even if she failed to do so expressly, it is not plausible that the case agents did not run a background check or even internet search on the government's key witness, review her security clearance materials (which disclose the adverse credibility finding), or otherwise inquire into her prior court proceedings prior to seeking the February 2023 warrant. Indeed, it is apparent that ████████████████, who was both the warrant affiant and responsible for the search of Witness 1's cell phone, *did* know about ██ ████████████████████████████████████. (Ex. 3.) A simple Google search of Witness 1's name quickly returns a link to a Virginia Court of Appeals decision that lays out the basis for the trial court's adverse credibility finding. (*See* Ex. 10 (Screenshot of Google Search Results).) In that easily found and public opinion, the appellate court summarized that ████████████████████████████████████████████████████████████████████████████████████████████████████████ The opinion went on to state that ██████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████

██████████████████████████████
██████████████████████████████
██████████████████████████████
██████████████████████████████
██████████████████████████████
██████████████████████████████
██████████████████████████████
██████████████████████████████
██████████████████████████████
██████████████████████████████
██████████████████████████████
██ ██ ██ ██ ██ ██ ██ ██ ██

.[5]

 This finding as to the government's main witness—and, it appears, the *only* eyewitness to any alleged illegal agreement—surely would have been material to the magistrate judge's determination of probable cause, because Witness 1's uncorroborated statements to law enforcement about the in-person lunch meeting on July 23, 2021, are central to the government's theory of an illicit quid pro quo.  Without them, the affidavit offered no evidence of a nexus between the alleged job offer and Next Jump's contract.  The nexus between the quid and quo is a central component of bribery: the government must show "the *exchange* of a thing of value for an 'official act.'"  *McDonnell v. United States*, 579 U.S. 550, 574 (2016) (emphasis added).  Without

---

[5] The Virginia trial court's letter opinion exhaustively opines on ████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████
████████████

Witness 1's statements—the only statements showing an alleged exchange—the warrant application would not have established probable cause that bribes occurred.[6]

Moreover, Witness 1 came forward only *after* her extramarital affair with Adm. Burke had ended. Therefore, any reasonable judicial officer would have wanted to know about Witness 1's ███████████████████████████ principally because it calls into question the veracity of key allegations made against a different ex-lover (Adm. Burke). *See Morris v. City of New York*, 2013 WL 5781672, at *5 (E.D.N.Y. Oct. 28, 2013) ("Of course, some purported victims of crimes may have axes to grind, and certain preexisting relationships between the victim and the accused can raise doubts as to the victim's veracity."). By omitting any reference to Witness 1's adverse credibility finding, the affidavit deprived the magistrate judge of a "meaningful opportunity to exercise his or her discretion to draw favorable or unfavorable inferences" about Witness 1's statements, which were essential to finding probable cause. *See United States v. Glover*, 755 F.3d 811, 818 (7th Cir. 2014).

In addition, the affidavit omitted material exculpatory statements made by Witness 1. Like information concerning a witness's credibility, "omissions of potentially exculpatory information may warrant [suppression] if the omissions . . . are made in *reckless disregard of whether they would mislead.*" *United States v. Locklear*, 2012 WL 5845459, at *2 (E.D.N.C. Nov. 19, 2012) (quoting *United States v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990)) (internal quotation marks omitted) (emphasis in original). Indeed, "[b]y reporting less than the total story, an affiant can manipulate the inferences a magistrate will draw. To allow a magistrate to be misled in such a

---

[6] Although the affidavit asserts that ██████████████████████████, the affidavit offers no evidence to corroborate the quid pro quo, only evidence showing that (a) Adm. Burke took a job from Next Jump and (b) Next Jump obtained a contract—without any connection in between.

manner could denude the probable cause requirement of all real meaning." *United States v. Stanert*, 762 F.2d 775, 781 (9th Cir.), *amended*, 769 F.2d 1410 (9th Cir. 1985).

