# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

**v.**

ROBERT P. BURKE,
YONGCHUL "CHARLIE" KIM, and
MEGHAN MESSENGER,

                **Defendants.**

Case No. 1:24-cr-00265-TNM

---

## YONGCHUL "CHARLIE" KIM AND MEGHAN MESSENGER'S OPPOSITION TO THE UNITED STATES' MOTION TO ADMIT OUT-OF-COURT STATEMENTS BY DEFENDANT ROBERT BURKE'S ALLEGED CO-CONSPIRATORS

Defendants Yongchul "Charlie" Kim and Meghan Messenger oppose the United States' Motion to Admit Out-of-Court Statements by Defendant Robert Burke's Co-Conspirators (the "Motion") (ECF No. 69). The Motion should be denied because the government has failed to prove by a preponderance of the evidence that a conspiracy existed and that the statements at issue were made by members of the conspiracy and in furtherance of the conspiracy. And worse, the government has omitted from the Motion substantial evidence that undercuts the existence of any conspiracy. Viewed in its totality, the evidentiary record does not support a finding that a conspiracy existed between Kim, Messenger, and co-Defendant Robert Burke.

To take just one example of the Motion's shortcomings, the government seeks to admit

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████ But the government admits in the Motion that Burke had not even joined the alleged conspiracy as of April 9, 2021. According to the

government, "[t]he earliest and best evidence is that Burke joined the conspiracy on or about April 20, 2021." (ECF No. 69 at 11).[1] And there is no evidence that Kim and Messenger had already initiated the conspiracy beforehand. What the government fails to appreciate is that the facts that the meeting involved non-conspirators (the other government employees) and that Kim broadcast information about the meeting to other non-conspirators (the Next Jump investors) is exculpatory evidence, not evidence of a conspiracy, because it shows that Kim and Messenger did not believe they were doing anything wrong.

More broadly, it is black-letter law that the government's showing under Federal Rule of Evidence 801(d)(2)(E) "must be based at least in part on some independent evidence of the conspiracy, that is, on evidence other than the statements whose admissibility is in question." *United States v. Bazezew*, 783 F. Supp. 2d 160, 166 (D.D.C. 2011). But the government has proffered scant evidence in the Motion beyond the alleged co-conspirator statements themselves. And while those statements do show that Kim and Messenger wanted a contract from the Navy, that Burke wanted to work for Next Jump, and that Kim and Messenger contemplated offering (and did offer) a job to Burke, the statements do *not* establish that the job offer was contingent on a contract. That is, they do not show a *quid pro quo*. Nor do the statements show that Kim and Messenger were acting corruptly—*i.e.*, with an awareness of the illegality of their conduct.

To the extent that the government has proffered evidence that is independent of the alleged co-conspirator statements, that evidence is inherently unreliable and, in fact, is rebutted by more probative evidence. More specifically, the government's evidence of an illegal *quid pro quo*

---

[1] The April 20, 2021, start date for the conspiracy cited in the Motion differs from the indictment's allegation that the conspiracy began in September 2020 and that several overt acts occurred prior to April 20, 2021. (*See* ECF No. 1 ¶¶ 20, 27-30.) The government appears to be shifting its case to suit its needs.

comes from the expected testimony of "Person 3," whose account is uncorroborated on key points and whose credibility has been severely undermined by, among other things, an adverse judicial credibility finding and unrelated adverse credibility findings by her employer. And Person 3's expected testimony is contradicted by her own contemporaneous private messages with Burke, in which (1) she gushed about Burke's job prospects with Next Jump, (2) he denied that there was a connection between the job offer and a Navy contract, and (3) she expressed *no* additional concerns—all of which tends to suggest she was *not* witness to an illegal bribery conspiracy. Person 3's expected testimony also is inconsistent with her sworn statement to law enforcement that, given their private sector background, Kim and Messenger may not have understood they were doing anything wrong—which is inconsistent with their knowing participation in an illegal conspiracy. Simply put, the evidence of a conspiracy is weak at best.

