UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

         Plaintiff,

    v.

YONGCHUL "CHARLIE" KIM, and
MEGHAN MESSENGER,

         Defendants.

Case No. 1:24-cr-00265-TNM

**YONGCHUL "CHARLIE" KIM AND MEGHAN MESSENGER'S**
**JOINT OPPOSITION TO THE GOVERNMENT'S "MOTION *IN LIMINE* TO**
**EXCLUDE CERTAIN EVIDENCE AND ARGUMENT" (ECF 177) [REDACTED]**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...................................................................................................1

LEGAL STANDARD.................................................................................................................2

I.     THE COURT SHOULD DENY AS MOOT OR PREMATURE THE PORTION OF THE GOVERNMENT'S MOTION CONCERNING EVIDENCE OF JURY NULLIFICATION, GOOD CHARACTER/CONDUCT, PUNISHMENT/ COLLATERAL CONSEQUENCES, AND CHARGING DECISIONS. ............................3

II.    THE COURT MUST DENY THE GOVERNMENT'S REQUEST TO EXCLUDE GOOD FAITH EVIDENCE BECAUSE IT WOULD DEPRIVE DEFENDANTS OF THE ABILITY TO REBUT AN ESSENTIAL ELEMENT OF BRIBERY. ........................................................................................................5

     A.    The Bribery Statute Requires Proof Of Two Distinct Mental State Elements. .......................................................................................................6

     B.    Good Faith Evidence Directly Rebuts An Essential Element of Bribery. ...............9

III.   THE GOVERNMENT'S ARGUMENTS FAIL. ...................................................11

     A.    The Government's Position Is Fatally Contradictory. .............................11

     B.    The Government Fundamentally Misreads *Snyder*. ................................12

     C.    None of The Government's Cases Supports Eliminating The "Corruptly" Requirement. ..........................................................................................15

     D.    The Government's "Inherently Corrupt" Theory Would Violate Core Constitutional Rights. ...................................................................................16

         1.    Excluding Good Faith Evidence Violates The Right To A Jury Trial. ...................................................................................................16

         2.    The Government's Theory Violates *Morissette*'s *Mens Rea* Requirements. ..............................................................................17

         3.    The Motion Threatens *McDonnell*'s Constitutional Safeguards. ...............18

CONCLUSION.................................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Babbitt v. Sweet Home Chapter, Communities for Great Ore.*,
515 U.S. 687 (1995) ............................................................................................................7

*Barnes v. District of Columbia*,
924 F. Supp. 2d 74 (D.D.C. 2013) ...................................................................................3

*Bradley v. Pittsburgh Bd. of Educ.*,
913 F.2d 1064 (3d Cir. 1990) ...........................................................................................2

*Burrage v. United States*,
571 U.S. 204 (2014) ............................................................................................................8

*Citizens United v. FEC*,
558 U.S. 310 (2010) ....................................................................................................18, 19

*Crane v. Kentucky*,
476 U.S. 683 (1986) .........................................................................................................17

*Duncan v. Walker*,
533 U.S. 167 (2001) ............................................................................................................7

*Evans v. United States*,
504 U.S. 255 (1992) .........................................................................................................19

*Graves v. District of Columbia*,
850 F. Supp. 2d 6 (D.D.C. 2011).......................................................................................2

*Holmes v. South Carolina*,
547 U.S. 319 (2006) .....................................................................................................3, 17

*IBP, Inc. v. Alvarez*,
546 U.S. 21 (2005) ...........................................................................................................14

*McCutcheon v. FEC*,
572 U.S. 185 (2014) ....................................................................................................18, 19

*McDonnell v. United States*,
579 U.S. 550 (2016) ....................................................................................................14, 18

*Montclair v. Ramsdell*,
107 U.S. 147 (1883) ............................................................................................................7

*Nieves v. Bartlett*,
   587 U.S. 391 (2019) ................................................................................................9

*Russello v. United States*,
   464 U.S. 16 (1983) ..................................................................................................6

*Shannon v. United States*,
   512 U.S. 573 (1994) ..............................................................................................16

*Snyder v. United States*,
   603 U.S. 1 ...........................................................................6, 7, 8, 10, 11, 13, 15

*Staples v. United States*,
   511 U.S. 600 (1994) ..............................................................................................17

*United States v. Bass*,
   404 U.S. 336 (1971) ................................................................................................8

*United States v. Gaudin*,
   515 U.S. 506 (1995) ..............................................................................................16

*United States v. Martin*,
   No. 1:21-cr-394 (D.D.C. Apr. 6, 2022) ................................................................10

*United States v. Menasche*,
   348 U.S. 528 (1955) ................................................................................................6

*United States v. Mock*,
   2023 WL 3844604 (D.D.C. June 6, 2023) .............................................................3

*United States v. North*,
   910 F.2d 843 (D.C. Cir. 1990) ...............................................................................7

*United States v. Paitsel*,
   2023 WL 2139366 (D.D.C. Feb. 21, 2023) .........................................................15

*United States v. Ring*,
   706 F.3d 460 (D.C. Cir. 2013) .............................................................................19

*United States v. Sittenfeld*,
   128 F.4th 752 (6th Cir. 2025) .................................................................................7

*United States v. Sun-Diamond Growers of Cal.*,
   526 U.S. 398 (1999) ..................................................................................14, 18, 19

