UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ROBERT P. BURKE,<br>YONGCHUL "CHARLIE" KIM, and<br>MEGHAN MESSENGER,<br><br>Defendants. | Case No. 1:24-cr-00265-TNM |

**YONGCHUL "CHARLIE" KIM AND MEGHAN MESSENGER'S JOINT OPPOSITION
TO THE UNITED STATES' MOTION *IN LIMINE* TO ADMIT
<u>OUT-OF-COURT CO-CONSPIRATOR STATEMENTS (ECF 179) [REDACTED]</u>**

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1
BACKGROUND ............................................................................................................................ 3
LEGAL STANDARD .................................................................................................................... 3
ARGUMENT .................................................................................................................................. 4
I.   ADM. BURKE'S STATEMENTS TO PERSON 3 ARE INADMISSIBLE BECAUSE THEY WERE NOT MADE IN FURTHERANCE OF THE ALLEGED CONSPIRACY ........................................................................................................ 4
II.  ADM. BURKE'S LIES TO THE NAVY ABOUT HIS COMMUNICATIONS WITH COMPANY A SHOULD BE EXCLUDED BECAUSE THEY ARE NOT BEING OFFERED FOR THEIR TRUTH AND ARE HIGHLY PREJUDICIAL ............. 7
CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bourjaily v. United States*,
  483 U.S. 171 (1987) ................................................................................................................3

*United States v. Bazezew*,
  783 F. Supp. 2d 160 (D.D.C. 2011) .........................................................................................3

*United States v. Carneglia*,
  256 F.R.D. 385 (E.D.N.Y. 2009) ..............................................................................................4

*United States v. Carson*,
  455 F.3d 336 (D.C. Cir. 2006) .................................................................................................4

*United States v. Darnel*,
  2023 WL 5723371 (D.D.C. Sept. 5, 2023) ........................................................................3, 4, 6

*United States v. Miller*,
  738 F.3d 361 (D.C. Cir. 2013) ..............................................................................................4, 6

*United States v. Tarantino*,
  846 F.2d 1384 (D.C. Cir. 1988) ...............................................................................................4

*United States v. Warman*,
  578 F.3d 320 (6th Cir. 2009) ...................................................................................................6

**Rules**

Fed. R. Crim. P. 52 .......................................................................................................................2

Fed. R. Evid. 403 ..........................................................................................................................4

Fed. R. Evid. 801(d)(1) .................................................................................................................7

Fed. R. Evid. 801(d)(2)(A) ............................................................................................................8

Fed. R. Evid. 801(d)(2)(E) ................................................................................................. 1, 2, 3, 7

**PRELIMINARY STATEMENT**

Yongchul "Charlie" Kim and Meghan Messenger ("Defendants"), by and through their undersigned counsel, respectfully submit this memorandum of law in opposition to the government's motion to admit certain out-of-court statements by alleged co-conspirators.[1] ECF No. 179.  Specifically, Defendants oppose the admission of co-defendant Admiral Robert Burke's statements: (1) to and from Person 3 concerning his relationship with Company A and Defendants, and (2) to and from U.S. Navy officials regarding his communications with Company A about future employment.[2]

Adm. Burke's private statements to Person 3—whom the government has not identified as a co-conspirator—are inadmissible because they were not made in furtherance of the charged conspiracy.  Fed. R. Evid. 801(d)(2)(E).  These statements were made by Adm. Burke to further an extramarital relationship, not a criminal bribery conspiracy.  Indeed, it appears that the government is attempting to shoehorn into Rule 801(d)(2)(E) statements made not only by Adm. Burke to Person 3, but also statements by Person 3 to Adm. Burke, *see* ECF No. 179 at 19–20, because the government does not plan to call Person 3 as a witness, as it declined to do in Adm. Burke's trial.  The Court should reject this tactic.  If the government wants to admit testimony about what Person 3 heard and said, it should be forced to call her to the stand.  Under no

---

[1] To date, the government has failed to identify *any* unindicted co-conspirators despite Defendants' requests for such information on December 5, 2024 and again on December 11, 2024. *See* ECF No. 92 at 14–15.  Given this refusal, and the government's failure to identify any unindicted co-conspirators in this motion or in the motion to admit co-conspirator statements filed before the trial of Adm. Burke, Defendants are proceeding under the belief that none exist.  If that is not the case, then the government should identify any unindicted co-conspirators immediately, given that the beginning of trial is less than 60 days away.

[2] Defendants reserve the right to introduce the statements described herein for purposes other than for their truth (*e.g.*, for their effect on the listener, cross-examination purposes, etc.). Fed. R. Evid. 801(c).

