UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| Plaintiff, | |
| v. | Case No. 1:24-cr-00265-TNM |
| YONGCHUL "CHARLIE" KIM, and MEGHAN MESSENGER, | REDACTED |
| Defendants. | |

**YONGCHUL "CHARLIE" KIM'S, MEGHAN MESSENGER'S, AND NEXT JUMP, INC.'S JOINT OPPOSITION TO THE GOVERNMENT'S SUPPLEMENT TO MOTION *IN LIMINE* (ECF 219) AND CROSS-MOTION TO QUASH TRIAL SUBPOENA, EXCLUDE PRIVILEGED EVIDENCE, AND IMPOSE SANCTIONS**

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

TABLE OF CONTENTS ............................................................................................ i

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT .................................................................................1

I.     BACKGROUND ..............................................................................................5

     A.    Attorney Weisberg's Engagement by Next Jump and Legal Advice
Provided to the Company and its Agents. ...............................................5

     B.    Movants' Discovery that the Government Had Invaded Next Jump's
Privileged Relationship with Attorney Weisberg, and Next Jump's
Assertion of Privilege Over the Material .................................................7

     C.    The MOI, Draft MOI, and Agent Rough Notes for the Prosecution
Team's July 2 Interview of Attorney Weisberg ......................................10

     D.    The Government's Trial Subpoena Served on Next Jump .......................12

     E.    The Government's Supplement to its Motion *in Limine* to Admit
Certain Evidence and Argument ...........................................................12

II.    LEGAL STANDARD ....................................................................................12

III.   ARGUMENT ................................................................................................15

     A.    The Documents and Information that the Government Obtained
from Attorney Weisberg Are Privileged.................................................15

     B.    The Court Should Deny the Government's Motion *In Limine*
Regarding the Weisberg Documents, the Apple Documents,
and KPMG Documents ...........................................................................21

     C.    The Court Should Quash the Government's Trial Subpoena
Served on Next Jump .............................................................................22

     D.    The Court Should Exclude All Evidence and Argument Related
to the Weisberg Documents and Sanction the Government....................23

CONCLUSION.......................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alexander v. F.B.I.*,
    186 F.R.D. 154 (D.D.C. 1999) ........................................................................13, 17

*Alexander v. F.B.I.*,
    198 F.R.D. 306 (D.D.C. 2000) ...............................................12, 13, 14, 19, 20

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991) ..................................................................................................23

*Coastal States Gas Corp. v. Department of Energy*,
    617 F.2d 854 (D.C. Cir. 1980) ...........................................................................12

*Commodity Futures Trading Commission v. Weintraub*,
    471 U.S. 343 (1985) ..............................................................................................14

*Hicks v. Bush*,
    452 F. Supp. 2d 88 (D.D.C. 2006) .......................................................14, 22, 23

*Kastigar v. United States*,
    406 U.S. 441 (1972) ..............................................................................................14

*In re Kellogg Brown & Root, Inc.*,
    756 F.3d 754 (D.C. Cir. 2014) ...........................................................................15

*Kyriakopoulos v. Maigetter*,
    121 F.4th 1017 (3d Cir. 2024) ...........................................................................13

*Matter of Lieber*,
    442 A.2d 153 (D.C. 1982) ...........................................................................19, 20

*Nat'l Sec. Couns. v. C.I.A.*,
    206 F. Supp. 3d 241 (D.D.C. 2016) .............................................................13, 17, 20

*In re Ryan*,
    670 A.2d 375 (D.C. 1996) ..................................................................................16

*Sandra T.E. v. S. Berwyn Sch. Dist. 100*,
    600 F.3d 612 (7th Cir. 2010) .............................................................................13

*SEC v. Nat'l Student Mktg. Corp.*,
    18 Fed. R. Serv. 2d 1302 (D.D.C. 1974) .......................................................13

*United States v. American Telephone & Telegraph Co.*,
    642 F.2d 1285 (D.C. Cir. 1980) ........................................................................12

*United States v. Deloitte LLP*,
    610 F.3d 129 (D.C. Cir. 2010) ...................................................................13, 18

*United States v. Farrell*,
    921 F.3d 116 (4th Cir. 2019) ........................................................................13

