UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>YONGCHUL "CHARLIE" KIM, and MEGHAN MESSENGER,<br><br>Defendants. | Case No. 1:24-cr-00265-TNM<br><br>REDACTED |

**YONGCHUL "CHARLIE" KIM'S, MEGHAN MESSENGER'S, AND NEXT JUMP, INC.'S JOINT REPLY IN SUPPORT OF THEIR CROSS-MOTION TO QUASH TRIAL SUBPOENA, EXCLUDE PRIVILEGED EVIDENCE, AND IMPOSE SANCTIONS**

**PRELIMINARY STATEMENT**

The government's response confirms the very misconduct Movants alleged: unilateral and concealed invasion of Next Jump's privileged attorney-client relationship and planned use of confidential legal advice against Defendants at trial. The government's sole defense for its invasion of Next Jump's privilege is a contested statement from Attorney Weisberg that no attorney-client relationship existed, despite clear precedent—which the government fails to mention—that his perspective is not controlling. *See, e.g.*, *Matter of Lieber*, 442 A.2d 153, 156 (D.C. 1982); *see also infra* at 6–7. The government's response reveals its true intent—to use the privileged training materials as substantive evidence that Defendants had "knowledge that their *quid pro quo* was corrupt." ECF No. 263 at 1. The government offers no defense for some of its most troubling conduct: altering the draft interview memorandum to insert language that appears nowhere in the agent notes or in the original draft; and continuing to use the privileged material after being alerted to its status by the Movants. Instead, the government ignores these facts and the Court's role to determine the propriety of its conduct, and the government advances legal arguments that ignore both established D.C. Circuit precedent and the documentary evidence demonstrating that Attorney Weisberg provided tailored, privileged legal advice on a variety of topics, not just generic compliance training.

The documentary record establishes beyond dispute that Next Jump engaged Attorney Weisberg through White & Case to provide specialized legal advice on government contracting. This relationship is evidenced by ███████████████████████ █████████████████████████████████████████████████████ ███████████████████████████████████████████████ But the government took no steps to learn any of this before interviewing Attorney Weisberg specifically about █████████ ███████. Instead, the government purportedly relied entirely on a disputed statement from

1

Attorney Weisberg himself, despite black-letter law that the existence of an attorney-client relationship is not dependent on the view of the attorney alone.  Rather, it takes into account "the circumstances of each case," most notably including the *client's* understanding of the relationship. *Lieber*, 442 A.2d at 156.  It is, at a minimum, highly suspicious that Attorney Weisberg's statement ▌ It is equally dubious that Attorney Weisberg first volunteered this information ▌ ECF No. 263 at 4.  Further, Movants have since learned through discovery that even after they asserted privilege over the materials, the government has continued to review the materials, even showing these materials to potential trial witnesses.  Taken together, the government's conduct, and its defense of that conduct, deserves careful scrutiny from the Court.

The government had no legal or factual basis to invade Next Jump's privilege.[1]  The government's characterization of Movants' motion as a "desperate attempt to exclude" evidence, ECF No. 263 at 1, rings hollow when the government itself seeks to benefit from invading Next Jump's privilege and using the tainted information it found against Next Jump's principals in the upcoming criminal trial.  The government should not be rewarded for such conduct, and the Court should probe the government's assertions about the ▌.  For these

---

[1] ▌ ECF No. 263 at 9–10, then the government should seek appropriate relief. The government's argument that the Court should ignore its breach of the privilege, given that this breach allowed it to learn that Next Jump had purportedly not complied with a subpoena, ECF No. 263 at 3, 27, would wholly vitiate the attorney-client privilege.

reasons, and those set forth below, Movants respectfully request that the Court grant their motion in full.[2]

## ARGUMENT

### I. Attorney Weisberg Provided Legal Representation To Next Jump

The government cannot escape the overwhelming evidence establishing Attorney Weisberg's legal representation of Next Jump. Under D.C. law, courts must examine the totality of the circumstances, including "a client's perception of an attorney as his counsel." *Matter of Lieber*, 442 A.2d at 156. The determination thus does not depend solely on the opinion of the attorney. *Id*. Yet the government's entire argument rests on Attorney Weisberg's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Five categories of evidence establish this relationship beyond reasonable dispute. *First*, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ECF No. 249, Ex. 7 at 1. White & Case then engaged Attorney Weisberg to provide ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ legal advice and legal services to Next Jump." Shim Decl. ¶ 4. This formal engagement constitutes precisely the type of arrangement that courts recognize as establishing attorney-client relationships. For example, in *Acad. of Allergy & Asthma in Primary Care v. Louisiana Health Serv. & Indem. Co.*, 384 F. Supp. 3d 644, 654 (E.D. La. 2018),

