UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Criminal No. 24-CR-265 (2)(3) (TNM) |
| v. | : | |
| | : | |
| YONGCHUL "CHARLIE" KIM, and | : | |
| MEGHAN MESSENGER, | : | |
| | : | |
| Defendants. | : | |

**UNITED STATES' MOTION IN LIMINE FOR ADMISSION OF TESTIMONY ABOUT DEFENDANTS' LACK OF WHATSAPP MESSAGES ON THEIR PHONES AND FOR A JURY INSTRUCTION ADDRESSING <u>DEFENDANTS' HAVING DELETED WHATSAPP MESSAGES</u>**

Defendants Yongchul "Charlie" Kim testified on direct examination that he intentionally deleted WhatsApp messages with Co-Conspirator Burke from his phone, after being advised about the Navy's investigation into undue influence with the Next Jump contract. August 29, 2025, AM Transcript 80:24-86:11. Evidence about the lack of WhatsApp messages on Defendants' phones was previously excluded on the basis that the record did not have evidence of intentional deletion. Now it does.

There is an independent basis in the record showing that shortly after Co-Conspirator Burke apprised Defendants of the Navy investigation into undue influence on the Next Jump contract, Co-Conspirator Burke asked Defendants to delete WhatsApp communications. This evidence is highly probative of Defendants' state of mind and provides the basis for a jury instruction on the deletion. The government (1) moves *in limine* to admit Special Agent Gardner's testimony on the lack of WhatsApp messages on Defendants' phones, and (2) requests that the Court give a jury instruction to address Defendants' deletion of WhatsApp messages.

1

## FACTS

### A. Defendant Kim testified on direct that he deleted WhatsApp messages at his co-conspirator's request.

Defendant Kim testified on direct examination that he and Defendant Messenger learned in June 2022 that Co-Conspirator Burke was under investigation by the Navy for abuse of power in relation to the 2021-22 Next Jump contract.[1]  72:10-73:6 (explaining that Co-Conspirator Burke initiated a call in June 2022 and that Burke said he was under investigation for "an abuse of power for giving us that contract.").

According to Defendant Kim, Co-Conspirator Burke told them "It's a Navy administrative thing.  So we may hear from the Navy, is what he said, but most likely won't."  77:23-25.  Then Defendants discussed their next steps and decided to let Co-Conspirator Burke start his job at Next Jump as planned.  78:12-80:21.  Defendants called him back.  80:19-25.  Defendant Kim testified that during the call with between Defendants and Co-Conspirator Burke, Burke told them he had turned over his work phone and email, and was concerned that he had deleted information before the investigation began.  81:13-15 ("And he said that he's concerned because he deleted stuff before the investigation began, but it can seem like, you know, it was close enough to it.").  Co-Conspirator Burke then asked Defendant Kim to delete an "embarrassing" text about the two of them being soulmates.  82:2-11.  Defendant Kim deleted the text because he agreed it could be "embarrassing."  82:12-14.  But he took a screenshot of the text and retained it.

---

[1] In support of this testimony, Defendant Kim's counsel argued that his client was "entitled to put in the fact that, in his head, he was being told that Admiral Burke was under investigation, so that he can describe what his mental state was. . . . [Defendants] have no idea if it was actually happening.  They're just—they're reacting to what they're being told."  74:10-15.  The testimony was allowed in over the government's hearsay objection.

2

DX-227; 82:15-83:25.  His screenshot was entered into evidence over the government's objection.  *Id.*

Next, Defendant Kim testified that Co-Conspirator Burke asked him to delete other WhatsApp messages.  84:22-86:2.  Defendant Kim obliged.  *Id.*  Defendant Kim claimed that he didn't find this request suspicious, and that he only deleted one message asking "Is this you, Admiral Burke?"  86:3-11.

### B. The government's rebuttal case will include evidence that neither Defendant had any WhatsApp messages with Co-Conspirator Burke on their phones.

The government plans to re-call Special Agent Sebastian Gardner in rebuttal.  Among other things, if the Court grants this motion *in limine*, Special Agent Gardner will testify that in the course of the investigation Defendants' phones were seized and searched.  At the time they were seized, neither of Defendants' phones had any WhatsApp messages with Co-Conspirator Burke.