The search warrant details ████████████████████████████ without mentioning how she perceived Movants at the time. Many months before the government sought a warrant, Witness 1 disclosed to the DoD OIG that ████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████ (Ex. 2 at 40:9–14.)[7] Yet nowhere does the search warrant affidavit indicate that *Witness 1 believed that Movants may not have thought that they had done anything wrong*, and that Witness 1's own view that Movants' conduct was wrongful was informed by her extensive training and experience as a government employee (which Movants lacked). These statements were known to the government long before it sought the warrant to search Movants' emails and were highly material to the probable cause determination. If included, these statements would have supported an inference that Movants did not have the requisite scienter for bribery, undermining any finding of probable cause. So, too, would inclusion of the fact that Witness 1 misled Movants about her name and relationship with Adm. Burke. For all Movants knew at the time, Witness 1 was another military official. A magistrate judge would have found it implausible that Movants would have openly discussed an unlawful bribery scheme

---

[7] There is no daylight between the DoD OIG and the prosecution team in this case. As noted above, the criminal investigative agency is the DoD OIG DCIS. The prosecution has a "a duty to search . . . files maintained by branches of government closely aligned with the prosecution," if "there [is] enough of a prospect of exculpatory materials to warrant a search." *United States v. Brooks*, 966 F.2d 1500, 1503 (D.C. Cir. 1992) (quotations omitted).

in front of a government official whom they had never met and whom they were unaware was in a personal relationship with Burke.

These omissions go to the heart of the suspected criminal offense. To establish probable cause of bribery, the government must offer probable cause that Movants acted "corruptly." 18 U.S.C. § 201(b)(1). Thus, the government was required to show in the warrant application that Movants "acted with consciousness of wrongdoing." *United States v. Caldwell*, 581 F. Supp. 3d 1, 19 (D.D.C. 2021). However, Witness 1's omitted statements suggest the exact opposite.

Similarly, the affidavit did not disclose that, although Witness 1 claimed in her whistleblower complaint that she understood immediately the wrongful nature of Movants' discussions with Adm. Burke, her own WhatsApp messages with Burke—which the government had before submitting the February 2023 warrant application—undercut that claim. Not only is there no corroboration that Witness 1 ███████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████ but indeed the only available documentary evidence shows that she *encouraged* Adm. Burke to pursue the opportunity with Next Jump, ████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ████████████████████████████ the warrant application also does not disclose that Adm. Burke responded, ██████████████████████

Similarly, although ███████████████████████ represented in the warrant application that Witness 1 ██████████████████████████████████████████████████████████████ ██████████████████████████ (Ex. 6 ¶ 17 n.3), the government now admits there actually *is* no

18

corroboration of the diagram Witness 1 claimed Mr. Kim drew at the July 23, 2021 lunch meeting. ██████████████████████ may have been permitted to mislead Adm. Burke into believing that corroboration of the diagram existed (Ex. 7 at 69, 76), but plainly he was *not* authorized to falsely represent to a magistrate judge that Witness 1's statements were corroborated when he knew otherwise.

Collectively, the foregoing omissions were not harmless but were highly material. Had the affiant been forthright in the warrant application, the government could not have shown a "fair probability" that its search of Movants' email accounts would have uncovered evidence of a crime. *Gates*, 462 U.S. at 238; *Dorman*, 860 F.3d at 684. The government also should have exercised special care around ██████████████████ affidavit. A year before the warrant application was filed in this case, the government learned that ██████████████████ had sworn out a materially inaccurate criminal complaint in another U.S. Navy bribery case in this District, *United States v. Rafaraci*, No. 21-cr-610. In that case, "[t]he factual inaccuracies in the affidavit supporting the criminal complaint . . . were first brought to the government's attention by the defendant on January 6, 2022." (*Rafaraci*, ECF 67 at 5.) More specifically, counsel for the defendant in *Rafaraci* "provided to the government new information *and directed the government to evidence in the government's possession* that raised concerns regarding the factual accuracy of three allegations described in Paragraphs 34 through 36 of the Complaint affidavit . . . . The government reviewed the new information provided by the defense and re-reviewed evidence that was in the government's possession. Based on this review, the government [] determined that paragraphs 34 and 36 are factually inaccurate." (*Rafaraci*, ECF 35 at 3 (emphasis added).) In *Rafaraci*, as in this case, ██████████████████ was the affiant and it was clear there were "documents in the government's discovery that were available to the agents at the time the []

19

affidavit was drafted and contradicted the information therein." (*Rafaraci*, ECF 67 at 12.) This history and knowledge should have caused the government to act with special diligence here. Its failure to do so underscores its recklessness.