The Motion also should be denied because, even if the government could establish the existence of the charged conspiracy, the alleged co-conspirator statements at issue were not made in furtherance of that conspiracy. Most of the proffered statements were not even made to individuals who are alleged to be conspirators, and these statements transparently described the very conduct that the government now contends is a crime. Yet not a single recipient raised any concerns contemporaneously. The reason is simple: rather than advancing the goals of some bizarre conspiracy that was broadcast to scores of non-conspirators, these statements are just narratives of Kim's and Messenger's good-faith efforts to develop business for Next Jump. And the same is true of the three alleged co-conspirator statements that were exchanged only between Kim and Messenger, which are "mere narratives of past successes and failures," *United States v. Miller*, 738 F.3d 361, 386 (D.C. Cir. 2013), and not true co-conspirator communications.

Given these evidentiary failings, the Court should deny the government's Motion outright. In the alternative, the Court should hold a pretrial hearing where the government must demonstrate, by a preponderance of the evidence, that it has met all the requirements of Rule 801(d)(2)(E) for each of the proffered co-conspirator statements.

## **BACKGROUND**

### A.     The Government's Proffered Evidence of the Existence of a Conspiracy, and the Contrary Evidence Omitted by the Government

The Motion starts with a recitation of emails and events that precede the conspiracy's alleged inception on April 20, 2021.  (ECF 69 at 1-3, 11).  Although these pre-conspiracy communications plainly are inadmissible under Rule 801(d)(2)(E), evidence the government omits from prior to April 20, 2021, is relevant to show that there was no conspiracy at any point.

████████████████████████████████████████████████

████████████████████████████

██████████████████████████████████████████████

█ ██ ███ ███ ████ ████ █████ ██ ███ ████ █ ████ ███

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████

But the Navy strung Next Jump along.  For sixteen months, the Navy stalled on the

contracting process until, finally, Kim and Messenger reached out to Burke in early 2021.  ██

████████████████████████████████████████████████

██████████████████████████████ None of this background, which establishes that

Burke's support for Next Jump predated the alleged conspiracy and was unconnected to any job

offer, is in the Motion.

██████████████████████████████████████ The government cites this email in the Motion to establish that "Kim told individual

investors that he and Messenger had just had their 'best meeting to date with Bob Burke' and that

Burke had pitched himself to Kim and Messenger as an 'ambassador/custodian' for Company A

even while he was still serving in the Navy," (ECF 69 at 17).  But the government omits from the

Motion that ████████████████████████████████████

[REDACTED] Far from laying the groundwork for any prospective conspiracy, this exchange establishes a baseline in which Kim and Messenger relied on guidance from Burke (a four-star Admiral) as to Navy conflict rules, received assurances from him about distinctions between different types of contractors, and transparently discussed Burke's potential role with Next Jump in front of other government personnel and in investor updates.

The next relevant event in the Motion is an April 20, 2021, email from Kim to Messenger and several other Next Jump employees (who, again, are not alleged to be co-conspirators). [REDACTED]

[REDACTED] The Motion does not, however, attach the email in question, which says nothing about a job offer or about Burke's potential employment at Next Jump being contingent on securing a contract.

[REDACTED] The government fails to note, however, that [REDACTED]

[REDACTED] Nor does the government note that, long before the charged conspiracy, Burke, Person 2, and

others in the Navy had been strong supporters of Next Jump and, in fact, had been working for years to contract with Next Jump, as described above.  With this context, the May 7, 2021, email is consistent with Burke's (and others') longstanding endorsement of Next Jump's training programs, not evidence of a conspiracy to trade a contract for a job.

The Motion then discusses a July 23, 2021, meeting between Burke, Kim, Messenger, and Person 3 at a restaurant in Washington, DC.  The Motion cites (1) Person 3's expected testimony that Kim and Messenger offered Burke a job in exchange for a Navy contract; (2) a private message exchange between Burke and Person 3 after the meeting, in which Burke states that he had "essentially agreed to work for [Next Jump]"; and (3) messages from Kim and Messenger to Next Jump employees and family members updating them on the meeting.  (ECF No. 69 at 6, 12.)  The government argues that this evidence shows Kim and Messenger "proposing the *quid pro quo*." (*Id.* at 12.)  But the government again omits critical evidence that undermines its argument.  Most critically, the government's Motion fails to apprise the Court that important aspects of Person 3's account are uncorroborated (for instance, her claim that Kim sketched the scheme on a napkin) and that Person 3 has a history of credibility issues. ███████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███     This pattern undercuts the government's proffered evidence to the extent that it relies on Person 3's uncorroborated statements.

The government also fails to apprise the Court that, ███████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████    These exculpatory facts negate the inference that Kim

and Messenger acted with a criminal mental state.