*United States v. Washington*,
   705 F.2d 489 (D.C. Cir. 1983) ...............................................................................4

*United States v. X-Citement Video, Inc.,*
    513 U.S. 64 (1994) ..................................................................................................... 18

*Williams v. Johnson*,
    747 F. Supp. 2d 10 (D.D.C. 2010) ............................................................................. 2

*Williams v. Taylor*,
    529 U.S. 362 (2000) ..................................................................................................... 7

*Yates v. United States*,
    574 U.S. 528 (2015) ..................................................................................................... 7

## Statutes

18 U.S.C. § 201 ...................................................................................1,5, 6, 8, 13, 14, 15, 18

18 U.S.C. § 666 ..................................................................................................................7, 13

18 U.S.C. § 1752 ....................................................................................................................10

40 U.S.C. § 5104 ....................................................................................................................10

## Other Authorities

1 Devitt & Blackmar, Federal Jury Practice and Instructions, ......................................... 5

Fed. R. Evid. 404(a)(2)(A) ..................................................................................................... 4

## PRELIMINARY STATEMENT

Yongchul "Charlie" Kim and Meghan Messenger ("Defendants") strongly oppose the government's motion *in limine* to exclude "certain evidence and argument," ECF No. 177 ("MIL"). First, the Court should deny as moot or premature the portions of the motion seeking to exclude evidence and argument regarding (A) jury nullification, (B) good character/conduct, (C) punishment or collateral consequences, and (D) government charging decisions. *See id.* at 1, 2–9. Defendants' counsel know the Federal Rules of Evidence and intend to follow them. Thus, Defendants do not intend to introduce clearly inadmissible evidence such as Defendants' potential sentences. However, Defendants may permissibly introduce other evidence that the government seeks to exclude—for example, certain character evidence or background evidence about Defendants—and the Court's determination whether such evidence is admissible will likely depend on what other evidence has been introduced at trial. Thus, the Court should defer ruling on these categories of evidence until trial. At most, the Court should enter an order that is consistent with the order that the Court issued in the trial of Adm. Burke on a motion *in limine* that is essentially identical to that which the government filed here. *See* ECF No. 150 ("Burke MIL Order") at 2; ECF No. 152 ("Burke Pre-Trial Tr.") at 86:9–90:21.

Second, and far more critically, the Court must deny the government's request to exclude all evidence and argument regarding Defendants' "good faith" defense to the charged crimes. *See* MIL at 1, 9–16. The government's motion is a misguided attempt to prevent Defendants from offering evidence that they lacked criminal intent, even though 18 U.S.C. § 201 requires the government to prove beyond a reasonable doubt that Defendants acted "corruptly." It must be rejected. Indeed, the government itself has successfully argued—and continues to argue—that "corruptly" means "having an improper, wrongful motive or purpose." The notion that it can simultaneously seek to bar Defendants from presenting evidence that they lacked such improper

motive makes no sense and would prevent Defendants from admitting evidence to rebut an essential element of the crime charged. Adopting such a position would also be wholly inconsistent with the government's own jury instructions in Adm. Burke's case (and the Justice Manual), and it would effectively eliminate a meaningful *mens rea* requirement Congress expressly included in the federal bribery statute. That the government would *want* to prevent the jury from hearing evidence that Defendants acted in good faith or, worse, to risk convicting anyone who acted in good faith is both dangerous and shocking. The government's motion raises serious constitutional concerns about Defendants' rights to a jury trial and to due process, and it threatens to criminalize routine interactions between government officials and private parties without proof of wrongful intent. This Court need not reach the constitutional questions, however, because the jury instructions previously adopted by this Court,[1] the statutory text, and clear instruction from the Department of Justice itself, as well as the Supreme Court, prohibit this result.

## LEGAL STANDARD

"[M]otions *in limine* are a means for arguing why 'evidence should or should not, for evidentiary reasons, be introduced at trial.'" *Graves v. District of Columbia*, 850 F. Supp. 2d 6, 11 (D.D.C. 2011) (emphasis omitted) (quoting *Williams v. Johnson*, 747 F. Supp. 2d 10, 18 (D.D.C. 2010)). They "are 'designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions.'" *Id.* at 10 (quoting *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990)). The court has "broad discretion in rendering evidentiary rulings, ... which extends

---

[1] Defendants continue to argue that the jury instruction on bribery must be modified to (1) specify that the charge has two separate statutory *mens rea* requirements, and (2) clarify the definition of "corruptly" to bring it into line with existing precedent, *i.e.*, that "corruptly" means to act with consciousness of wrongdoing. *See* ECF Nos. 115, 135. For the purpose of this motion, however, this Court need only hold that "corruptly" at least means "having an improper, wrongful motive or purpose," as it instructed in Adm. Burke's trial. May 13, 2025 Burke Trial Tr. at 103:13–14.

... to the threshold question of whether a motion *in limine* presents an evidentiary issue that is appropriate for ruling in advance of trial." *Barnes v. District of Columbia*, 924 F. Supp. 2d 74, 79 (D.D.C. 2013).

"Although state and federal rulemakers have the prerogative to fashion standards for the inclusion of evidence at trial, the Constitution guarantees to criminal defendants the right to a 'meaningful opportunity to present a complete defense.'" *United States v. Mock*, 2023 WL 3844604, at *1 (D.D.C. June 6, 2023) (quoting *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006). Courts thus may not impose "arbitrary" rules of evidence, including those that exclude "important defense evidence" without serving "legitimate interests," or are otherwise "disproportionate to the purposes they are designed to serve." *Holmes*, 547 U.S. at 324 (internal quotation marks omitted).