1

circumstances should the government be permitted to admit Person 3's hearsay statements through a case agent, thus shielding Person 3 from cross-examination.

Adm. Burke's statements to Navy officials are also inadmissible under Rule 801(d)(2)(E). As an initial issue, despite the title of the government's motion and case law it cites, it does not appear that the specific relevant statements identified by the government, *see* ECF No. 179 at 17–18, actually are being offered for the truth of the matter asserted so as to implicate the hearsay rules at all. It appears they are being offered to establish that Adm. Burke *lied* to the Navy. They are nonetheless inadmissible because the government has not proffered evidence that Defendants were aware of these lies. While Adm. Burke's lies to the Navy were admissible in *his* trial because they were probative of his state of mind, they reveal nothing about Defendants' mental states absent a threshold showing that Defendants knew about the lies beforehand. The government has not made that showing in its motion. Indeed, the evidence shows that, rather than acting to conceal their plan to hire Adm. Burke, Defendants broadcasted that plan to dozens of their employees and investors. Even if that were not the case, whatever minimal relevance these statements might have in Defendants' trial is significantly outweighed by the risk of unfair prejudice and confusion, as the jury may impute state of mind evidence regarding Adm. Burke to Defendants.

Defendants are aware, of course, that prior to Adm Burke's trial, the Court held that the government had proven the existence of a conspiracy by a preponderance of the evidence. *See* Burke Pretrial Conference Transcript 108:1–4, 109:22–24 (Apr. 10, 2025). Defendants do not concede that the government has established the existence of a conspiracy, or Defendants' involvement, and expressly preserve this issue for appeal, *see* Fed. R. Crim. P. 52, but highlight other arguments in this brief. Most critically, even if a conspiracy is proven, the government has

2

not established that the specific statements at issue were made in furtherance of the conspiracy or are otherwise admissible against Defendants, as opposed to Adm. Burke.

## BACKGROUND

As this Court is aware, during the alleged conspiracy period, Adm. Burke and Person 3 were involved in a prolonged extramarital affair during which they discussed, among other things, Adm. Burke's relationship with the Defendants, his retirement plans, and their joint plans for the future, including where they would live, their financial prospects, and whether they would marry. *See* ECF No. 91-20.  Additionally, between August 2021 and July 2022, Adm. Burke misrepresented his relationship with the Defendants to Navy officials. Adm. Burke denied having any employment discussions (with Company A or otherwise), and stated that he was aware of— and in compliance with—Navy pre-retirement policies, and eventually misrepresented when his employment discussions with the Defendants began. ECF No. 179 at 16. The government has not proffered any evidence that Defendants were involved in, or even aware of, these communications.

## LEGAL STANDARD

Federal Rule of Evidence 801(d)(2)(E) provides that an out-of-court statement that is offered for the truth of the matter asserted is not barred by the hearsay rule if it is "offered against an opposing party and was made by the party's coconspirator during and in furtherance of the conspiracy." To admit a co-conspirator statement, the government must prove "by a preponderance of the evidence that: (1) a conspiracy existed, (2) that the defendant and the declarant were involved in that conspiracy, and (3) that the declarant's statement was made in the course and in furtherance of that conspiracy." *United States v. Darnel*, 2023 WL 5723371, at *2 (D.D.C. Sept. 5, 2023) (citing *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987)). To meet this burden, the government cannot rely on the proffered statements alone; rather, the government's showing under Rule 801(d)(2)(E) "must be based at least in part on some

3

independent evidence of the conspiracy, that is, on evidence other than the statements whose admissibility is in question." *United States v. Bazezew*, 783 F. Supp. 2d 160, 166 (D.D.C. 2011).

To show that a proffered statement is in furtherance of a conspiracy, the government must prove by a preponderance of the evidence that the statement "'can reasonably be interpreted as encouraging a co-conspirator or other person to advance the conspiracy, or as enhancing a co-conspirator or other person's usefulness to the conspiracy.'" *United States v. Miller*, 738 F.3d 361, 385 (D.C. Cir. 2013) (quoting *United States v. Tarantino*, 846 F.2d 1384, 1412 (D.C. Cir. 1988)). Statements that typically satisfy this requirement include "'those that keep a coconspirator updated on the status of the business, motivate a coconspirator's continued participation, or provide background information on key conspiracy members.'" *Id*. (quoting *United States v. Carson*, 455 F.3d 336, 367 (D.C. Cir. 2006)). However, a "conspirator's casual comments to people outside or inside the conspiracy" are not admissible. *Id*. at 375. "Bragging" and "descriptive comments" likewise do not satisfy the "in furtherance of" requirement. *Darnel*, 2023 WL 5723371 at *2.