*United States v. Haynes*,
    216 F.3d 789 (9th Cir. 2000) ...................................................................14, 21

*United States v. Hoey*,
    2016 WL 270871 (S.D.N.Y. Jan. 21, 2016) ...........................................14, 22, 23

*United States v. Landji*,
    2021 WL 5402288 (S.D.N.Y. Nov. 18, 2021) .........................................14, 22, 23

*United States v. Nixon*,
    418 U.S. 683 (1974) ....................................................................................21

*United States v. Schwimmer*,
    924 F.2d 443 (2d Cir. 1991) .........................................................................14

*United States v. SDI Future Health, Inc.*,
    464 F. Supp. 2d 1027 (D. Nev. 2006) ............................................................22

*United States v. Zolin*,
    491 U.S. 554 (1989) .....................................................................................1

*Valassis Communication, Inc. v. News Corp.*,
    2018 WL 4489285 (S.D.N.Y. Sept. 19, 2018) ...........................................13, 17

## PRELIMINARY STATEMENT

Yongchul "Charlie" Kim, Meghan Messenger, and third-party intervenor Next Jump, Inc. (collectively "Movants"),[1] by and through undersigned counsel, oppose the government's Supplement to its Motion *in Limine* (ECF No. 219). Movants also cross-move to quash a trial subpoena recently served on Next Jump, to exclude privileged evidence that the government wrongfully obtained, and for remedial sanctions.

The government's seemingly innocuous, two-page motion *in limine* masks an improper attempt to use at trial information and records that the government obtained by invading Next Jump's privileged relationship with its former ██████████████ lawyer, William Weisberg. Specifically, the motion seeks to admit as authentic two documents that the government obtained from Attorney Weisberg: ████████████████████████████████
███████████████████████████████████████████████████████
████████████████████████████████████ ████████ These documents are categorically privileged, and the government is not authorized to possess them, much less use them at trial. The government's motion *in limine* thus should be denied; the government should be precluded from using the documents in question; and the Court should appropriately sanction the government.[2]

The government had no basis to request documents from Attorney Weisberg without notifying his clients. The government knew that Attorney Weisberg was a ████████████████

---

[1]  A motion to admit Next Jump's counsel (Haejin Shim) *pro hac vice* has been filed in this matter. Once that motion is granted, Next Jump will file a motion to intervene for the limited purpose of joining this motion.

[2]  Movants have submitted the portions of this filing that summarize and quote from privileged material (Exs. 9, 10, 11) *in camera*, *ex parte*, and under seal, consistent with *United States v. Zolin*, 491 U.S. 554 (1989).

lawyer who was engaged by Next Jump through one of its law firms, White & Case LLP.  The government knew that Attorney Weisberg communicated primarily with Next Jump's outside general counsel.  The government knew that Attorney Weisberg ███████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████  And yet, the government nevertheless proceeded to interview Attorney Weisberg on July 2, 2025 about ███████

██████████████████████████████████████████████████████████████████

████████████████████████████████████

At no point during these interactions with Attorney Weisberg—all of which appear to have occurred over the last month—did the government contact Next Jump, the most obvious holder of any privilege with Attorney Weisberg.  At no point did the government reach out to Defendants Kim or Messenger, the co-CEOs of Next Jump.  It appears that the government did not even bother to involve a filter team to determine whether any information it gathered is privileged.  And because the government approached Attorney Weisberg on a voluntary basis, it likely did not even go through the internal Department of Justice review protocols mandated when a prosecutor subpoenas an attorney for information relating to the representation of a client.  *See* Justice Manual § 9-13.410.[3]

The only two safeguards that the government put in place were to █████████████████

██████████████████████████████████████████████████████████████████

---

[3]   In a July 22, 2025 email to counsel for Defendant Kim, a member of the Prosecution Team stated that █████████████████████████████████████████████████████████████ but Section 9-13.410 of the Justice Manual requires authorization by the Assistant Attorney General or a Deputy Assistant Attorney General for the Criminal Division.