---

[2] Movants have submitted the portions of this filing that summarize and quote from privileged material *in camera*, *ex parte*, and under seal, consistent with *United States v. Zolin*, 491 U.S. 554 (1989).

The government redacted significant portions of its opposition and claims Rule 6(e) supports *ex parte* treatment. These redactions are consistent with the government's liberal misuse of redactions throughout this case, *see, e.g.*, ECF No. 208, and mistaken belief that it is appropriate for it to obscure information from Movants that is necessary for them to adequately defend themselves. The Court should order the government to serve Movants with an unredacted version of its opposition and allow Movants to respond to that information, if need be.

3

the court found it "inescapably clear that an attorney-client relationship formed because [the law firm] formally manifested its consent in an engagement letter it sent to [the putative client]" that contains the same key terms as the engagement letter here. The court observed that "[a]ny reasonable person, and one would hope any reasonable attorney, would agree that this letter marks the formation of an attorney-client relationship." *Id.*

*Second*, ▮▮▮▮ Next Jump ▮▮▮▮ ECF No. 249, Ex. 8 at 3. ▮▮▮▮ ECF No. 249, Ex. 12 at 4, ▮▮▮▮ ECF No. 249, Ex. 11 at 4. If Attorney Weisberg was ▮▮▮▮ Courts consistently hold that billing for legal services evidences an attorney-client relationship. *See, e.g.*, *Acad. of Allergy & Asthma in Primary Care*, 384 F. Supp. 3d at 654 (citing bill for "legal services rendered" as further evidence of attorney-client relationship).

*Third*, Attorney Weisberg had an established attorney-client relationship with Next Jump dating back to July 2018, ▮▮▮▮ *See* ECF No. 249, Ex. 10; Ex. A (▮▮▮▮). During that time, Attorney Weisberg engaged with Next Jump through White & Case and ▮▮▮▮

4

████████████████████████████████████████

████████████████████████████████████████

████ ECF 249, Ex. 10.; *see also* Ex. B ("Review variety of documents; prepare for and TC re: ████████████████████████ issues. ████████

████████; Ex. C (Next Jump's outside general counsel ████████

████████████████████████████████████████

████████████). This advice occurred in the context of Next Jump's pursuit of a Navy contract, with extensive documentation of Attorney Weisberg's ████████

████████████████████████████ all demonstrating an established attorney-client relationship that continued well beyond any single training session.

*Fourth*, the client's contemporaneous characterization underscores the legal nature of the relationship. Next Jump's outside general counsel ████████

████████████████████████████████████████

████████████████████████████" ECF No. 249, Ex. 9 at 1. This client perception cannot be cast aside under D.C. law. *Lieber*, 442 A.2d at 156.

*Fifth*, the confidential nature of the work product demonstrates privileged treatment. The ████████████████████████████████████████

████████████████████████████████████ ECF No. 249, Ex. 1. These are not the hallmarks of generic compliance guidance, but rather the unmistakable indicia of privileged attorney work product. Similarly, ████████

████████████████████████████████████████

████████████████████████████████████████

████—distinct from the counsel provided by Attorney Weisberg—████████ ECF No.