### APPLICABLE LAW

A defendant's attempt to suppress or alter evidence is properly the subject of a jury instruction.  *United States v. Carr*, 373 F.3d 1350, 1353 (D.C. Ct. Appeals 2004) (citing *United States v. Perkins*, 937 F.2d 1397, 1403 (9th Cir. 1991), and *United States v. McKinley*, 158 U.S. App. D.C. 280, 485 F.2d 1059, 1061 (D.C. Cir. 1973)).  The appropriate instruction allows the jury to consider the alteration as a circumstance that may be considered as an indication of the defendant's awareness of guilt.  *Carr*, 373 F.3d at 1353; *Lazo v. United States*, 930 A.2d 182, 187 (D.C. 2007).  In order to give the instruction, a court must conclude that the probative value of all the evidence relevant to the issue outweighs its prejudicial effect.  *Headspeth v. United States*, 86 A.3d 559 (D.C. 2014).

ARGUMENT

### A. Defendants opened the door to Special Agent Gardner's testimony about the absence of WhatsApp messages on Defendants' phones.

When Special Agent Gardner was asked about the WhatsApp messages on Defendants' phones on direct examination, Defendant Messenger's counsel objected that "[the government] told us expressly they were not going to bring in any evidence—they didn't have any actual evidence of intentional deletion. This entire line is to suggest to the jury that there was intentional deletion." August 22, 2025, AM 75:19-76:16. The government agreed to move on, and did not elicit the testimony. *Id.*

But Defendant Kim has now put evidence of intentional deletion into the record. Defendant Kim testified that on a call including both Defendants shortly after being apprised of the Navy investigation into undue influence relating to the Next Jump contract, Co-Conspirator Burke told Defendants to intentionally delete their WhatsApp messages. Defendant Kim admitted that he deleted WhatsApp messages from his phone.

This testimony opens the door to the government's evidence showing the absence of WhatsApp messages between Defendants and Co-Conspirator Burke on Defendants' phones. Defendants' deletion of messages with their alleged co-conspirator is highly probative of their state of mind—including, notably, their consciousness of guilt. *See, e.g.*, *United States v. Johnson*, 46 F.3d 1166, 1171 (D.C. Cir. 1998) (a defendant's post-crime untruthful statement to police was admissible under Federal Rules of Evidence 403 and 404 because it reflected an attempt by the defendant to avoid charges for his criminal conduct). It is not unduly prejudicial because the jury already has evidence—from Defendant Kim—that Defendants were advised by Co-Conspirator Burke to delete their WhatsApp communications with him. The government moves

for admission of evidence about the lack of WhatsApp messages on Defendants' phones in the rebuttal testimony of Special Agent Sebastian Gardner.

> **B. The record shows, and will further show, Defendants' concealment/destruction of evidence by deleting WhatsApp messages with Co-Conspirator Burke from their phones.**

As discussed above, there is already independent evidence on the record that Defendants discussed altering evidence with Co-Conspirator Burke after he advised them of a Navy investigation that could potentially involve them. As soon as Co-Conspirator Burke told Defendants about the Navy investigation, the subject of their personal communications became an issue. Defendant Kim testified that Co-Conspirator Burke told Defendants about the Navy investigation, they decided to bring him on to Next Jump anyway and then had a call with him during which he asked them to delete their messages with him.

The proposed jury instruction allows the jury to decide based on the record, for each Defendant, whether they believe that each Defendant deleted WhatsApp messages. Defendant Kim has already admitted that he did. The jury has not heard confirmation that Defendant Messenger deleted messages from her phone, but she was present in the same conversation when Burke asked that the messages be deleted.[2] Her business partner and best friend followed Burke's instructions. Even without Special Agent Gardner's anticipated testimony about the lack of WhatsApp messages on Defendant Messenger's phone, the record has sufficient evidence from which the jury could reasonably conclude, or not, that both recipients of Burke's instructions followed them and deleted communications between the three, and further infer from that that each

---

[2] If admitted, Special Agent Gardner's anticipated testimony would confirm that in January 2024, when both Defendants' phones were seized and searched, the phones had no WhatsApp messages.

5

Defendant's deletion reflects feelings of guilt stemming from actual guilt and/or knowledge that the deleted messages could constitute evidence of their offenses.