## II.    AT THE VERY LEAST, THE COURT SHOULD ORDER A *FRANKS* HEARING

The affidavit's selective omissions regarding Witness 1—the lynchpin of the February 2023 warrant application—materially misled the court into finding probable cause. Movants have therefore made "a substantial preliminary showing," that the government "recklessly omit[ted] facts that any reasonable person would know that a judge would want to know." *Wilson v. Russo*, 212 F.3d 781, 783 (3d Cir. 2000).

The government's recklessness is particularly apparent with regard to Witness 1's judicial adverse credibility finding. ████████████████ was aware of Witness 1's divorce and child custody proceedings no later than nearly a month before applying for the February 2023 warrant. (Ex. 3.) Nevertheless, ████████████████ completely omitted any mention of Witness 1's adverse credibility finding in those proceedings. Indeed, messages recovered from Witness 1's phone (which ████████████████ reviewed) stated that she ████████████████████ ████████████████████████████ (Ex. 11 at 2.) Witness 1 also discussed ████████ ████ and alluded ████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████

Moreover, Witness 1 disclosed her involvement in ████████████████████████ ████████████████████ months before the government applied for the February 2023 warrant. (Ex. 13 at 23:20–21; Ex. 14 (September 2022 email exchange between Witness 1, ██

██████, and others) ████████████████████████████████████████████

██████████    It would be extremely unusual, and highly reckless, for the case agents not to have asked if Witness 1 testified in connection with any of her prior litigation.  All told, the government *must* have known about the adverse credibility determination, given the case agents' awareness that Witness 1 had been involved in family law litigation and the ease with which they could find the appellate decision detailed above.  But even if the affiant was ignorant—deliberately or not— of Witness 1's history of lying, the fact that a simple Google search would have revealed the adverse credibility finding demonstrates a "reckless disregard for the truth."  *Franks*, 438 U.S. at 155–56.

Thus, even if the government did not actually know about the adverse credibility determination at the time of the February 2023 application, it had a duty to further investigate, given its awareness that Witness 1: (i) had an extramarital relationship with Adm. Burke and (ii) only reported suspected wrongdoing after her affair had ended, casting doubt on the veracity of her account.  *See United States v. Tanguay*, 787 F.3d 44, 53 (1st Cir. 2015) ("All that is required to trigger an officer's duty of further inquiry is her knowledge of an obvious and unexplored reason to doubt the truthfulness of the allegations.  When confronted with such a red flag, the officer should look into the matter even if she does not believe that what she will discover is likely to vitiate probable cause." (internal citations omitted)); *DiStefano v. Sedita*, 2014 WL 349251, at *4 (E.D.N.Y. Jan. 31, 2014) ("The most common situation in which . . . doubts [regarding the veracity of a complaint] arise is when there exists a prior relationship between the victim and the accused that gives rise to a motive for a false accusation." (quoting *Mistretta v. Prokesch*, 5 F. Supp. 2d 128, 133 (E.D.N.Y. 1998)).  At the very least, an evidentiary hearing is warranted to determine

what the government knew when it sought the February 2023 warrant, what it should have known in light of obvious red flags, and what it deliberately omitted.