     As to the July 23, 2021, meeting, the government also fails to mention that, ████████

██████████████████████████████████████████████████

██████████████████ ███████████████████████████████

██████████████████████████████████████████████████

██████████████████████

   ██████      ████████████████████████████

.      .      .      .

   ██████      ███████████

   ██████      █████████

     ████████████

.      .      .      .

   ██████      ████████████████████████████████

     ██████████

   ██████      █████████

     ████████████████████████████████

     ██████████████████████████████████

     ████████████████████████████

.      .      .      .



Person 3's palpable excitement in these contemporaneous private messages is plainly inconsistent with her expected testimony that she witnessed a bribery conspiracy.

And finally, with respect to the July 23, 2021, meeting, the government fails to appreciate the exculpatory significance of the fact that ████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████ The notion that Kim and Messenger would broadcast a scheme they *knew* to be illegal to close family members and investors is nonsensical.

Next, the government's Motion discusses Burke's November 2021 visit to Next Jump's offices. Specifically, the Motion cites two pieces of evidence that purportedly show the existence of a conspiracy: ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████ But again, there is no corroboration of Person 3's claim that the alleged increased equity stake was tied to a contract, and the fact that Person 3 waited eight months after this alleged conversation in November 2021 to blow the whistle in June 2022 (after her relationship with Burke had ended) should give the Court serious pause about accepting her say-so. And the fact that Kim's November 16, 2021, email went to non-conspirators, again, cuts against a finding that he and Messenger understood there was anything unlawful about their dealings with Burke.

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████ Presumably, the government's focus on the alleged poor performance by Next Jump is intended to show that the contract was entered into solely because of some unlawful bribe. To support this assertion of poor performance by Next Jump, the government cites ███████████████████████████

████████████████████████████████████████████

██████████████████████████ But again, the government omits critical evidence that undermines the inference it wants the Court to draw. Here, that evidence is the rest of the

March 2022 email sent by the Navy officer, who went on to rave about Next Jump's overall performance and value-add:



Finally, the government supports its argument that a conspiracy existed by citing (1) a handful of emails in which Burke unsuccessfully tried to promote Next Jump to another Navy Admiral and foreign military officials, and (2) an October 2022 text message from Messenger to Kim where "Messenger lamented the fact that the scheme did not result in the sort of windfall she and Kim had hoped for." (ECF No. 69 at 12-13.) But the government omits the critical context that Burke had been promoting Next Jump for *years*—because he genuinely believed in it, not because he was being bribed. And of course, Burke had no authority to direct the other Navy Admiral (much less foreign military officers) to hire Next Jump. The government's characterization of Messenger's text message also is highly misleading. ██████████████

██████████████████████████████████████████

██████████████████████████    ████████████████████

████████████████████████████████████████████████████

████████████████████████████

**B.**     **The Government's Proffered Evidence that Kim's and Messenger's Statements Were Made in Furtherance of the Conspiracy**

The Motion sets forth three general categories of statements made by Kim or Messenger allegedly in furtherance of the purported conspiracy: (1) statements by Kim to Next Jump investors; (2) statements by Kim and Messenger to Next Jump employees; and (3) statements between Kim and Messenger alone.  (ECF No. 69 at 13-18.)

**1.**     **Statements from Kim to Next Jump Investors**

The government proffers a handful of emails from Kim to Next Jump investors, which the government argues contain statements in furtherance of the alleged conspiracy.  (ECF No. 69 at 17-18.)

*First*, the government proffers ████████████████████████████████

████████████████████████████████████████████████████

██ ███ ██ ████ ██ ████ ███ ████ ████ ███ █ ██ ████ ████ ██ █ ███

████████████████████████████████████████████████████

████████  These emails were sent before the date on which the government contends a conspiracy began between Burke, Kim, and Messenger.  (*See* ECF No. 69 at 11 ("The earliest and best evidence is that Burke joined the conspiracy on or about April 20, 2021, during a remote meeting he had with Kim and Messenger.")).  The government has proffered *no* evidence of any prior conspiracy involving just Kim and Messenger (much less the recipients of these emails.)