## I. THE COURT SHOULD DENY AS MOOT OR PREMATURE THE PORTION OF THE GOVERNMENT'S MOTION CONCERNING EVIDENCE OF JURY NULLIFICATION, GOOD CHARACTER/CONDUCT, PUNISHMENT/ COLLATERAL CONSEQUENCES, AND CHARGING DECISIONS.

Defendants' counsel know the Federal Rules of Evidence and intend to follow them. Thus, the Court should deny as moot or premature the portions of the government's motion *in limine* regarding (A) jury nullification, (B) good character/conduct, (C) punishment or collateral consequences, and (D) government charging decisions. *See* MIL at 1, 2–9. These categories include wide swaths of evidence that are clearly inadmissible and that Defendants do not plan to introduce evidence of at trial. But the categories also sweep in certain types of evidence that would be admissible, depending on other evidence that may be admitted at trial. The Court should therefore deny the motion at this time and take up specific evidentiary rulings at trial. At most, the Court should enter an order that is consistent with the order the Court issued on the same issues in the Adm. Burke trial. *See* Burke MIL Order at 2; Burke Pre-Trial Tr. at 86:9–90:21.

**Jury Nullification**.  Defendants do not intend to introduce evidence or argument aimed at jury nullification.  Such evidence is clearly inadmissible.  *See, e.g.*, *United States v. Washington*, 705 F.2d 489, 494 (D.C. Cir. 1983).  However, certain of the sub-categories of evidence that the government seeks to exclude wholesale should *not* be excluded prior to trial.  For example, and as noted by the Court in the Adm. Burke trial, Defendants' professional background will almost certainly be discussed at trial.  *See* Burke Pre-Trial Tr. at 87:4–6.  Similarly, if Defendants testify, Defendants must be permitted to introduce themselves and give an overview of their backgrounds. *See id.*  The Court should therefore either deny this portion of the motion as moot or premature, or simply enter an order consistent with the one entered in the Adm. Burke trial:  Defendants are precluded from admitting evidence aimed at jury nullification, but the admissibility of evidence regarding Defendants' backgrounds will be assessed at trial.  *See* Burke MIL Order at 2; Burke Pre-Trial Tr. at 86:9–90:21.

**Good Character.**  Defendants do not intend to introduce evidence or argument of prior good acts aimed at showing a propensity for good character such that Defendants were not disposed to commit crimes.  However, as the Court noted in its pretrial ruling in the Adm. Burke trial, "certain reputation evidence would be admissible here, especially as the charged crimes sound in dishonesty.  So again I cannot totally preclude the defense from introducing evidence about [Defendants'] character."  Burke Pre-Trial Tr. at 87:13–17.  That ruling is entirely consistent with the relevant rule.  *See* Fed. R. Evid. 404(a)(2)(A).  The Court should therefore either deny this portion of the motion as moot or premature, or simply enter an order consistent with the one entered in the Adm. Burke trial: that the defense is limited to general reputation or opinion evidence about a pertinent character trait; and the defense may not introduce evidence of specific instances of good character.  Burke Pre-Trial Tr. at 87:13–23; Burke MIL Order at 2.

**Punishment, Collateral Consequences, and Charging Decisions.**  Defendants do not intend to introduce evidence or argument of Defendants' potential punishment or collateral consequences of convictions, nor do Defendants intend to introduce evidence or argument regarding the government's charging decisions.  However, Defendants reserve the right to cross-examine witnesses for bias based on the government's decision to charge or not charge that individual, as well as any immunity the witness may have been afforded by the government.  ▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆  That is fair grounds for cross-examination, even if it necessarily implicates the government's charging decisions.

## II.  THE COURT MUST DENY THE GOVERNMENT'S REQUEST TO EXCLUDE GOOD FAITH EVIDENCE BECAUSE IT WOULD DEPRIVE DEFENDANTS OF THE ABILITY TO REBUT AN ESSENTIAL ELEMENT OF BRIBERY.

The federal bribery statute requires proof that defendants acted "corruptly"—a meaningful mental state element that Congress included to distinguish criminal conduct from legitimate interactions.  *See* 18 U.S.C. § 201(b).  This Court recognized when adopting the government's proposed instructions in Admiral Burke's trial that "[t]he term "corruptly" … means having an improper, wrongful motive or purpose."  ECF No. 102-1 ("Burke Joint Proposed Jury Instrs.") at 13; May 13, 2025 Burke Trial Tr. at 103:13–14.  The Justice Manual similarly states:

> Under section 201(b), the offender must have acted "corruptly." This is, properly speaking, the intent element of the offense.  The word "corruptly" simply means "with a bad or evil purpose."  It is also frequently defined to mean the same thing as "willfully," and thus to connote "specific intent."  *See, e.g.*, 1 Devitt & Blackmar, Federal Jury Practice and Instructions, §§ 14.03, 14.06, 34.08.

U.S. Dep't of Justice, Criminal Resource Manual § 2044.  Evidence that Defendants acted in good faith directly rebuts this essential element.  Such evidence is not only admissible but necessary to allow Defendants to contest an element the government must prove beyond a reasonable doubt.