Should a court "find that a hearsay statement is admissible under an exception, it must still perform the balancing test applicable to all relevant evidence under Rule 403." *United States v. Carneglia*, 256 F.R.D. 385, 392 (E.D.N.Y. 2009). Otherwise admissible evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

## ARGUMENT

**I.   ADM. BURKE'S STATEMENTS TO PERSON 3 ARE INADMISSIBLE BECAUSE THEY WERE NOT MADE IN FURTHERANCE OF THE ALLEGED CONSPIRACY**

Even if the government could prove the existence of a conspiracy, Adm. Burke's statements to Person 3 about his relationship with Defendants and his job prospects at Company

4

A are inadmissible because the government has not shown that these statements were made in furtherance of the charged conspiracy.

At issue here are Adm. Burke's private communications with Person 3 made close in time to the July 2021 lunch in Washington, D.C. and the November 2021 meeting in New York City. ECF No. 179 at 3–5. Defendants were not part of these communications. The communications include, among other things, Adm. Burke's statements that (i) Defendants wanted to have a "more intimate conversation" about the job; (ii) he "essentially agreed to work for [Company A]"; (iii) he stood to receive a 10% stake in Company A (in response to Person 3's questions about his compensation); (iv) he was "lean[ing]" towards working for Company A because it was a "real offer" that could get him out of "the DoD rut"; and (v) he did not believe his job offer was technically linked to obtaining a contract for Company A. ECF No. 179 at 19–20.

The government completely ignores the context in which these statements were made. Person 3 is not alleged to be a co-conspirator, nor is she alleged to have played any role in furthering the alleged conspiracy. Instead, she was Adm. Burke's romantic partner. The statements at issue were made to bolster Adm. Burke's relationship with Person 3, not to further a conspiracy with Defendants. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

If true (and the government would be hard pressed to walk away from her at this stage), Adm.

5

Burke's first four statements to her about working with Defendants would have had the exact *opposite* effect of furthering the alleged conspiracy.

The government's explanations make no sense. Person 3 is not alleged to be part of the conspiracy; she was not in a position to help Defendants get a contract with the Navy. nor was she otherwise in a position to help execute or conceal the conspiracy. It is paradoxical to suggest that the purpose of these first four statements "was to falsely placate and assure Person 3 that the conduct about which she was aware was proper," ECF No. 179 at 18, because the statements themselves are what alerted Person 3 to the conduct in the first place. How would telling Person 3 that Adm. Burke had "essentially agreed to work for" Defendants and had a "real offer" have placated her and deterred her from alerting law enforcement? The government does not explain. If the statements were intended to keep Person 3 quiet about Adm. Burke's job discussions with Defendants, the easier and more surefire solution would have been for Adm. Burke simply not to tell Person 3 about those discussions at all. Adm. Burke did not tell her because he wanted to keep her quiet; he told her because he wanted to impress her in the context of their affair. *Darnel*, 2023 WL 5723371; *Miller*, 738 F.3d at 375 ("[A] conspirator's casual comments to people outside or inside the conspiracy" are inadmissible). This information was meant to update Person 3 on an opportunity that could change their lives and to brag about how much Adm. Burke stood to earn. *Darnel*, 2023 WL 5723371, at *3 ("Bragging for the sake of bragging is not a statement in furtherance of an underlying conspiracy."); *United States v. Warman*, 578 F.3d 320, 339 (6th Cir. 2009) (error to admit bragging, as there was no indication that declarant was trying to induce anyone to participate or provide information to carry out conspiracy).

To the extent these statements demonstrate any intentionality on Adm. Burke's part, they reflect Adm. Burke's desire to maintain a long-term relationship or to brag about his future

earnings to convince Person 3 to continue their affair. Neither reason supports the admission of these statements at trial against Defendants, and the Court should deny the government's request. Any other conclusion would erase any limits on the "in furtherance" requirement of Rule 801(d)(2)(E).

In addition, the Court should deny the government's motion on the basis that it appears to be a tactic aimed at admitting statements made to and by Person 3 without having to sponsor Person 3 as a witness. The government's motion is crystal clear: the government seeks to admit both Adm. Burke's statements to Person 3 and Person 3's statements to Adm. Burke. *See* ECF No. 178 at 19-20 & n.3. Just like in Adm. Burke's trial, the government appears to have no plan to call Person 3 and subject her to cross-examination. The Court should not allow the government to have its cake and eat it too by permitting the government to again decline to call Person 3, but nevertheless allow the government to admit statements made to and by Person 3 through an agent—statements that would then be shielded from cross-examination.