███████████████████████████████████████████████████████████████

████████████████████████████████    ███████████████████████████

███████████████████████    But by that point, the government had already invaded the privilege by receiving privileged documents from Attorney Weisberg. Putative safeguards further failed during their interview of Attorney Weisberg, where ███████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████  ███████████  ████████████████████████████████

███████████████████████████████████████████████████  ████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████  An evidentiary hearing is thus needed to not only determine the extent of the taint from the government's action, and concomitant sanction, but also to determine what exactly happened during the Weisberg interview.

The government's knowing decision to interview Next Jump's former attorney is inexplicable. This invasion of the attorney-client privilege strikes at our adversarial system's very foundation and must be examined and, if appropriate, remedied by the Court. Movants therefore request three forms of relief:

*First*, the Court should deny the government's motion to admit at trial the privileged material the government wrongfully obtained from Attorney Weisberg.[4]

*Second*, the Court should quash a trial subpoena that the government served on Next Jump on July 11, 2025, which seeks ██████████████████████████████████ ███████████████████████████████████ Not only does this subpoena seek privileged information related to Attorney Weisberg's advice, but the only reason the government knew to subpoena this information is through its invasion of Next Jump's privileged relationship with Attorney Weisberg. The subpoena should therefore be quashed because it is and seeks fruit of the poisonous tree.

*Third*, Movants request that the Court impose remedial sanctions on the government for its invasion of Next Jump's privilege. The Court should first exclude all evidence and argument derived from the government's invasion of Next Jump's privilege, including the use of such material for impeachment or cross-examination, so that the government does not benefit from its conduct. The Court should then conduct an evidentiary hearing to determine the extent to which the government engaged in any knowingly inappropriate conduct surrounding Attorney Weisberg, which would warrant further sanctions. This hearing should address the extent of privileged information obtained by the government, whether such privileged information was gathered knowingly, whether the government has disclosed privileged information to other agencies, the degree to which privileged materials have influenced the investigation, and which prosecution

---

[4] The Court should also deny the portion of the government's motion *in limine* regarding material it obtained from Apple, Inc. and KPMG. *See* ECF No. 219. The government produced the Apple documents, as well as its theory of their relevance, only last week, and the government still has not produced several of the documents it obtained from KPMG. This late motion and attempt to inject new theories into this case should be rejected. *See infra* at 21-22.

team members have been exposed to privileged communications which, in turn, could necessitate their removal from the trial team, or other sanction.

## I. BACKGROUND

### A. Attorney Weisberg's Engagement by Next Jump and Legal Advice Provided to the Company and its Agents.

In 2018 and 2019, White & Case provided legal advice to Next Jump on ███████████ ████████████████████████████████████████████████████████ ███████████████████████ White & Case, in turn, engaged Attorney Weisberg to ██████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████ ███████████ █████████████████████ █████████████████████████████████████████████████ ████████████████████████████████████████████████ ███████████ █ █████████████████████████████████████ ██████████████████████████████████

In 2018, Attorney Weisberg provided legal advice on ██████████ ████████████████ ████████████████████████████████████████

Later in 2018, Attorney Weisberg began providing legal advice to Next Jump regarding ██████████████████████████████████ ████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ███████████████████████████ ██████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

███████████████  ██████████████████████████████████

███████████████████████████████████  ██████████  ███████████

██████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████  ████████████  ██████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████

Also in late 2018, Attorney Weisberg began providing legal advice to Next Jump regarding

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

Attorney Weisberg continued to provide legal advice to Next Jump regarding ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████

**B.    Movants' Discovery that the Government Had Invaded Next Jump's Privileged Relationship with Attorney Weisberg, and Next Jump's Assertion of Privilege Over the Material.**

On July 10, 2025, the government made its thirteenth production of documents to Defendants Kim and Messenger. Ex. 13. Defendants Kim and Messenger were alarmed to see that this production contained documents that the government had obtained from Weisberg PLLC, Attorney Weisberg's law practice. *See id.* at 15 (production log). The Weisberg documents consisted of ████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████

7

The only unredacted email in the chain produced by the government—a June 23, 2025 email from Attorney Weisberg to the prosecution team—is █████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
██████████████████████████████