5

249, Ex. 2 at 8, 15, 16 (emphasis added).  This is not off-the-shelf compliance guidance but ▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇³

ECF No. 263 at 6.  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇  Shim Decl. ¶ 8; ECF No. 249, Ex. 2.  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

The government's contrary evidence is unpersuasive.  The government relies primarily on Attorney Weisberg's purported statement that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *see infra* at 8, but courts do not permit attorneys to unilaterally disclaim privilege relationships that clients reasonably believed existed.  "[T]he attorney-client privilege [] belongs to the client and is his alone to waive." *SEC v. Nat'l Student Mktg. Corp.*, 18 Fed. R. Serv. 2d 1302 (D.D.C. 1974); *Texas v. United States*, 279 F.R.D. 24, 33 (D.D.C. 2012) ("[T]he privilege belongs to the client, not the lawyer.") (vacated in part on other grounds); *Daniels v. Hadley Mem'l Hosp.*, 68 F.R.D. 583, 588 (D.D.C. 1975) ("[T]he attorney-client privilege … belongs to the client."); *Nesse v. Pittman*, 202 F.R.D. 344, 356 (D.D.C. 2001); *Silynx Commc'ns, Inc. v. Young & Thompson*, No. MC 08-0694 (JR), 2008 WL 11429392, at *2 (D.D.C. Dec. 11, 2008); *Klayman v. Jud. Watch, Inc.*, 247 F.R.D. 10, 17–18 (D.D.C. 2007); 1 McCormick On Evid. § 92 (9th ed.) (observing it is "generally agreed that the privilege is the client's and the client's alone, and Uniform Rule 502(b) vests the privilege in the client").  Accordingly, "[w]hen an attorney is subpoenaed or summoned to testify about confidential communications protected by the attorney-client privilege, he may not do so without

---

³ The government's plan to admit the slide deck as Attorney Weisberg's "business record" is particularly problematic.  ECF No. 263 at 7.  This was not a routine business document but rather tailored legal guidance specific to Next Jump's government contracting needs.  Not all records an attorney possesses relating to client representations are "business records" of the attorney's practice; privileged attorney work product remains privileged regardless of where it is stored.  The government's attempt to characterize privileged attorney work product as a standard business record underscores the impropriety of their approach.

the informed consent of his client." *Nixon v. Sampson*, 389 F. Supp. 107, 153 (D.D.C. 1975). It is undisputed that Attorney Weisberg ▮▮▮▮▮▮▮▮▮▮▮▮▮▮. His purported ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ thus carries little, if any weight in assessing "the circumstances of each case." *Matter of Lieber*, 442 A.2d at 156. The government utterly fails to explain what legitimate basis it had to disregard the multiple pieces of evidence of the privileged relationship and rely on a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. If the government had any interest in proceeding cautiously, it could at a minimum have obtained the relevant documents from Attorney Weisberg (thus protecting against any risk—however slight—of destruction) and then engaged with Next Jump's counsel before reviewing the documents, or it could have enlisted a filter team to review the documents. Its failure to take any reasonable steps to protect against invasion of Next Jump's privilege is telling.[4]

## II. These Materials Constitute Tailored Legal Advice, Not Generic Compliance Guidance

The government further errs by fundamentally mischaracterizing both the law and the facts by treating this case as involving generic compliance materials.[5] The government repeatedly characterizes Attorney Weisberg's work as mere "compliance materials," ECF No. 263 at 14–15,

---

[4] The government's assertion that the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ establish[es] Defendants' knowledge that their *quid pro quo* was corrupt," Opp. 1, is not even true. The Next Jump employee who was responsible for tracking attendance at the April 5, 2019, training has checked all relevant records and could find no evidence that Mr. Kim or Ms. Messenger attended it or that they returned any certification that they watched it. (*See* Ex. D, Decl. of Darrell Platz ¶ 5.)

[5] Contrary to the government's assertion, ECF No. 263 at 14, Movants did address legal training materials and the distinction between privileged legal advice and generic compliance materials in their opening brief. ECF No. 249 at 13 (citing *Nat'l Sec. Couns. v. C.I.A.*, 206 F. Supp. 3d 241, 285–87 (D.D.C. 2016); *Valassis Commc'ns, Inc. v. News Corp.*, 2018 WL 4489285, at *3–4 (S.D.N.Y. Sept. 19, 2018)). The fact that the government attempts to distinguish Movants' cases at length, ECF No. 263 at 21–22, indicates it is well-aware Movants made no "glaring omission," ECF No. 263 at 14. Moreover, Movants attached to their motion the government's ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ECF No. 249, Ex. 17.



7

but D.C. Circuit precedent establishes broad protection for legal advice provided in regulatory contexts, and the materials here reflect specific legal guidance tailored to Next Jump's contracting circumstances.