### C. The probative value of the WhatsApp deletion evidence outweighs its prejudicial effect

As discussed above, Defendants' deletion of messages with their alleged co-conspirator is highly probative of their state of mind. Burke told Defendants to delete the messages shortly after advising them that he was under investigation by the Navy and that they might be contacted. Defendants potentially obliging this request is probative of their mindset at the time. The evidence of deletion – and the reasonable inferences a jury could draw therefrom – are particularly relevant here, where Defendants Kim and Messenger have claimed that they saw nothing amiss in their dealings with Burke, and yet there is evidence that both deleted their private communications with him as directed, and that both did so notwithstanding the obvious inference from Burke's statement to them: that the messages should be deleted to avoid them falling into the hands of investigators. The absence of messages thereafter – and Defendant Kim's admission that he acted on Burke's sharing with him the concern about investigators finding messages by deleting them – are telling evidence of the Defendants' state of mind, the central issue the defense raises.

The proposed instruction does not do more than remind the jury what it already knows: it can consider all the evidence before it, including consider whether the Defendants deleted the messages to keep the messages from investigators and considering that there could be an innocent explanation—such as the one offered by Defendant in his testimony—for the deletion of the messages. And, as with all other evidence, the instruction reminds the jury that it may draw reasonable inferences from that evidence. Because the jury has evidence of the "innocent" explanation from Defendant Kim's testimony, there is no risk that the jury will be prejudiced by a

6

...

lack of information about the context of the deletion. *Headspeth*, 86 A.3d at 561 (concluding that a trial court inappropriately gave an instruction about a defendant's flight when the jury had not heard evidence about a potential innocent explanation for defendant running from the arresting officer); *Carr*, 373 F.3d at 1353 (explaining that a defendant's change in appearance before trial could have an innocent explanation). The probative value of the evidence outweighs the prejudicial effect, and the jury instruction helps the jury assign the appropriate meaning to evidence of Defendants' deletion of the WhatsApp communications.

## PROPOSED JURY INSTRUCTION[3]

The United States proposes the following jury instruction, following the pattern instruction in Red Book 2.303:

You have heard evidence that Defendants may have deleted WhatsApp messages from their phones. It is up to you to decide if each Defendant took these actions, and if each Defendant did so with the intent to destroy evidence. If you find that either Defendant or both Defendants did so, you may consider this evidence as tending to show his/her feelings of guilt, which you may,

---

[3] This jury instruction should be given against both Defendants as set forth above, particularly if the Court admits Special Agent Gardner's testimony about the lack of WhatsApp messages on Defendants' phones. However, should the Court conclude that the record shows insufficient evidence that Defendant Messenger may have deleted WhatsApp messages, the jury instruction may still be given against Defendant Kim as follows:

You have heard evidence that Defendant Kim may have deleted WhatsApp messages from his phone after a conversation with Admiral Burke. It is up to you to decide if Defendant Kim took these actions, and if Defendant Kim did so with the intent to destroy evidence. If you find that Defendant Kim did so, you may consider this evidence as tending to show his feelings of guilt, which you may, in turn, consider as to show actual guilt. On the other hand, you may also consider that he may have taken these actions for reasons fully consistent with innocence in this case. If you find that Defendant Kim destroyed evidence, you should give the evidence as much weight as in your judgment it deserves. *See* Criminal Jury Instructions for the District of Columbia, Evaluation of Other Evidence, Red Book 2.303.

in turn, consider as to show actual guilt. On the other hand, you may also consider that he/she may have taken these actions for reasons fully consistent with innocence in this case. If you find that Defendant Charlie Kim or Defendant Meghan Messenger destroyed evidence, you should give the evidence as much weight as in your judgment it deserves.

*See* Criminal Jury Instructions for the District of Columbia, Evaluation of Other Evidence, Red Book 2.303.

## CONCLUSION

For the foregoing reasons, the government (1) moves *in limine* to admit Special Agent Gardner's testimony on the lack of WhatsApp messages on Defendants' phones, and (2) requests that the Court give a jury instruction to address Defendants' deletion of WhatsApp messages.

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By       /s/
Rebecca G. Ross (NY Bar No. 5590666)
Brian P. Kelly (DC Bar No. 983689)
Joshua S. Rothstein (NY Bar. No. 4453759)
Sarah Santiago (GA Bar No. 724304)
Sarah Ranney (NY Bar No. 5050919)
Assistant United States Attorneys
601 D Street NW
Washington, DC 20530
Office: (202) 252-4490