## III. THE COURT SHOULD SUPPRESS EVIDENCE GATHERED PURSUANT TO THE SEPTEMBER 2023 SEARCH WARRANT

Where the government unconstitutionally obtains evidence, the exclusionary rule not only demands suppression of that ill-gotten evidence, but also later "evidence that would likely not have been found but for a Fourth Amendment violation." *United States v. Peyton*, 745 F.3d 546, 556 (D.C. Cir. 2014). Here, the government's unconstitutional search of Movants' email accounts in February 2023 netted the essential evidence supporting the government's application to obtain the September 2023 search warrant. Because the government could not have obtained the latter warrant but for its February 2023 search warrant, the evidence obtained pursuant to the September 2023 warrant should be suppressed as the "fruit of the poisonous tree."

The September 2023 warrant application is replete with evidence obtained from Movants' email accounts—the same accounts that the government searched pursuant to its misleading February 2023 warrant. The affidavit's description of Movants' ██████████████████████ ██████ prior to July 2021 is based *entirely* on emails from their Next Jump accounts. (Ex. 9 at 6–11.) And the government's evidence that Movants had offered Adm. Burke a job at Next Jump as early as 2021—the linchpin of the alleged offenses—also came from Movants' emails. (Ex. 9 at 13–14.)

In fact, excluding the unlawfully obtained emails, the government put forward no evidence whatsoever of any criminal activity, other than the uncorroborated statements of Witness 1. Indeed, by the warrant application's own admission, virtually all evidence of Movants' involvement in alleged wrongdoing—their meeting with Adm. Burke in New York in November 2021, their trip with Adm. Burke to Italy in April and May 2022, and all their discussions about

hiring Adm. Burke after his departure from the Navy—came from Next Jump emails that the government unlawfully obtained through the February 2023 search warrant.

The September 2023 warrant, and the evidence flowing from it, is quintessential "fruit of the poisonous tree," as (1) the unlawful February 2023 search was the but-for cause of the September 2023 search, and (2) the two searches were not "too attenuated to justify exclusion." *Hudson v. Michigan*, 547 U.S. 586, 592 (2006). Here, "[t]he presence of but-for causation is quite plain." *United States v. Brodie*, 742 F.3d 1058, 1063 (D.C. Cir. 2014). Without the government's unlawful seizure of Movants' email accounts, the government could not have obtained the September 2023 warrants to (i) seize their phones and electronic devices, (ii) search Ms. Messenger's home, and/or (iii) search the Next Jump offices. (Ex. 9, Attachment A.1–A.4.) Nor can the government meet the burden of showing that its September 2023 search was too temporally attenuated from the February 2023 search or that, "due to intervening circumstances," it could have conducted the September 2023 search even absent its antecedent unconstitutional search. *Brodie*, 743 F.3d at 1063.

As such, all evidence gathered pursuant to the September 2023 search warrant must be suppressed.

## **CONCLUSION**

For the foregoing reasons, Movants respectfully request that the Court grant their motion to suppress all evidence obtained pursuant to the government's February 2023 and September 2023 search warrants. In the alternative, Movants respectfully request that the Court hold a *Franks* hearing to determine whether suppression is warranted.

Respectfully submitted,

DATED November 25, 2024      */s/ William A. Burck*
                                    William A. Burck

Rocco F. D'Agostino (Bar No. NY0592)
445 Hamilton Ave., Suite 605
White Plains, NY 10601
Tel: (914) 682-1993

*Counsel for Defendant Meghan Messenger*

William A. Burck (DC Bar No. 979677)
Avi Perry (DC Bar No. 90023480)
Rachel G. Frank (DC Bar No. 1659649)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, D.C.  20005
Tel: (202) 538-8000
Fax: (202) 538-8100
williamburck@quinnemanuel.com
aviperry@quinnemanuel.com
rachelfrank@quinnemanuel.com

Christopher Clore (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Ave, 22nd Floor
New York, NY 10010
Tel: (212) 849-7000
Fax: (212) 849-8100
christopherclore@quinnemanuel.com

*Counsel for Defendant Yongchul "Charlie" Kim*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this date, a copy of the foregoing Memorandum of Law was electronically filed with the Clerk of the U.S. District Court for the District of Columbia via CM/ECF and served to all counsel of record via electronic mail.

*/s/ William A. Burck*
William A. Burck (DC Bar No. 979677)

Dated: November 25, 2024

25