*Second*, the government proffers ██████████████████████████
████████████████████████████ ████████████████████████████
█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████
████████████  ███████████████████████████████████████████
█████████████████████████████████████████████████████████
██████████████████████████████  █████  ███████████████████
█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████
██████████████████████████████████████

## 2.    Statements from Kim/Messenger to Next Jump Employees

The government proffers ██████████████████████████████████
█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████
███████████████████████████████████████

The emails at issue provide ██████████████████████████████
█████████████████████████████████████████████████████████
█████████████████████████████████████████  Sometimes, all three

_____

  ██  ██████████████████████████████████████████████████████
█████████████████████████████████████████████████████████
█████████████████████████████████

topics are addressed in the same email. ███████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

████████████████

### 3.    Statements Between Kim and Messenger

The government proffers three emails between Kim and Messenger that it contends contain statements that were made in furtherance of the alleged conspiracy.  All three emails describe past successes and failures in Kim's and Messenger's quest to grow Next Jump's business; indeed, the final email from October 2022 discusses events that were years old:



### C.    The Government's Refusal to Provide Kim and Messenger with the Identity of Unindicted Co-Conspirators

On December 5, 2024, counsel for Kim asked the government to, among other things, identify who the government asserts to be co-conspirators in the charged conspiracy.  The government flatly refused, stating that the "questions are the subject of ongoing investigation by the government" and that the government needs subpoena returns from Next Jump before it can answer.  (Ex. 28.)

On December 11, 2024, counsel for Kim renewed the request, noting that the government has indicted Kim, charged him with conspiracy, and filed a motion to admit co-conspirator statements. Accordingly, the government "must know, as of now, who [the government] consider[s] to be co-conspirators in the charged conspiracy." Again, the government refused to answer, stating that "[t]he motion to admit co-conspirator statements was specifically drafted for and filed in Burke's trial, not Kim's. Because Kim is not a party to the motion, there are standing and ripeness issues in his responding to it." (*Id.*)

Counsel cannot recall another instance in which the prosecution, having indicted a conspiracy case and moved to admit co-conspirator statements, refused to identify the members of the alleged conspiracy. Plainly, this information is both relevant, discoverable, and in this case at least, likely to be exculpatory since many of the statements at issue were made to people who are not conspirators (or so Kim and Messenger believe). Kim and Messenger will, if necessary (although it should not be), move for an order compelling the government to disclose the identity of all alleged co-conspirators. To avoid this unnecessary motion practice, Kim and Messenger encourage the government to simply name them. The execution of a criminal conspiracy is done in secret (although not in the charged conspiracy here); the identity of co-conspirators in a charged criminal case is not.

### D.    Person 3's Adverse Credibility Findings

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████



## **LEGAL STANDARD**

Federal Rule of Evidence 801(d)(2)(E) provides that an out-of-court statement is not hearsay, even if offered for its truth, if it is "offered against an opposing party and was made by the party's coconspirator during and in furtherance of the conspiracy."  To admit co-conspirator statements, the government must prove "by a preponderance of the evidence that: (1) a conspiracy existed, (2) that the defendant and the declarant were involved in that conspiracy, and (3) that the declarant's statement was made in the course and in furtherance of that conspiracy."  *United States v. Darnel*, 2023 WL 5723371, at *2 (D.D.C. Sept. 5, 2023) (citing *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987)).  To meet this burden, the government cannot rely on the proffered

statements alone; rather, the government's showing under 801(d)(2)(E) "must be based at least in part on some independent evidence of the conspiracy, that is, on evidence other than the statements whose admissibility is in question." *Bazezew*, 783 F. Supp. 2d at 166.  Moreover, "[a]n indictment may not be offered as evidence to satisfy that burden." *United States v. Stover*, 329 F.3d 859, 969 (D.C. Cir. 2003).

To show that a proffered statement is in furtherance of a conspiracy, the government must prove by a preponderance of the evidence that the statement "'can reasonably be interpreted as encouraging a co-conspirator or other person to advance the conspiracy, or as enhancing a co-conspirator or other person's usefulness to the conspiracy.'" *Miller*, 738 F.3d at 385 (quoting *United States v. Tarantino*, 846 F.2d 1384, 1412 (D.C. Cir. 1988)).  Statements that typically satisfy this requirement include "'those that keep a coconspirator updated on the status of the business, motivate a coconspirator's continued participation, or provide background information on key conspiracy members.'" *Id.* (quoting *United States v. Carson*, 455 F.3d 336, 367 (D.C. Cir. 2006)).  However, "mere narratives of past successes and failures" and a "conspirator's casual comments to people outside or inside the conspiracy" are not admissible.  *Id.* at 375.  "Bragging" and "descriptive comments" likewise do not satisfy the "in furtherance of" requirement.  *Darnel*, 2023 WL 5723371, at * 2.