### A.    The Bribery Statute Requires Proof Of Two Distinct Mental State Elements.

In *Snyder v. United States*, the Supreme Court specifically noted two "defining characteristics of § 201(b)'s bribery provision: the corrupt state of mind *and* the intent to be influenced in the official act."  603 U.S. 1, 11 (2024) (emphasis added).  The Court explained that "Section 201(b) … makes it a crime for federal officials to 'corruptly' accept a payment 'in return for' 'being influenced' in an official act."  *Id.*  It identified these dual *mens rea* elements from the text of the federal bribery statute, which prohibits "directly or indirectly, *corruptly* giv[ing], offer[ing] or promis[ing] anything of value to any public official … or offer[ing] or promis[ing] any public official … to give anything of value to any other person or entity, *with intent*—to influence any official act."  18 U.S.C. § 201(b)(1) (emphasis added).  Although the government dismisses this language from *Snyder* as "dicta," MIL at 10, it cannot ignore that the statutory requirement that a defendant act "corruptly" is separate from the requirement that the defendant act "with intent to influence any official act," 18 U.S.C. § 201(b)(1).  "Where Congress includes particular language in one section of a statute" and uses different language in another, "it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."  *Russello v. United States*, 464 U.S. 16, 23 (1983).  Here, Congress used "corruptly" to modify the act of giving, offering, or promising, while it used "with intent" to describe the purpose of influencing official action.  This deliberate choice of different language indicates Congress's intended different mental state requirements for each element.

In addition, reading "corruptly" out of the statute would violate this Court's "duty 'to give effect, if possible, to every clause and word of a statute.'"  *United States v. Menasche*, 348 U.S.

528, 538–39, (1955) (quoting *Montclair v. Ramsdell*, 107 U.S. 147, 152 (1883)); *see also Williams v. Taylor*, 529 U.S. 362, 404 (2000) (describing this rule as a "cardinal principle of statutory construction"). Courts are "reluctan[t] to treat statutory terms as surplusage" in any setting, *Babbitt v. Sweet Home Chapter, Communities for Great Ore.*, 515 U.S. 687, 698 (1995), and "are especially unwilling to do so when the term occupies [a] pivotal a place in the statutory scheme," as a *mens rea* requirement plainly does. *Duncan v. Walker*, 533 U.S. 167, 174 (2001); *see also Yates v. United States*, 574 U.S. 528, 529 (2015). If Congress intended only to require *quid pro quo* intent, it would not have imposed both "corruptly" and "with intent" as separate requirements. Yet "corruptly" was enacted in the statute and thus must add "*something*" on top of the other statutory elements. *United States v. North*, 910 F.2d 843, 940–41 (D.C. Cir. 1990) (Silberman, J., concurring in part and dissenting in part); *United States v. Sittenfeld*, 128 F.4th 752, 794 (6th Cir. 2025) (Murphy, J., concurring).

At a minimum, "corruptly" means what the Justice Manual states and what this Court instructed the jury in Admiral Burke's trial: "having an improper, wrongful motive or purpose." May 13, 2025 Burke Trial Tr. at 103:13–14. At that time, the government offered, and defended, this instruction. Burke Joint Proposed Jury Instrs. at 13; ECF No. 129. And previously, the Solicitor General, on behalf of the United States, told the Supreme Court that "corruptly" means "'wrongful, immoral, depraved, or evil' conduct." Brief for the United States at 38–39, *Snyder v. United States*, 603 U.S. 1 (No. 23-108), 2024 WL 1116453; *see also id.* (agreeing that the inclusion of "an express mens rea of 'corruptly'" imposes "a major limiting feature" on federal-programs bribery).

This requirement is distinct from mere intent to offer a *quid pro quo.* In the Solicitor General's words, addressing Section 666 bribery, "'corruptly' *unquestionably* narrows the statute's

7

scope … through a stringent mens rea requirement, not an artificially limited actus reus." *Id.* at 25–26 (emphasis added). The same is true of Section 201 bribery. Transactional intent is different in kind from Section 201(b)'s "corrupt state of mind" element, 603 U.S. at 11. The latter inherently requires awareness that one's conduct is wrongful or improper, while the former only requires an intent to achieve a certain outcome. The Justice Manual accordingly distinguishes § 201(b) from § 201(c), which "lacks the word 'corruptly'" and requires "simply that the defendant acted 'knowingly and purposefully' and not by mistake or inadvertence, *as opposed to* 'corruptly' or willfully." U.S. Dep't of Justice, Criminal Resource Manual § 2044 (emphasis added).

The rule of lenity confirms that "corruptly" cannot be collapsed into "with intent." This canon of statutory construction prevents courts from giving the words of a criminal statute "a meaning that is different from [their] ordinary, accepted meaning, and that disfavors the defendant." *Burrage v. United States*, 571 U.S. 204, 216 (2014). When a criminal statute has multiple possible readings, courts do not "choose the harsher alternative" unless Congress has "spoken in language that is clear and definite." *United States v. Bass*, 404 U.S. 336, 347–49 (1971) (quotations and citation omitted). Congress has not done so here. To the contrary, it wrote a statute with two separate *mens rea* requirements, as confirmed by the Supreme Court. The "corruptly" requirement has independent meaning from the quid pro quo requirement, as this Court, multiple authorities in the Department of Justice, and even this prosecution team have recognized in the "wrongful purpose or motive" definition. Lenity prohibits stripping that definition, and the constraints it imposes on the prosecution, from the statute. Thus, Defendants must be allowed to introduce evidence of good faith to rebut the government's evidence that Defendants acted "corruptly."