## II. ADM. BURKE'S LIES TO THE NAVY ABOUT HIS COMMUNICATIONS WITH COMPANY A SHOULD BE EXCLUDED BECAUSE THEY ARE NOT BEING OFFERED FOR THEIR TRUTH AND ARE HIGHLY PREJUDICIAL

The government next seeks to admit Adm. Burke's lies to the Navy about his employment discussions with Company A. ECF No. 179 at 16–18. To begin, no matter how the government seeks to characterize them, these statements do not implicate the hearsay exceptions because they are not being offered for their truth. The government does not actually believe that Adm. Burke was being truthful with the Navy when he denied discussing a job with Company A. Rather, the government intends to use Adm. Burke's statements to prove that Adm. Burke *lied* to the Navy to further the goals of the alleged conspiracy. Still, these statements are inadmissible because the government has failed to proffer any evidence that Defendants were aware of, much less encouraged, Adm. Burke's misrepresentations to the Navy. To be sure, Adm. Burke's lies were

7

admissible in his trial because they were his own statements and they were directly relevant to his state of mind. *See* Fed. R. Evid. 801(d)(1). But absent any showing that Defendants were aware of these statements, they do not bear upon *Defendants'* mental states. In fact, the evidence shows, rather than attempting to conceal their plan to hire Adm. Burke (which would be consistent with knowledge of Adm. Burke's lies to the Navy), Defendants actually shared specific details about their plan with *dozens* of individuals, including Company A employees and investors, none of whom have been identified as coconspirators (and all of whom could have potentially derailed the alleged conspiracy by further disseminating the information provided by the Defendants). Put simply, evidence that Adm. Burke lied to the Navy, without any predicate evidence that Defendants knew about these lies beforehand, says nothing about Defendants' mental states and has no other relevance.

To the extent these statements have *any* relevance to Defendants' mental states or otherwise, their probative value is substantially outweighed by the risk of unfair prejudice and confusion. Defendants have never denied having job discussions with Adm. Burke and, as a result, do not dispute that Adm. Burke lied to the Navy. But absent any evidence that Defendants knew about or encouraged these lies beforehand, admission of Adm. Burke's lies to the Navy will invite the jury to conflate Adm. Burke's knowledge, motive, and intent with Defendants'. To protect against that very real risk, the Court should deny the government's motion to admit these statements, which Defendants were not parties to and the government has not shown Defendants even knew about.

Finally, and in response to a running theme throughout the government's motion, the government's reliance on this Court's prior rulings in Adm. Burke's trial is misguided. Adm. Burke was the *declarant* in the relevant statements, meaning the statements were also admissible

8

under Rule 801(d)(2)(A) as statements made by a party-opponent. Defendants did not participate in or overhear the relevant statements. Adm. Burke's state of mind is *not* at issue in Defendants' trial. And Defendants have not been charged with performing acts affecting a personal financial interest or concealing material facts from the United States—charges with which Adm. Burke's statements to Navy officials are directly connected. For these additional reasons, the Court should deny the government's request notwithstanding its prior ruling in Adm. Burke's trial.

**CONCLUSION**

For the reasons described herein, Defendants respectfully request that the Court deny the government's motion to admit the categories of statements described above.

Respectfully submitted,

| | |
|---|---|
| DATED June 20, 2025 | /s/ William A. Burck  <br>William A. Burck |

| | |
|---|---|
| Rocco F. D'Agostino (Bar No. NY0592)<br>445 Hamilton Ave., Suite 605<br>White Plains, NY 10601<br>Tel: (914) 682-1993<br><br>*Counsel for Defendant Meghan Messenger* | William A. Burck (DC Bar No. 979677)<br>Avi Perry (DC Bar No. 90023480)<br>Rachel G. Frank (DC Bar No. 1659649)<br>John (Fritz) Scanlon (DC Bar No.: 983169)<br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>1300 I Street NW, Suite 900<br>Washington, D.C. 20005<br>Tel: (202) 538-8000<br>Fax: (202) 538-8100<br>williamburck@quinnemanuel.com<br>aviperry@quinnemanuel.com<br>rachelfrank@quinnemanuel.com<br>fritzscanlon@quinnemanuel.com<br><br>Christopher Clore (*pro hac vice*)<br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>295 5th Ave<br>New York, NY 10016<br>Tel: (212) 849-7000<br>Fax: (212) 849-8100<br>christopherclore@quinnemanuel.com<br><br>*Counsel for Defendant Yongchul "Charlie" Kim* |

**CERTIFICATE OF SERVICE**

      I hereby certify that on this date, a copy of the foregoing Opposition was electronically filed with the Clerk of the U.S. District Court for the District of Columbia via CM/ECF and served to all counsel of record via electronic mail.

                                                            /s/ *William A. Burck*
                                                       William A. Burck (DC Bar No.: 979677)

Dated: June 20, 2025