On July 16, 2025, counsel for Defendant Kim █████████████████████

████████████████████████████████████████████████████████████

██████    ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████

On July 18, 2025, counsel for Defendant Kim █████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████

On July 22, 2025, the government sent an email ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████      ████████   ████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

After discovering that the government had invaded Next Jump's privileged relationship with Attorney Weisberg, Defendants Kim and Messenger reached out to Next Jump's counsel, Ms. Shim, who was out of the country. Immediately upon arrival back in the United States, Ms. Shim formally asserted privilege over the documents that the government obtained from Attorney Weisberg, as well as all other privileged information in the possession of its former and current lawyers:

> I have learned that the government recently obtained documents and information from Next Jump's former lawyer, Bill Weisberg, without consulting Next Jump. I am writing to advise you that Next Jump asserts all privilege rights it has over documents and information in the possession of Mr. Weisberg, as well as those in the possession of all its current and former lawyers. Next Jump has not and does not intend to waive privilege.
>
> In addition, I am writing to assert privilege over the two attached documents that the government recently provided to Charlie Kim and Meghan Messenger in their criminal case. Ex. 6 at 1.

In response, on July 22, 2025, ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████

**C.    The MOI, Draft MOI, and Agent Rough Notes for the Prosecution Team's July 2 Interview of Attorney Weisberg**

The MOI for the prosecution team's July 2, 2025 interview of Attorney Weisberg ████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████    ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████

                    ████████████████████████████████
                    ████████████████████████████████
                    ████████████████████████████████
                    ██████████████████████████████

██████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████

At no point prior to, or after, the interview did the government contact counsel for Next Jump, counsel for Defendant Kim, or counsel for Defendant Messenger to inquire about any privilege that may attach to the material and information discussed at the interview.  Nor did the government take the prophylactic step of using a filter team to engage with Attorney Weisberg or review the materials he provided.

### D.    The Government's Trial Subpoena Served on Next Jump

On July 11, 2025—approximately one week after the government interviewed Attorney Weisberg at length, and over two weeks after the government obtained privileged documents from him—the government served Next Jump with a trial subpoena.  Ex. 18.



### E.    The Government's Supplement to its Motion *in Limine* to Admit Certain Evidence and Argument.

On July 17, 2025, the government filed a "Supplement to its Motion in Limine to Admit Certain Evidence and Argument" (ECF No. 219).  In that filing, the government seeks a pre-trial order that records the government obtained from four entities are authentic, so that the government can attempt to admit the records at trial without fear of an authenticity objection—presumably so the government does not have to call a witness to sponsor the documents.  The documents at issue came from the U.S. Navy, the Law Offices of William Weisberg, KPMG, LLP, and Apple Inc.

## II.    LEGAL STANDARD

"The attorney-client privilege exists to protect confidential communications, to assure the client that any statements he makes in seeking legal advice will be kept strictly confidential between him and his attorney; in effect, to protect the attorney-client relationship."  *United States v. American Tel. & Tel. Co.,* 642 F.2d 1285, 1299 (D.C. Cir. 1980).  The attorney-client privilege

must protect "a client's disclosures to an attorney," and "the federal courts extend the privilege also to an attorney's . . . communications to a client, to ensure against inadvertent disclosure, either directly or by implication, of information which the client has previously confided to the attorney's trust." *Alexander v. F.B.I.*, 198 F.R.D. 306, 309 (D.D.C. 2000) (quoting *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 862 (D.C. Cir. 1980)). "A document is protected by the attorney-client privilege if confidential attorney-client communications are revealed, and those communications were made in order to obtain or deliver legal assistance." *Id.* at 309–10 (citations omitted).

The attorney work-product doctrine protects documents prepared "because of the prospect of litigation" , even when serving multiple purposes. *United States v. Deloitte LLP*, 610 F.3d 129, 136–38 (D.C. Cir. 2010).