In *In re Kellogg Brown & Root, Inc.*, then-Judge Kavanaugh wrote for a D.C. Circuit panel holding that providing advice on federal regulations constitutes legal advice entitled to full privilege protection. 756 F.3d 754, 760 (D.C. Cir. 2014). The court explicitly rejected arguments that regulatory compliance advice is merely business guidance, establishing that the privilege applies when "obtaining or providing legal advice was one of the significant purposes" of the communication. *Id.* This "significant purpose" test supports privilege protection for dual-purpose communications.[6]

Recent authority strongly reinforces this protection. In *Matter of Appellate Advocates v. New York State Department of Corrections & Community Supervision*, New York's highest court held that "training materials are privileged when the materials convey confidential legal advice" and protected documents that "summarize recent court decisions and advise on how to apply statutes, regulations, and case law." 40 N.Y.3d 547, 553–54 (2023); *see also id.* (collecting federal case law supporting the same proposition). The court rejected arguments that privilege applies

---

[6] The government grossly misstates the legal standard established in *Kellogg Brown & Root, Inc.*, when it claims "seeking or obtaining legal advice must be *the* 'primary purpose' of the communication." ECF No. 263 at 12 (emphasis added). Judge Kavanaugh went to great lengths to reject this contention, explaining that "[i]t is [] not correct for a court to presume that a communication can have only one primary purpose." *Kellogg Brown & Root, Inc.*, 756 F.3d at 759–60. Rather, "[s]ensibly and properly applied, the test boils down to whether obtaining or providing legal advice was one of the significant purposes of the attorney-client communication." *Id.* at 760. Indeed, in a later opinion, Judge Kavanaugh reaffirmed precisely this point, that the "primary purpose" standard looks to whether "obtaining or providing legal advice was *one of* the significant purposes of the communications at issue." *Fed. Trade Comm'n v. Boehringer Ingelheim Pharms., Inc.*, 892 F.3d 1264, 1268 (D.C. Cir. 2018) (emphasis in original) (Kavanaugh, J.).

8

only to litigation-driven communications, explaining that "[c]ounsel often provides legal advice to assist the client in deciding how best to order their affairs in compliance with legal mandates." *Id.* at 553.

The government's reliance on *Hartford Life*, *Avandia*, and *Diisocyanates* is misplaced because those cases involved generic materials "designed to be general and informative." ECF No. 263 at 15. For the same reason, the government's attempt to distinguish *Nat'l Sec. Couns v. Cent. Intel. Agency*, 206 F. Supp. 3d 241, and *Valassis Commc'ns, Inc. v. News Corp.*, 17-cv-7378 (PKC), 2018 WL 4489285 (S.D.N.Y. Sept. 19, 2018), is unavailing. The evidence here demonstrates specific ▮▮▮▮—Attorney Weisberg was ▮▮▮▮ ▮▮▮▮ not general compliance. Shim Decl. ¶¶ 7–8.[7] The materials reflect ▮▮▮▮

▮▮▮▮

▮▮▮▮. ECF No. 249, Ex. 2. ▮▮▮▮

▮▮▮▮ Shim Decl. ¶ 7; ECF No. 249, Ex. 1. This ▮▮▮▮

▮▮▮▮

falls squarely within the D.C. Circuit's protective precedents.

---

[7] The government suggests that because ▮▮▮▮ ▮▮▮▮ ECF No. 263 at 18–19, but that witness ▮▮▮▮ ▮▮▮▮ ECF No. 263, Ex. D at 5–6. She also ▮▮▮▮ ▮▮▮▮ *id.*

Separately, it should not go unnoticed that the government ▮▮▮▮ ▮▮▮▮ ECF No. 249, Ex. 6, but the government nevertheless ▮▮▮▮ ▮▮▮▮ Ex. E.

9

### III. The Government's Procedural Violations And Intent To Engage In Substantive Misuse Of Privileged Materials Demands Further Review

The government's violation of the attorney-client privilege here is both procedural and substantive, warranting, at a minimum, an evidentiary hearing to provide necessary transparency into these critical issues. The government deliberately circumvented Next Jump's established counsel relationship, obtained privileged materials without proper authorization, made no attempt to contact Next Jump's established counsel, opted not to set up a filter team, and now seeks to use those unlawfully obtained materials as substantive evidence of criminal intent. *See* ECF No. 263 at 1 (describing materials as "establishing Defendants' knowledge that their *quid pro quo* was corrupt"); *id.* at 7. This deliberate indifference to Next Jump's rights transforms a procedural violation into an attack on the adversarial system itself. That the government still obscures information from Movants, *see supra* n.1, proves it will not engage with Movants transparently absent judicial intervention.