A court has considerable discretion in deciding when and what procedure to use to determine whether statements are admissible under Rule 801(d)(2)(E).  *See Bazezew*, 783 F. Supp. 2d at 166.  A common practice is to proceed to trial and to admit particular statements as they are offered, "'subject to connection'-*i.e.*, contingent upon the government's subsequent introduction of sufficient evidence to persuade the court that the requirements of Rule 801(d)(2)(E) have been met." *United States v. Loza*, 763 F. Supp. 2d 108, 112 (D.D.C. 2011).  However, such a procedure

can have serious consequences including causing a mistrial "[i]f, after the close of the government's case, or at any other critical point, the court determines that the government has failed to prove the necessary factual predicate for admissibility, the court may either declare a mistrial or strike and instruct the jury to disregard any inadmissible statements." *Id.* (internal quotation marks omitted). Thus, courts in this Circuit have found that "the better practice," where practical, is for the trial court to determine the admissibility of such statements before the statements are presented to the jury." *Bazezew*, 783 F. Supp. 2d at 166. Such a procedure is particularly appropriate where there are serious questions as to the existence of the conspiracy and whether the statements were made in furtherance of it. *See id.*

## ARGUMENT

Pretrial motions to admit co-conspirator statements are, overwhelmingly, granted in this District and elsewhere—usually subject to connection at trial. And in many cases, that is the right result. Not here.

The Court should deny the Motion because the government has failed to meet its burden of proving by a preponderance of the evidence that a conspiracy existed and that the statements at issue were made by members of that conspiracy in furtherance of the conspiracy. At the very least, the Court should hold a pretrial hearing where the government must demonstrate, by a preponderance of the evidence, that it has met all the requirements of Rule 801(d)(2)(E) for each of the proffered co-conspirator statements. Such a hearing is critical here, where the government relies largely on the alleged co-conspirator statements themselves and the expected testimony of a witness whose credibility has been impugned in several official proceedings.

A.      **The Government Failed to Prove that a Conspiracy Existed in which Burke, Kim, and Messenger Were Participants.**

The majority of the evidence proffered in the Motion is the alleged co-conspirator statements themselves.  (See ECF No. 69 at 1-8, 11-13.)   But those alleged co-conspirator statements do not actually establish a conspiracy, even by a preponderance of the evidence. Instead, these statements show only that (1) Kim and Messenger wanted to obtain business from the Navy, (2) Burke wanted to work for Next Jump, and/or (3) Kim and Messenger contemplating offering (and actually offered) employment to Burke.  (*See supra* at 4-14.)   None of the alleged co-conspirator statements shows that Kim or Messenger made any job offer contingent on a contract with the Navy or otherwise as part of an illegal *quid pro quo*.  ████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████  ███████████████████████████████████████████

██████████████████████████████████████████████████

███████████  ███████████████████████████████████████

███████████████████

      ██████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████  Kim and Messenger therefore are proceeding on the understanding that no other alleged co-conspirators exist.  To reiterate, the fact that Kim and Messenger transparently laid out their dealings with Burke to non-conspirators is exculpatory, not evidence of a

conspiracy—it shows that Kim and Messenger did not believe they were doing anything wrong. And the fact that no recipient of these emails raised any concern about illegality shows that *no one* believed a crime was being committed. The government's theory that these emails explicitly outline a criminal scheme only makes sense if the recipients were in on the scheme, which the government does not contend. Otherwise, no rational investor or employee would remain involved with Next Jump (and no rational criminal would send the email in the first place). The government's interpretation of the emails is just wrong.



But the notion that Kim and Messenger would further a scheme they *knew* to be illegal by broadcasting the scheme's step-by-step workings to scores of investors who were not members of the conspiracy—any one of whom could have blown the whistle—is implausible.

█████████     ████████████

███████████████ Similarly, the government cites ██████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████



██████ ).