**B.    Good Faith Evidence Directly Rebuts An Essential Element of Bribery.**

What is the government so afraid of?  As this Court has acknowledged, evidence that Defendants believed their conduct was proper is central to this case.  A "state of mind is 'easy to allege and hard to disprove,'" *Nieves v. Bartlett*, 587 U.S. 391, 403 (2019), and evidence of whether Defendants "ha[d] an improper, wrongful motive or purpose," Burke Joint Proposed Jury Instrs. at 13, goes to the heart of whether Defendants acted "corruptly."  During the September 23, 2024, severance hearing, the Court explicitly recognized that Defendants could argue they "were fooled into thinking this is all aboveboard because there was another high-profile DOD official participating" and that such evidence would demonstrate "their belief that what they're doing is okay."  ECF No. 53 at 33:9–13.  That is exactly right.  The Court correctly identified that Defendants' subjective belief in the lawfulness of their conduct—their good faith understanding that certain arrangements involving government officials were legitimate—constitutes critical evidence that is probative of their mental state.

Other evidence of Defendants' good faith might include their understanding that post-employment arrangements with government officials are common and lawful, their reliance on standard industry practices for government relations, their belief that any arrangement would be subject to ethics review, their understanding that Adm. Burke would have independent obligations to follow ethics rules, their belief he would accurately convey them to Defendants, their willingness to openly discuss Adm. Burke's employment in the presence of Person 3 (whom they did not know was in a relationship with Adm. Burke), and their comfort sharing their plans with scores of their employees and investors (none of whom are alleged to be co-conspirators).  This evidence might also include Defendants' knowledge of legal post-employment arrangements in their industry, their belief that proper timing and disclosure could render such arrangements lawful, or their understanding that government officials regularly transition to private sector positions.

The conduct here reflects routine business practices common throughout the private sector, where professionals regularly transition from evaluating companies to joining them. Defendants had pursued Navy contracts through standard commercial channels since 2017, and Adm. Burke, like all departing military personnel, had every right to explore post-service employment opportunities. Evidence, for example, that he told Defendants that he could engage with them about future employment would directly contradict any inference of wrongful purpose.

Such evidence would be highly probative of whether Defendants acted with "a corrupt state of mind." 603 U.S. at 11. If Defendants genuinely believed their conduct was proper, standard business practice, or subject to appropriate oversight, this would strongly suggest they lacked the corrupt state of mind required by the statute.

This Court has previously recognized the importance of good faith in evaluating a defendant's mental state under federal criminal statutes that require proof of wrongful intent. In *United States v. Martin*, No. 1:21-cr-394 (D.D.C. Apr. 6, 2022), this Court acquitted a January 6 defendant charged under 18 U.S.C. § 1752 and 40 U.S.C. § 5104, based on Martin's claim that he reasonably believed police officers had permitted him to enter the Capitol. Although the government argued that signs, alarms, and broken glass should have alerted Martin that he was trespassing, the Court held that "the defendant reasonably believed the officer allowed him into the Capitol," and thus did not act with the required *mens rea*. Had Martin not been permitted to introduce evidence of his good faith belief that law enforcement authorized his entry, he could have been convicted despite lacking the requisite *mens rea*. This was true even though the Court was "not convinced" that the officer explicitly waved Martin in; it was enough that the circumstances reasonably led Martin to believe his conduct was lawful. *See* Bench Verdict Tr. at 263:2–10, *United States v. Martin*, No. 1:21-cr-394 ECF No. 41 (D.D.C. Apr. 6, 2022); *see also*

*id.* at 268:13–15 ("[U]nder our system of law, close calls go to the criminal defendant."). The same principle applies here. Where Defendants assert that evidence will demonstrate their belief that their conduct was lawful, and the statute requires corrupt intent, Defendants must be permitted to present that belief as evidence negating corrupt intent.

The probable value of this evidence would substantially outweigh any potential for prejudice. Unlike character evidence, which may invite jury nullification or improper sympathy, evidence of good faith belief directly addresses a legal element the government must prove. Such evidence helps the jury determine the crucial factual question of defendants' mental state without creating unfair prejudice. This Court has already appropriately recognized the relevance and admissibility of Defendants' good faith beliefs in this case, and it should do so again now by denying the government's motion *in limine* on this issue.

## III.    THE GOVERNMENT'S ARGUMENTS FAIL.

The government's motion rests on an untenable internal contradiction and a fundamental misunderstanding of federal bribery law. The government—although it recently agreed that "corruptly" means "having an improper, wrongful motive or purpose," Burke Joint Proposed Jury Instrs. at 13, and repeats that claim in its motion. MIL at 9–10—argues that any *quid pro quo* arrangement is "inherently corrupt," which bars any evidence of Defendants' good faith. MIL at 9, 11, 15. That is not only nonsensical, "[t]hat is not how federal criminal law works." *Snyder*, 603 U.S. at 16. The government misreads *Snyder*, mischaracterizes circuit precedent, and advances an interpretation that would violate basic constitutional principles by criminalizing routine interactions without requiring awareness of illegality. Each argument fails.