Drafts of documents that are prepared with the assistance of counsel are protected under attorney-client privilege and work-product doctrine, even if the final version is released to a third party. *Alexander*, 198 F.R.D. at 312 (citing *Alexander v. F.B.I.,* 186 F.R.D. 154, 162 (D.D.C. 1999). In addition, legal training materials that are prepared by lawyers for employees who are likely to be involved in the type of work about which the legal advice is provided are also protected under the attorney-client privilege and work product doctrine. *See, e.g.*, *Nat'l Sec. Couns. v. C.I.A.*, 206 F. Supp. 3d 241, 285–87 (D.D.C. 2016) (holding that attorney-client privilege applies to "legal advice and examples provided by CIA [Office of General Counsel] attorneys to assist in the preparation of training materials for CIA employees responsible for processing FOIA requests"); *Valassis Commc'ns, Inc. v. News Corp.*, 2018 WL 4489285, at *3–4 (S.D.N.Y. Sept. 19, 2018) (holding that legal training materials are protected by the attorney-client privilege).

"[T]he attorney-client privilege [] belongs to the client and is his alone to waive." *SEC v. Nat'l Student Mktg. Corp.*, 18 Fed. R. Serv. 2d 1302 (D.D.C. 1974); *Kyriakopoulos v. Maigetter*, 121 F.4th 1017, 1023 (3d Cir. 2024) ("The attorney-client privilege belongs to the client, who alone may waive it." (citation omitted)); *United States v. Farrell*, 921 F.3d 116, 135–36 (4th Cir. 2019) ("[I]n the attorney[-]client privilege context, the privilege belong[s] to the client, not the lawyer." (citation omitted)); *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010) ("The privilege belongs to the client, although an attorney may assert the privilege on the client's behalf."). As the Supreme Court has explained, "the power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors." *Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343, 348 (1985); *see also Alexander*, 198 F.R.D. at 315.

Courts have consistently held that the government must be sanctioned for violations of the attorney-client privilege. In "the most egregious cases," courts will dismiss indictments. *United States v. Haynes*, 216 F.3d 789, 796 (9th Cir. 2000). In other cases, the remedy is suppression of any tainted evidence, or disqualification of the tainted agents and prosecutors. *Id.* When courts suppress the tainted evidence, they also suppress any other evidence that was obtained derivatively as a result of the government's review of the privilege information. *See United States v. Landji*, 2021 WL 5402288, at *28 (S.D.N.Y. Nov. 18, 2021) (applying *Kastigar v. United States*, 406 U.S. 441 (1972) protections to violations of the attorney-client privilege: "The same protection against use and derivative use applies where the Government has obtained information protected by the attorney-client privilege.") (citing *United States v. Schwimmer*, 924 F.2d 443, 446 (2d Cir. 1991)); *United States v. Hoey*, 2016 WL 270871, at *4 (S.D.N.Y. Jan. 21, 2016) ("[T]he principles applicable to the fruits of immunized testimony under *Kastigar v. United States*, 406 U.S. 441

(1972), apply to the fruits of breaches of a defendant's attorney-client privilege."); *see also Hicks v. Bush*, 452 F. Supp. 2d 88, 103–04 (D.D.C. 2006) ("If privileged materials are inadvertently or improperly disclosed, *Kastigar*-like hearings . . . may eventually be required.").

## III.   ARGUMENT

### A.   The Documents and Information that the Government Obtained from Attorney Weisberg Are Privileged.

Both documents that the government obtained from Attorney Weisberg—██████████ ████████████████████████████████████████████████████████████████— fall squarely within this Circuit's robust protection for attorney-client privileged and work-product privileged documents.

As discussed above, "the privilege applies to a confidential communication between attorney and client if that communication was made for the purpose of obtaining or providing legal advice to the client." *In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 757 (D.C. Cir. 2014). Each element is easily met here.

*First*, Attorney Weisberg was Next Jump's attorney who ████████████████████ ████████████████████████████████████████ Attorney Weisberg communicated with Next Jump primarily through Next Jump's outside general counsel, who also worked with Attorney Weisberg to prepare and ██████████████████████ *Id.* ¶¶ 6–9. The government, and seemingly Attorney Weisberg, apparently dispute that he was ever engaged to provide legal services for Next Jump, *see* Ex. 17 at 1, but the record clearly establishes that he was. Next Jump engaged Attorney Weisberg though White & Case, and his ████████████████████████████████████████████ ██ ████████████████████████████████████████████████ ████████████████████ ███████████ ██████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████        Those two facts are determinative that an attorney-client relationship existed: "All that is required [to create an attorney-client relationship] is that the parties, explicitly or by their conduct, manifest an intention to create the attorney[ ]client relationship." *In re Ryan*, 670 A.2d 375, 379 (D.C. 1996).