A hearing is necessary given the mysterious and unexplained circumstances surrounding ███████████████████████████████████████████████████████. As an initial matter, ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ *See* ECF No. 263 at 4. ███████████████████████████████████ ███████████████████████████ *Compare* ECF No. 249, Ex. 3 at 1, *with* ECF No. 249, Exs. 4, 5. ███████████████████████

10

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Indeed, the government has not provided a declaration from its agents, prosecutors, or Attorney Weisberg.

The government's footnote 5 attempts to dismiss this omission as mere "consolidation" of warnings that were "carefully repeated" throughout the agent-attended interview. ECF No. 263 at 5 n.5. This explanation is inadequate. The issue is not stylistic differences in recording information, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Moreover, general warnings about privilege are categorically different from Attorney Weisberg's ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

Nor can the government rely on *United States v. Rogers*, 751 F.2d 1074 (9th Cir. 1985). *Rogers* itself recognized that "[i]f, in fact, [the attorney] revealed a confidential communication in violation of his ethical obligations as an attorney, suppression of that evidence at trial is the appropriate remedy." *Rogers*, 751 F.2d at 1079. At this point, the Movants ask for no more than such a remedy, along with any derivative evidence obtained from the intrusion. Of course, a hearing is needed to determine whether the government's ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬, indicates a willful, calculated, and ongoing intrusion into the privilege, which requires further remedies consistent with law.

Even assuming that the Court determines that some of the materials obtained from Attorney Weisberg are non-privileged, the government was not entitled to make that determination unilaterally and in secret. The government cannot simply interview an attorney about potentially privileged matters, obtain documents that appear privileged on their face, and then argue post hoc

11

that no privilege violation occurred because the materials were ultimately non-privileged. The government knew or should have known that privilege issues were likely because it was aware that Attorney Weisberg was a government-contracting lawyer ███████████ ██████████ ECF No. 249, Ex. 3, that he ███████████

███████████████████████████████████████

███████████████████████████████████████ ECF No. 249, Ex. 1. ███████████

███████████ should have triggered use of a filter team and consultation with the privilege holder before proceeding. Courts routinely criticize the government for similar conduct. *See, e.g.*, *United States v. Alessa*, 561 F. Supp. 3d 1042, 1051 (D. Nev. 2021) ("This all leaves the Court with the conviction that the government should not have contacted Mr. Harrison in the way that it did, but without the affirmative evidence of bad faith it would require to impose the ultimate sanction— dismissal with prejudice."), *aff'd*, No. 22-10107, 2024 WL 4211519 (9th Cir. Sept. 17, 2024).

The government's failure to follow basic privilege protocols constitutes potential misconduct regardless of the ultimate privileged status of particular documents. The Justice Manual requires prosecutors to employ protective procedures when privilege issues arise, precisely because privilege determinations cannot be left to the prosecution team that seeks to use the materials. *See* U.S. Dep't of Just., Just. Manual § 9-13.420 (E) (2025) ("To protect the attorney-client privilege and to ensure that the investigation is not compromised by exposure to privileged material relating to the investigation or to defense strategy, a "filter team" should be designated, consisting of agents and lawyers not involved in the underlying investigation."); *see also Matter of Search of Info. Associated with Two Accts. Stored at Premises Controlled by Google LLC*, No. 22-GJ-28, 2022 WL 18673695, at *2–3 (D.D.C. Sept. 27, 2022) (describing use of court-ordered

12

filter team). The government's attempt to benefit from its own procedural violations by arguing that no harm occurred because the materials were non-privileged puts the cart before the horse and would gut fundamental privilege protections.