And as described above, there is additional context, and exculpatory evidence, that is missing entirely from the Motion and rebuts the existence of any conspiracy. Most notably, the government makes no mention of the fact that Burke had been a staunch advocate of Next Jump for years before the alleged conspiracy began in late April 2021. (*See supra* at 4-5.) At no point during this long period was there any discussion of a job offer, nor is there any evidence that Burke was seeking one. (*See id.*) To the contrary, the evidence shows that Burke believed in Next Jump. (*See id.*) None of this background, which establishes that Burke's support for Next Jump predated the alleged conspiracy and was unrelated to any job offer, is in the Motion—despite its obviously exculpatory nature. ██████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████ This scrutiny should be at its absolute maximum because (1) Person 3's testimony is critical to the government's ability to establish an unlawful *quid pro quo*, (2) this case started when Person 3 filed a whistleblower complaint after her romantic relationship ended with Burke (like the ex-husband she lied about to a judge), and (3) she lied to OIG investigators in her workplace misconduct matter (like the OIG investigators assigned to this case). ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████

Finally, the Court should disregard the government's reliance on several 2022 emails in which Burke unsuccessfully tried to promote Next Jump to another Navy Admiral and foreign military officials. (See ECF No. 69 at 8, 11-12.) As explained in Kim's and Messenger's motion to strike surplusage and exclude irrelevant evidence, the allegations that Burke promoted Next Jump to another Admiral and foreign military officials are completely irrelevant to the charges filed. (ECF No. 60-1.) Such acts cannot constitute "official action" under *McDonnell v. United States*, 579 U.S. 550 (2016), and therefore they cannot support a finding of guilt in this case or even serve as competent evidence of a conspiracy. (ECF No. 60-1. at 1.)

In sum, the government has not satisfied its burden of showing that a conspiracy existed and that Burke, Kim, and Messenger were participants in it. The Motion should be denied.

**B.**   **The Government Failed to Prove that the Proffered Statements Were Made in Furtherance of the Purported Conspiracy.**

**1.**   **The Statements Made by Kim to Next Jump Investors Were not in Furtherance of the Alleged Conspiracy.**

There is no basis under Rule 801(d)(2)(E) to admit ██████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████   The government states unequivocally in its Motion that the purported conspiracy among the three charged defendants commenced on April 20, 2021: "The earliest and best evidence is that Burke joined the conspiracy on or about April 20, 2021, during a remote meeting he had with Kim and Messenger."  (*See* ECF No. 69 at 11).  Pre-conspiracy statements cannot be in furtherance of the conspiracy.  *See Miller*, 738 F.3d at 374-75 (finding that statements made outside the conspiracy period cannot satisfy Rule 801(d)(2)(E)).  In addition, these emails are exculpatory, not inculpatory, because they corroborate that Kim and Messenger relied on Burke's guidance as to Navy conflict rules, and that he distinguished in his discussions with them between Next Jump and other types of contractors with respect to the conflict rules.  That evidence, and the dissemination of these emails to investors who are not members of the conspiracy, is probative of Kim's and Messenger's good faith.

The Court should ████████████████████████████████████████████████

████████████████████████████████████████████■ ██ email merely provides a business update to Next Jump's investors and, as such, constitutes precisely the type of "mere narrative of

---

■ ██████████████████████████████████████████████████████████

████████████████████████████████████████████████

past successes and failures" that cannot satisfy the "in furtherance of" requirement of Rule 801(d)(2)(E). *Miller*, 738 F.3d at 374.  In addition, ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████      █

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

None of the scores of Next Jump investors raised any concerns about illegal or wrongful activity. The email could not possibly be in furtherance of a conspiracy because no rational investor would remain invested in a company that openly engaged in, much less transparently discussed, a bribery scheme.  And yet, that is exactly what the government argues happened here.  Because it defies commonsense, that argument should be rejected.

In addition, the government is wrong in arguing that the email is in furtherance of a conspiracy because it is more than just an update and is, instead, akin to the co-conspirator statements admitted in *Tarantino*, 846 F.2d at 1412. ████████████████████████████

████████████████████████████████████████████████████████

████████████████████    *Second*, the Next Jump investor update is fundamentally different from the co-conspirator statements at issue in *Tarantino*, which were statements *only* among co-conspirators and where the recipient of the statement about profits of the conspiracy acted as a courier and helped count the money generated by the drug deals.  *See Tarantino*, 846 F.2d at 1412. And *third*, the government's argument that the statement "serve[d] as motivation for . . . continued participation" in the conspiracy, just like the statements in *Tarantino*, blinks reality.  No rational

investor would openly participate in a conspiracy where the main actors were broadcasting their wrongdoing so broadly.