### A.    The Government's Position Is Fatally Contradictory.

The government's position on the meaning of "corruptly" is self-defeating and cannot be sustained. The government advances two mutually incompatible arguments: *First*, the government

successfully argued in Adm. Burke's trial—and continues to defend as "consistent with established legal precedence and this Court's practice"—that "corruptly" means "having an improper, wrongful motive or purpose."  MIL at 9–10; *see also* U.S. Dep't of Justice, Criminal Resource Manual § 2044.  *Second*, the government simultaneously contends there is no good faith defense to bribery because "a bribe payor's offer of a quid pro quo—an intent to exchange of a thing of value for an official act—is inherently corrupt."  MIL at 9.[2]

These positions are irreconcilable.  If "corruptly" requires "an improper, wrongful motive or purpose," then by definition a defendant who acts in good faith—believing their conduct is proper and lawful—cannot have such an improper or wrongful motive.  The government cannot coherently maintain that corrupt intent requires a wrongful purpose while simultaneously precluding Defendants from presenting evidence that they lacked such purpose.  To accept the government's definition of "corruptly" as requiring an "improper, wrongful motive or purpose" necessarily admits that good faith evidence is directly relevant to whether defendants possessed such a motive.  The government's attempt to exclude such evidence while maintaining its definition of corruption demonstrates the untenable nature of its position.

## B.    The Government Fundamentally Misreads *Snyder*.

The government's illogical position finds no support in *Snyder*, which expressly endorses Defendants' interpretation.  *See supra* at 6.  The government stands in the curious position of

---

[2]   The government twice states that "this Court has already concluded" that "corruptly" does not require consciousness of wrongdoing, citing a ruling by this Court during Adm. Burke's trial.  MIL at 11 (citing May 13, 2025 Burke Trial Tr. at 76); *see also* MIL at 15.  But that ruling concerned Adm. Burke's proposed addition to the jury instructions regarding "specific intent to engage in a quid pro quo arrangement"—not what "corruptly" means.  *See* May 13, 2025 Burke Trial Tr. at 76:13–77:1.

contradicting the Solicitor General's explicit interpretation of § 201(b), *see supra* at 7–8, although it refuses to acknowledge it. Instead, the government offers two distinctions without a difference.

*First*, the government argues that the *Snyder* Court addressed "a completely different statute" and seeks to write off the Court's discussion of § 201(b) as "dicta." MIL at 13–14. Yet it cannot escape the fact that the Supreme Court itself invoked the comparison, explaining that "Section 666 shares [a] defining characteristic[] of § 201(b)'s bribery provision: the corrupt state of mind." *Snyder*, 603 U.S. at 12. Furthermore, the Court was explicitly referencing § 201(b) when it stated that prosecutors must prove "the corrupt state of mind *and* the intent to be influenced in the official act." *Id.* (emphasis added). As noted, the Solicitor General agreed, telling the Court that § 666's language contains a "parallel requirement" to § 201(b). Brief for the United States, *supra*, at 37. Just last month, the Solicitor General again compared the language of the two statutes, describing them as "similar[]." Brief for the United States at 9–10, *Shen Zhen New World v. United States* (No. 24-855).

This makes sense. Congress "modeled the text of § 666(a)(1)(B) for state and local officials on § 201(b)," 603 U.S. at 10–11, indicating that it thought the two statutes should have the same mental state requirements. To the extent that the requirements might differ, *see* MIL at 13 n.3 (suggesting that "[i]t makes sense" "that the *mens rea* of providing a prohibited gratuity would differ from the *mens rea* of offering a bribe"), there is no logical reason to require a lower *mens rea* requirement for § 201(b) bribes than § 666 gratuities. "[B]ribery has been treated as a far more serious offense" than accepting gratuities, 603 U.S. at 13, yet the government's position would create the anomalous result that it requires less culpability. *Compare also* 18 U.S.C. § 201(b) (imprisonment term of up to 15 years) *with* 18 U.S.C. § 666 (imprisonment term of up to 10 years). This result is nonsensical and not what Congress intended.

*Second*, the government argues that *Snyder* addressed § 201(b)(2) (accepting bribes), not § 201(b)(1) (offering bribes), suggesting this creates a meaningful distinction. MIL at 14–15. This argument lacks any principled foundation and violates basic statutory construction principles. Both subsections use identical language requiring defendants to act "corruptly." 18 U.S.C. § 201(b)(1), (2). It is a "normal rule of statutory interpretation that identical words used in different parts of the same statute are generally presumed to have the same meaning." *IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005). The government offers no explanation for why Congress would intend "corruptly" to have different meanings for bribe offerors versus recipients within the same statutory section. The government's position would also create further inconsistency. If accepting a bribe requires a "corrupt state of mind" separate from transactional intent, there is no logical reason why offering a bribe would require less culpability. Both actions involve the same moral wrongfulness that justifies criminal punishment; both typically involve the same level of planning, deliberation, and understanding of impropriety; and both are punished with equal statutory maximums. *Compare* 18 U.S.C. § 201(b)(1) (imprisonment term of up to 15 years) *with* 18 U.S.C. § 201(b)(2) (same).[3] The government's distinction would create the perverse result that those who initiate corrupt arrangements face lower mental state requirements than the officials in positions of public trust who respond to such overtures. This outcome contradicts both logic and the policies underlying federal bribery law.