*Second*, the communications to and from Attorney Weisberg in the documents obtained by the government were made for the exclusive purpose of securing legal advice for Next Jump. Attorney Weisberg, together with Next Jump's outside general counsel, ███████████████

███████████████████████████████████████████████████

█████████████████████████████  ██████████████  █████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████

The documents themselves reveal extensive legal analysis, interpretation, and client-specific guidance on ███████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████ This type of tailored, detailed legal advice constitutes classic attorney-client privileged material.  *See Nat'l Sec. Couns.*, 206 F. Supp. 3d at 285–87 (tailored legal training materials are privileged); *Valassis*, 2018 WL 4489285, at *3–4 (same).

████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████  ██████████  ██████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████  ██████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████  ██████████████████████████████████████████████

████████████████████████████████████████████████

*Third*, the communications were ███████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████

The documents are also protected under the attorney work-product doctrine, which applies to documents prepared "because of" litigation prospects, even when serving multiple purposes. *Deloitte LLP*, 610 F.3d at 134-35. ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████

The fact that Attorney Weisberg allegedly, and incorrectly, ███████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████    ████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████    ████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████

In addition, Attorney Weisberg's purported statement that ███████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████ ███████████████████████████████████████

███████████████████████████████████████ █████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████

Finally, it is black-letter law that the determination of whether an attorney-client relationship existed does *not* depend solely on the opinion of the attorney. *See Matter of Lieber*, 442 A.2d 153, 156 (D.C. 1982) (rejecting argument from attorney that no attorney-client relationship existed). Rather, courts look at the totality of the circumstances, including the "*client's* perception of an attorney as his counsel." *Id.* (emphasis added). Thus, the ████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████

It is also black-letter law that the client (Next Jump) owns the privilege, and therefore Next Jump's management are the only ones who can assert or waive it, not the company's lawyer. *See, e.g.*, *Alexander*, 198 F.R.D. at 315 ("the power to waive the corporate attorney-client privilege rests with the corporation's management"). The government's reliance on ██████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████    ██

████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

The government's departure here from ordinary practice when confronted with even *possibly* privileged information is shocking, and its "better to ask forgiveness than permission" approach should not be countenanced, much less rewarded.[5]

---

[5] The governments' arguments in its July 22, 2025 letter to Next Jump that the Weisberg documents are not privileged fail for many of the same reasons discussed above. *See* Ex. 17. First, the government is wrong in arguing that Attorney Weisberg's opinion that he did not act as Next Jump's lawyer is dispositive. *See id.* at 1. The totality of the circumstance, particularly Next Jump's perception, governs whether an attorney-client relationship existed, and the facts of this case show that it did. *See supra* at 17-19; *Lieber*, 442 A.2d at 156. The government is likewise incorrect that the documents are not privileged because they are simply business materials. *See* Ex. 17 at 1-2. As discussed, the Weisberg documents ███████████████████████████ *See supra* at 15-17; *Nat'l Sec. Couns.*, 206 F. Supp. 3d at 285-87. The government is wrong again in arguing that the *Weisberg* documents were not confidential. *See* Ex. 17 at 2. Next Jump ████████████████████████████████████████████████████████

**B.    The Court Should Deny the Government's Motion *In Limine* Regarding the Weisberg Documents, the Apple Documents, and the KPMG Documents.**

The Court should deny the government's request for an order finding that the documents provided, ██████████████, by Attorney Weisberg are authentic so that the government may use them at trial.  (*See* ECF 219).  As discussed above, the documents obtained from Attorney Weisberg are privileged.  As such, they must be suppressed and cannot be used at trial.  *See Haynes*, 216 F.3d at 796.[6]