The government also attempts to argue against suppression and derivative use restrictions, ECF No. 263 at 26–27, but, at a minimum, an evidentiary hearing is essential to determine the scope of potential misconduct. Material factual disputes exist regarding the circumstances surrounding the ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Federal courts consistently require evidentiary hearings when prosecutorial conduct raises privilege concerns. *See, e.g.*, *United States v. Landji*, (S1) 18 Cr. 601 (PGG), 2021 WL 5402288, at *28 (S.D.N.Y. Nov. 18, 2021); *United States v. Warshak*, 631 F.3d 266, 293 (6th Cir. 2010) (affirming district court's determination that, "[a]lthough the government provides assurances in its filings that it enacted procedures to protect Defendants' privileged information, the Court finds gaps, both temporal and substantive, that can only be closed by sworn testimony of government agents that they did not use privileged information in obtaining evidence against Defendants." No. 06 Cr. 111, ECF No. 157 at 10); *United States v. Schwimmer*, 892 F.2d 237, 239 (2d Cir. 1989) ("We think that the record is insufficient to support the perfunctory findings of the district court with respect to the privilege issue, and we remand for a hearing and detailed findings on that issue, retaining jurisdiction of the appeal pending completion of the proceedings hereby ordered in the district

13

court."); *United States v. Hsia*, 81 F. Supp. 2d 7, 8 (D.D.C. 2000); *United States v. Neill*, 952 F. Supp. 834, 836 (D.D.C. 1997); *United States v. Prelogar*, No. 17-00248-01-CR-W-BP, 2019 WL 2572535, at *1 (W.D. Mo. Jan. 18, 2019), *report and recommendation adopted*, No. 17-00248-01-CR-W-BP, 2019 WL 990441 (W.D. Mo. Mar. 1, 2019), *aff'd*, 996 F.3d 526 (8th Cir. 2021).

Once these material factual disputes have been addressed, this Court can address the appropriate relief. It is premature for the government to attempt to evade the consequences of misconduct that has not yet been fully aired.

## CONCLUSION

Movants respectfully request that the Court: (1) deny the government's motion *in limine*; (2) quash the trial subpoena; (3) exclude all privileged evidence and derivative materials; (4) conduct an evidentiary hearing to determine the full scope of violations; and (5) impose appropriate sanctions to ensure the government gains no advantage from its conduct.

Respectfully submitted,

DATED August 12, 2025            /s/ William A. Burck
                                 William A. Burck

| | |
|---|---|
| Reed Brodsky<br>GIBSON, DUNN & CRUTCHER LLP<br>200 Park Avenue<br>New York, New York 10166<br>Work: (212) 351-5334<br>Mobile: (917) 574-8200<br>rbrodsky@gibsondunn.com<br><br>*Counsel for Defendant Meghan Messenger*<br><br><br>Haejin Shim (*pro hac vice* pending)<br>SHIM & ASSOCIATES, P.C.<br>1270 Broadway #305<br>New York, NY 10001<br>Work: (201) 482-0749<br>hshim@shimassociates.com<br><br>*Counsel for Third-Party Intervenor Next Jump, Inc.* | William A. Burck (DC Bar No. 979677)<br>Avi Perry (DC Bar No. 90023480)<br>John (Fritz) Scanlon (DC Bar No. 983169)<br>Rachel G. Frank (DC Bar No. 1659649)<br>Brett Raffish (DC Bar. No. 90023306)<br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>1300 I Street NW, Suite 900<br>Washington, D.C.  20005<br>Tel: (202) 538-8000<br>Fax: (202) 538-8100<br>williamburck@quinnemanuel.com<br>aviperry@quinnemanuel.com<br>fritzscanlon@quinnemanuel.com<br>rachelfrank@quinnemanuel.com<br>brettraffish@quinnemanuel.com<br><br>Christopher Clore (*pro hac vice*)<br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>295 5th Avenue<br>New York, NY 10016<br>Tel: (212) 849-7000<br>Fax: (212) 849-8100<br>christopherclore@quinnemanuel.com<br><br>*Counsel for Defendant Yongchul "Charlie" Kim* |

## CERTIFICATE OF SERVICE

    I hereby certify that on this date, a copy of the foregoing reply was electronically filed with the Clerk of the U.S. District Court for the District of Columbia via CM/ECF and served to all counsel of record via electronic mail.

                                        */s/ William A. Burck*
                                        William A. Burck (DC Bar No. 979677)

Dated: August 12, 2025