### 2.    The Statements Made by Kim and Messenger to Next Jump Employees Were not in Furtherance of the Alleged Conspiracy.

The Court also should deny the government's request to admit under Rule 801(d)(2)(E)



*Miller*, 738 F.3d at 385. These emails, too, are exculpatory, not inculpatory.

### 3.    The Statements Made by Kim and Messenger to Each other Were not in Furtherance of the Alleged Conspiracy.

Finally, the Court should deny the government's request to admit certain communications between Kim and Messenger under Rule 801(d)(2)(E). The statements proffered by the government are all "mere narrative of past successes and failures" that cannot satisfy the "in furtherance of" requirement of Rule 801(d)(2)(E). *Miller*, 738 F.3d at 385. The two emails and single text message cited in the Motion simply describe Kim's and Messenger's past successes and failures in their attempts to grow Next Jump's business:





As such, it cannot meet the "in furtherance" requirement.  *See Tarantino*, 846 F.2d at 1412 (noting that statements would not be admitted under 801(d)(2)(E) if they were about events "months or years after they had occurred").

The government's argument that communications "serve to foster trust and cohesiveness" blinks reality.  (*See* ECF No. 69 at 13.)  Kim and Messenger have been friends and colleagues for decades.  The communications simply recounted their past successes and failures at Next Jump.

### C.     If the Court Does not Deny the Government's Motion Outright, the Court Should Hold a Pretrial Hearing to Determine Admissibility of Proffered Co-Conspirator Statements.

If the Court does not deny the Motion outright, the Court should hold a pretrial hearing where the government must demonstrate, by a preponderance of the evidence, that it has met all the requirements of Rule 801(d)(2)(E) for each of the proffered co-conspirator statements.  Such a hearing is critical, given the government's extreme reliance on the co-conspirator statements themselves, and the weakness of the evidence currently proffered.  Indeed, courts in this District have found that such hearings are "the better practice" where, as here, there are serious questions as to the existence of the conspiracy and whether the proffered statements were made in furtherance of it.  *See Bazezew*, 783 F. Supp. 2d at 166.[4]

---

[4]  Kim and Messenger acknowledge that there may be other bases for admitting many of the alleged co-conspirator statements both in Burke's trial and in Kim's and Messenger's trial.

## **CONCLUSION**

For the foregoing reasons, Kim and Messenger respectfully request that the Court deny the government's Motion or, in the alternative, hold a pretrial hearing to determine the admissibility of the government's proffered co-conspirator statements.

Respectfully submitted,

DATED December 20, 2024

*/s/ William A. Burck*
William A. Burck

| | |
|---|---|
| Steven Alan Metcalf, II | William A. Burck (DC Bar No.: 979677) |
| METCALF & METCALF, P.C. | Avi Perry (DC Bar No. 90023480) |
| 99 Park Avenue, 6th Floor | Rachel G. Frank (DC Bar No.: 1659649) |
| New York, NY 10016 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| Tel: (646) 253-0514 | 1300 I Street NW, Suite 900 |
| Fax: (646) 219-2012 | Washington, D.C.  20005 |
| fedcases@metcalflawnyc.com | Tel: (202) 538-8000 |
| | Fax: (202) 538-8100 |
| Rocco F. D'Agostino (*pro hac vice*) | williamburck@quinnemanuel.com |
| 445 Hamilton Ave., Suite 605 | aviperry@quinnemanuel.com |
| White Plains, NY 10601 | rachelfrank@quinnemanuel.com |
| Tel: (914) 682-1993 | |
| | Christopher Clore (*pro hac vice*) |
| *Counsel for Defendant Meghan Messenger* | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| | 295 5th Avenue |
| | New York, NY 10016 |
| | Tel: (212) 849-7000 |
| | Fax: (212) 849-8100 |
| | christopherclore@quinnemanuel.com |
| | *Counsel for Defendant Yongchul "Charlie" Kim* |

---

Kim's and Messenger's arguments here are limited to responding to the government's motion to admit the statement under Rule 801(d)(2)(E).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, a copy of the foregoing Opposition was electronically filed with the Clerk of the U.S. District Court for the District of Columbia via CM/ECF and served to all counsel of record via electronic mail.

 /s/ *William A. Burck*
William A. Burck (DC Bar No.: 979677)

Dated: December 20, 2024