The Court's analysis in *Snyder* built on decades of precedent recognizing that corruption requires more than mere intent to engage in beneficial exchanges. *See, e.g.*, *McDonnell v. United States*, 579 U.S. 550, 574 (2016); *United States v. Sun-Diamond Growers of Cal.*, 526 U.S. 398,

---

[3]  The government's suggestion that the fact that § 201(b)(1) does not require proof that the bribe was accepted, MIL at 15, is a non-sequitur.

405 (1999). When the Court distinguished between "corrupt state of mind" and "intent to be influenced," 603 U.S. at 12, it necessarily gave these phrases different meanings. The government's attempt to waive away this precedent to reduce its burden at trial and restrict the evidence Defendants may marshal in their defense should be rejected.

### C.    None of The Government's Cases Supports Eliminating The "Corruptly" Requirement.

The cases cited by the government offer no support for the argument that the bribery statute lacks an improper-motive-or-purpose requirement. As an initial matter, none of the cases cited by the government actually holds that the word "corruptly" is redundant with the *quid pro quo* requirement. *See* MIL at 12–13. Rather, the cited cases generally establish that an intent to engage in a *quid pro quo* is necessary for bribery, but not for illegal gratuities—a point Defendants do not dispute. And several cases the government cites plainly support Defendants' position. *United States v. Ng Lap Seng*, which the government cites, notes that officials act "corruptly" when "intending to be improperly influenced," 934 F.3d 110 143–44 (2d Cir. 2019). And *United States v. West* acknowledged that courts "differ on how to articulate the standard for acting 'corruptly' under 18 U.S.C. § 201(b)," 746 F. Supp. 2d 932, 935 n.4 (N.D. Ill. 2010), undermining the government's claim of "settled" precedent. MIL at 10, 12.

Moreover, none of the cases the government relies on addresses the Supreme Court's analysis in *Snyder* distinguishing between "corrupt state of mind" and transactional intent. *United States v. Paitsel*, 2023 WL 2139366, at *4 (D.D.C. Feb. 21, 2023), did not consider *Snyder* or the statutory text, instead basing its conclusion on a finding of "substantial evidence." In fact, its recitation of the evidence that supported a finding of corrupt intent showed that the defendant *was* aware his actions were wrong because he lied to obscure them. *Id.*

### D.    The Government's "Inherently Corrupt" Theory Would Violate Core Constitutional Rights.

The government argues throughout its motion that offering benefits for official acts is "inherently corrupt," and thus there is no requirement of any additional proof of Defendants' mental states. This argument proves too much and contradicts centuries of law enforcing the protections of the Fifth and Sixth Amendments, as well as the Supreme Court's repeated rulings restricting bribery prosecutions to preserve space for legitimate interactions between citizens and officials.

### 1.    Excluding Good Faith Evidence Violates The Right To A Jury Trial.

If granted, the government's motion would violate Defendants' Fifth and Sixth Amendment right to have a jury determine all essential elements of the offense. The Supreme Court "has held that these provisions require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *United States v. Gaudin*, 515 U.S. 506, 510 (1995). This constitutional guarantee is not merely procedural—it reflects the fundamental principle that "[t]the jury's function is to find the facts and to decide whether, on those facts, the defendant is guilty of the crime charged." *Shannon v. United States*, 512 U.S. 573, 579 (1994).

Here, the government concedes that it must prove Defendants acted "corruptly"—that is, with "an improper, wrongful motive or purpose." MIL at 9. Yet it seeks to exclude evidence that is directly relevant to whether Defendants possessed such wrongful intent. Granting this motion would create an impermissible constraint on the jury's constitutional role. The jury cannot properly determine whether Defendants acted with an "improper, wrongful motive" if the court excludes evidence showing they acted with a proper, lawful motive. The Sixth Amendment forbids

such artificial limitations on the jury's fact-finding function regarding essential elements of the offense.

Moreover, granting the government's motion would violate Defendants' right to present a complete defense. The Supreme Court has made clear that "state and federal rulemakers have broad latitude … to establish rules excluding evidence from criminal trials," but "the Constitution guarantees criminal defendants the a 'meaningful opportunity to present a complete defense.'" *Holmes*, 547 U.S. at 324 (quoting *Crane v. Kentucky,* 476 U.S. 683, 689–90 (1986)). Good faith evidence is probative evidence bearing directly on the mental state element the government must prove beyond a reasonable doubt. Excluding such evidence would deny Defendants the opportunity to contest an essential element of the charges, in violation of the Constitution's core guarantees to criminal defendants.

### 2. The Government's Theory Violates *Morissette*'s *Mens Rea* Requirements.

Holding that a *quid pro quo* is "inherently corrupt" would also flout the fundamental principle established in *Morissette v. United States* that crime requires "concurrence of an evil-meaning mind with an evil-doing hand." 342 U.S. 246, 251 (1952). This foundational rule reflects constitutional values rooted in due process and the presumption of innocence. In *Morissette*, the Court emphasized that "the unanimity with which [courts] have adhered to the central thought that wrongdoing must be conscious to be criminal." *Id.* at 252. *Liparota v. United* States reinforced this principle, holding that "[c]riminal offenses requiring no mens rea have a generally disfavored status" and that "[t]he failure of Congress explicitly and unambiguously to indicate whether mens rea is required does not signal a departure from this background assumption of our criminal law." 471 U.S. 419, 426 (1985) (internal quotation marks omitted); *see also Staples v. United States*, 511 U.S. 600, 606 (1994) (similar).