In addition, the Court should also deny the portion of the government's motion *in limine* regarding material it obtained from Apple.  *See* ECF No. 219.  The government obtained the Apple material on June 10, 2025, ██████████████████████  *Compare* ECF No. 219-1 at 8 ("produced June 10, 2025"), *with* ███████████████████  And the significance of the documents only became clear after the pretrial conference on July 25, 2025, when the Court ordered the government to produce an application for a 2703(d) order on July 25, 2025.  That application showed that the government's intent in obtaining the Apple documents was to argue that ████████████████████████████████████████████ ████████████████████████████  At this late juncture, Movants have limited time to examine whether these records are, in fact, accurate and to challenge them on that basis.  *See* Fed. R. Evid. 902(11) ("[T]he proponent must give an adverse party

---

██████████████████████  *See supra* at 6.  And finally, the government is wrong in contending that Next Jump waived any privilege by sharing the documents with Attorney Weisberg, who then shared them with the government.  *See* Ex. 17 at 2.  Attorney Weisberg acted as Next Jump's attorney, so sharing documents with him could not possibly waive privilege, and ████████████████████████████  *See supra* at 19; *Alexander*, 198 F.R.D. at 315.

[6]    Movants do not oppose the portion of the government's motion seeking a ruling that documents the government obtained from the U.S. Navy are authentic.  Movants reserve all other objections to these documents' admissibility.

reasonable written notice of the intent to offer the record — and must make the record and certification available for inspection — so that the party has a fair opportunity to challenge them.").

For similar reasons, the Court should deny the government's request for an order finding that the KPMG documents are authentic. *See* ECF No. 219. The government has failed to produce several of the documents it obtained from KPMG—specifically, the Excel files that KPMG provided to the government in native format. The government has only produced to Movants slipsheets for those files that read: ███████████████████ Without the actual documents, neither Movants nor the Court can determine whether they are authentic

The government's untimely notice and motion, and its attempt to inject new theories of ██████████████, should be rejected. *See* Ex. 23 PTC Tr. at 106:17-19 (Court instructing the parties to "make sure that you are providing me the briefing and the arguments you think I need beforehand and not pulling last-minute surprises on me").

### C.    The Court Should Quash the Government's Trial Subpoena Served on Next Jump.

The Court should quash the trial subpoena that the government served on Next Jump on July 11, 2025, which seeks ███████████████████████ ██████████████████████████████

As discussed above, much of this information is privileged and therefore not subject to disclosure. *See supra* at 14-19. Thus, the subpoena should be quashed because it fails the admissibility prong of the *Nixon* test. *See United States v. Nixon*, 418 U.S. 683, 699-700, 714 (1974) (requiring that subpoenas seek documents that are "evidentiary and relevant," "admissible in evidence," and not constitute a "fishing expedition").

In addition, the subpoena should be quashed because it seeks records whose existence the government only learned about through its invasion of Next Jump's attorney-client privileged

relationship with Attorney Weisberg.  For the first time in a multiyear investigation and prosecution, the government seeks documents ████████████████████████████████ ████████████████████████  ████████████  It did so one week after interviewing Attorney Weisberg, where the government inquired into the legal advice he provided ██████████ ██████████████████████████  The subpoena is thus fruit of the poisonous tree, since it only issued through the government's derivative use of the privileged documents and information provided by Attorney Weisberg.  As such, the subpoenaed documents must be suppressed and the subpoena quashed.  *See Landji*, 2021 WL 5402288, at *28; *Hoey*, 2016 WL 270871, at *4; *Hicks*, 452 F. Supp. 2d at 103-04.

### D.    The Court Should Exclude All Evidence and Argument Related to the Weisberg Documents and Sanction the Government.

The Court should hold a hearing to determine the extent of the government's violations.  In addition to excluding any evidence or argument derived from the privileged materials that the government obtained for all purposes, the Court should appropriately sanction the government, both to ensure that the government cannot take advantage of its improper conduct in this case and to deter similar tactics in future cases.

Courts recognize that privilege violations require broad remedial measures.  These include excluding all evidence derived from privileged communications, prohibiting the use of privileged materials for impeachment or cross-examination, and issuing comprehensive exclusionary orders to prevent any benefit from privilege breaches.  *See United States v. SDI Future Health, Inc.*, 464 F. Supp. 2d 1027, 1047 (D. Nev. 2006) ("The general remedy for violation of the attorney-client privilege is to suppress introduction of the privileged information at trial."); *Landji*, 2021 WL 5402288, at *28; *Hoey*, 2016 WL 270871, at *4; *Hicks*, 452 F. Supp. 2d at 103-04.