When Congress enacted § 201(b), it did the opposite of eliminating *mens rea*—it required two. By expressly including the term "corruptly" in the bribery statute, Congress demonstrated clear legislative intent to require a heightened mental state beyond mere knowledge or intent. *See supra* at 6–8. The "corruptly" element embodies the *Morissette* requirement of an "evil-meaning mind"—awareness that one's conduct is dishonest or improper. Yet, the government's "inherently corrupt" theory would render all such arrangements presumptively criminal, requiring defendants to prove their innocence rather than requiring the government to prove criminal mental state.[4] *Morissette* and its progeny demand more of the prosecution and are fatal to the motion *in limine*.

### 3.    The Motion Threatens *McDonnell*'s Constitutional Safeguards.

Lastly, the government attempts to use "a meat axe" to target corruption where the Supreme Court requires "a scalpel" to avoid criminalizing routine interactions between officials and private parties. *McDonnell*, 579 U.S. at 576. Constitutional principles demand a narrow interpretation of bribery statutes to preserve space for legitimate dealing. *See id.* at 574; *see also Citizens United v. FEC*, 558 U.S. 310, 360 (2010); *McCutcheon v. FEC*, 572 U.S. 185, 192 (2014); *Sun-Diamond*, 526 U.S. at 405. In *McDonnell*, the Court warned that overly broad interpretations "could cast a pall of potential prosecution over these relationships" because "conscientious public officials" regularly interact with constituents and private parties as part of their duties. 579 U.S. at 575. The Court emphasized that "[t]he basic compact underlying representative government assumes that public officials will hear from their constituents and act appropriately on their concerns." *Id.* "Ingratiation and access" are "not corruption" but rather reflect "a central feature of democracy—

---

[4] The government cannot preserve intent for the *quid pro quo* element while eliminating it for the corruption element. In *United States v. X-Citement Video, Inc.*, the Court explained that "*Morissette*, reinforced by *Staples*, instructs that the presumption in favor of a scienter requirement should apply to each of the statutory elements that criminalize otherwise innocent conduct." 513 U.S. 64, 72 (1994).

that constituents support candidates who share their beliefs and interests, and candidates who are elected can be expected to be responsive to those concerns." *Citizens United*, 558 U.S. at 360; *McCutcheon*, 572 U.S. at 192. The Court has therefore recognized a crucial dichotomy between a "bribe" and a permissible "gift … motivated, at least in part, by the recipient's capacity to exercise governmental power or influence in the donor's favor." *Sun-Diamond*, 526 U.S. at 405.[5]

This constitutional framework requires that the "corruptly" element distinguish between genuinely corrupt conduct and legitimate business relationships. *See United States v. Ring*, 706 F.3d 460, 464 (D.C. Cir. 2013) ("The line between legal lobbying and criminal conduct is crossed" only "by way of a corrupt exchange."). Under the government's interpretation, routine corporate recruiting at industry conferences, legitimate consulting arrangements, and standard revolving-door employment practices would all become presumptively criminal. The wrongful-purpose-or-motive requirement ensures that only defendants who knew they were acting improperly face criminal liability, preserving the constitutional space for routine interactions between officials and private parties that *McDonnell* demands.

The government's motion represents a breathtaking disregard for both statutory text and constitutional limits on prosecutorial power. Such overreach cannot be tolerated. The motion must be denied insofar as it seeks to exclude evidence of a good faith defense.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny the Government's Motion *in limine*.

---

[5] The government suggests that ruling in Defendants' favor would defeat the Supreme Court's instruction that a bribery conviction cannot be avoided by "knowing winks and nods," MIL at 9 (quoting *Evans v. United States*, 504 U.S. 255, 274 (1992)), but this confuses the two *mens rea* requirements. Section 201(b)'s requirement that the government prove intent to engage in a *quid pro quo* addresses that issue wholly apart from what "corruptly" means.

Respectfully submitted,

DATED June 20, 2025

*/s/ William A. Burck*
_____
William A. Burck

Rocco F. D'Agostino (Bar No. NY0592)
445 Hamilton Ave., Suite 605
White Plains, NY 10601
Tel: (914) 682-1993

*Counsel for Defendant Meghan Messenger*

William A. Burck (DC Bar No. 979677)
Avi Perry (DC Bar No. 90023480)
Rachel G. Frank (DC Bar No. 1659649)
John (Fritz) Scanlon (DC Bar No. 983169)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, D.C.  20005
Tel: (202) 538-8000
Fax: (202) 538-8100
williamburck@quinnemanuel.com
aviperry@quinnemanuel.com
rachelfrank@quinnemanuel.com
fritzscanlon@quinnemanuel.com

Christopher Clore (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
295 5th Ave
New York, NY 10016
Tel: (212) 849-7000
Fax: (212) 849-8100
christopherclore@quinnemanuel.com

*Counsel for Defendant Yongchul "Charlie" Kim*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, a copy of the foregoing motion was electronically filed with the Clerk of the U.S. District Court for the District of Columbia via CM/ECF and served to all counsel of record via electronic mail.

*/s/ William A. Burck*
William A. Burck (DC Bar No. 979677)

Dated: June 20, 2025