Further, the government's knowing acquisition and use of privileged materials without notice to the privilege holder constitutes prosecutorial misconduct warranting sanctions. Courts possess inherent authority under *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) to impose sanctions for privilege violations, including dismissal, suppression, monetary sanctions, and contempt citations.

The government knew that Attorney Weisberg is a ███████████████ lawyer. *See* Ex. 3. The government knew that Attorney Weisberg was ████████████████████ ████████████ The government knew that Attorney Weisberg communicated primarily with Next Jump's outside general counsel. *See id.* The government knew that Attorney Weisberg ███████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ████████████████████████████████████  ███████████ And yet, the government proceeded to interview Attorney Weisberg at length about these documents and other legal advice he provided to Next Jump. *See supra* at 2.

At no time did the government attempt to contact counsel for Movants or Next Jump to determine whether they intended to assert privilege over this material. This conduct demonstrates a knowing disregard for fundamental privilege protections.

An evidentiary hearing is therefore necessary to determine the full scope and nature of the privilege violation. The Court should hear from ███████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ████████████ The hearing should address whether the prosecution team intentionally invaded

Next Jump's privilege, why the government did not engage with Next Jump's counsel in the first instance, the degree to which privileged materials have influenced the investigation, and what additional remedial measures are necessary.  The evidentiary hearing should also examine ██

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████    ████████████    ████████████████████

██████████████████████████████████████████████████████

████████████████████████    After such a hearing, the Court should impose the appropriate sanction.

<strong><u>CONCLUSION</u></strong>

As a result of the government's acquisition and intended use of privileged attorney-client communications, the Court should deny the government's Motion *in Limine*, quash the government's July 11, 2025 trial subpoena served on Next Jump, exclude from evidence all privileged materials and any evidence derived therefrom, prohibit the government from using the privileged materials for impeachment or cross-examination, order an evidentiary hearing to determine the full scope of the privilege violation, and impose appropriate remedial sanctions on the government.

Respectfully submitted,

DATED July 30, 2025

  */s/ William A. Burck*
William A. Burck

| | |
|---|---|
| Reed Brodsky | William A. Burck (DC Bar No. 979677) |
| GIBSON, DUNN & CRUTCHER LLP | Avi Perry (DC Bar No. 90023480) |
| 200 Park Avenue | John (Fritz) Scanlon (DC Bar No. 983169) |
| New York, New York 10166 | Rachel G. Frank (DC Bar No. 1659649) |
| Work: (212) 351-5334 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| Mobile: (917) 574-8200 | 1300 I Street NW, Suite 900 |
| rbrodsky@gibsondunn.com | Washington, D.C.  20005 |
| | Tel: (202) 538-8000 |
| *Counsel for Defendant Meghan* | Fax: (202) 538-8100 |
| *Messenger* | williamburck@quinnemanuel.com |
| | aviperry@quinnemanuel.com |
| | fritzscanlon@quinnemanuel.com |
| Haejin Shim (*pro hac vice* pending) | rachelfrank@quinnemanuel.com |
| SHIM & ASSOCIATES, P.C. | |
| 1270 Broadway #305 | Christopher Clore (*pro hac vice*) |
| New York, NY 10001 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| Work: (201) 482-0749 | 295 5th Avenue |
| hshim@shimassociates.com | New York, NY 10016 |
| | Tel: (212) 849-7000 |
| *Counsel for Third-Party Intervenor* | Fax: (212) 849-8100 |
| *Next Jump, Inc.* | christopherclore@quinnemanuel.com |
| | |
| | *Counsel for Defendant Yongchul "Charlie" Kim* |

26

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date, a copy of the foregoing motion was electronically filed with the Clerk of the U.S. District Court for the District of Columbia via CM/ECF and served to all counsel of record via electronic mail.

*/s/ William A. Burck*
William A. Burck (DC Bar No. 979677)

Dated: July 30, 2025