**FINAL JURY INSTRUCTIONS**

**Instruction 2.100 – FURNISHING THE JURY WITH A COPY OF THE
INSTRUCTIONS**

I will provide you with a copy of my instructions.  During your deliberations, you may, if you want, refer to these instructions.  While you may refer to any particular portion of the instructions, you are to consider the instructions as a whole and you may not follow some and ignore others.  If you have any questions about the instructions, you should feel free to send me a note.  Please return your instructions to me when your verdict is rendered.

**Instruction 2.101 – FUNCTION OF THE COURT**

My function is to conduct this trial in an orderly, fair, and efficient manner; to rule on questions of law; and to instruct you on the law that applies in this case.  It is your duty to accept the law as I instruct you.  You should consider all the instructions as a whole.  You may not ignore or refuse to follow any of them.

**Instruction 2.102 – FUNCTION OF THE JURY**

Your function, as the jury, is to determine what the facts are in this case.  You are the sole judges of the facts.  While it is my responsibility to decide what is admitted as evidence during the trial, you alone decide what weight, if any, to give to that evidence.  You alone decide the credibility or believability of the witnesses.

You should determine the facts without prejudice, fear, sympathy, or favoritism. You should not be improperly influenced by anyone's race, ethnic origin, or gender. Decide the case solely from a fair consideration of the evidence.

You may not take anything I may have said or done as indicating how I think you should decide this case. If you believe that I have expressed or indicated any such opinion, you should ignore it. The verdict in this case is your sole and exclusive responsibility.


### Instruction 2.103 – JURY'S RECOLLECTION CONTROLS

If any reference by me or the attorneys to the evidence is different from your own memory of the evidence, it is your memory that should control during your deliberations.


### Instruction 2.104 EVIDENCE IN THE CASE

During your deliberations, you may consider only the evidence properly admitted in this trial. The evidence in this case consists of the sworn testimony of the witnesses, and the exhibits that were admitted into evidence.

When you consider the evidence, you are permitted to draw, from the facts that you find have been proven, such reasonable inferences as you feel are justified in the light of your experience. You should give any evidence such weight as in your judgment it is fairly entitled to receive.

**Instruction 2.105 – STATEMENTS OF COUNSEL**

The statements and arguments of the lawyers are not evidence.  They are only intended to assist you in understanding the evidence.  Similarly, the questions of the lawyers are not evidence.

**Instruction 2.106 – INDICTMENT NOT EVIDENCE**

The indictment is merely the formal way of accusing a person of a crime.  You must not consider the indictment as evidence of any kind—you may not consider it as any evidence of guilt or draw any inference of guilt from it.

**Instruction 2.107 – BURDEN OF PROOF—PRESUMPTION OF INNOCENCE**

Every defendant in a criminal case is presumed to be innocent.  This presumption of innocence remains with the defendant throughout the trial unless and until the government has proven he or she is guilty beyond a reasonable doubt.  This burden never shifts throughout the trial.   The law does not require Mr. Kim or Ms. Messenger to prove their innocence or to produce any evidence at all.   If you find that the government has proven beyond a reasonable doubt every element of an offense with which each Defendant is charged, it is your duty to find each of them guilty of that offense.  On the other hand, if you find the government has failed to prove any element of an offense beyond a reasonable doubt, it is your duty to find each Defendant not guilty of that offense.

**Instruction 2.108 – REASONABLE DOUBT**

The government has the burden of proving a defendant guilty beyond a reasonable doubt.  In civil cases, it is only necessary to prove that a fact is more likely true than not, or, in some cases, that its truth is highly probable.  In criminal cases such as this one, the government's proof must be more powerful than that.  It must be beyond a reasonable doubt.  Reasonable doubt, as the name implies, is a doubt based on reason—a doubt for which you have a reason based upon the evidence or lack of evidence in the case.  If, after careful, honest, and impartial consideration of all the evidence, you cannot say that you are firmly convinced of Mr. Kim or Ms. Messenger's guilt, then you have a reasonable doubt.

Reasonable doubt is the kind of doubt that would cause a reasonable person, after careful and thoughtful reflection, to hesitate to act in the graver or more important matters in life.  However, it is not an imaginary doubt, nor a doubt based on speculation or guesswork; it is a doubt based on reason.  The government is not required to prove guilt beyond all doubt, or to a mathematical or scientific certainty.  Its burden is to prove guilt beyond a reasonable doubt.

**Instruction 2.109 – DIRECT AND CIRCUMSTANTIAL EVIDENCE**

There are two types of evidence from which you may determine what the facts are in this case—direct evidence and circumstantial evidence.   When a witness, such as an eyewitness, asserts actual knowledge of a fact, that witness's testimony is direct evidence.   On the other hand, evidence of facts and circumstances from which reasonable inferences may be drawn is circumstantial evidence.

Let me give you an example.  Assume a person looked out a window and saw that snow was falling.  If he later testified in court about what he had seen, his testimony would be direct evidence that snow was falling at the time he saw it happen.   Assume, however, that he looked out a window and saw no snow on the ground, and then went to sleep and saw snow on the ground after he woke up.  His testimony about what he had seen would be circumstantial evidence that it had snowed while he was asleep.

The law says that both direct and circumstantial evidence are acceptable as a means of proving a fact.  The law does not favor one form of evidence over another.  It is for you to decide how much weight to give to any particular evidence, whether it is direct or circumstantial.  You are permitted to give equal weight to both.  Circumstantial evidence does not require a greater degree of certainty than direct evidence.  In reaching a verdict in this case, you should consider all of the evidence presented, both direct and circumstantial.

**Instruction 2.110 – NATURE OF CHARGES NOT TO BE CONSIDERED**

One of the questions you were asked when we were selecting this jury was whether the nature of the charge itself would affect your ability to reach a fair and impartial verdict. We asked you that question because you must not allow the nature of a charge to affect your verdict. You must consider only the evidence that has been presented in this case in reaching a fair and impartial verdict.

**Instruction 2.111 – NUMBER OF WITNESSES**

The weight of the evidence is not necessarily determined by the number of witnesses testifying for each side. Rather, you should consider all the facts and circumstances in evidence to determine which of the witnesses you believe. You might find that the testimony of a smaller number of witnesses on one side is more believable than the testimony of a greater number of witnesses on the other side or you might find the opposite.

**Instruction 2.112 – INADMISSIBLE AND STRICKEN EVIDENCE**

The lawyers in this case sometimes objected when the other side asked a question, made an argument, or offered evidence that the objecting lawyer believed was not proper. You must not hold such objections against the lawyer who made them or the party she or he represents. It is the lawyers' responsibility to object to evidence that they believe is not admissible.

If, during the course of the trial, I sustained an objection to a lawyer's question, you should ignore the question, and you must not speculate as to what the answer would have been. If, after a witness answered a question, I ruled that the answer should be stricken, you should ignore both the question and the answer and they should play no part in your deliberations.

**Instruction 2.200 – CREDIBILITY OF WITNESSES**

In determining whether the government has proved the charges against the defendant beyond a reasonable doubt, you must consider and weigh the testimony of all the witnesses who have testified before you.

You are the sole judge of the credibility of the witnesses.  You alone determine whether to believe any witness and the extent to which a witness should be believed.  Judging a witness's credibility means evaluating whether the witness has testified truthfully and also whether the witness accurately observed, recalled, and described the matters about which the witness testified.  You may consider anything that in your judgment affects the credibility of any witness.

For example, you may consider the demeanor and the behavior of the witness on the witness stand; the witness's manner of testifying; whether the witness impresses you as a truthful person; whether the witness impresses you as having an accurate memory and recollection; whether the witness has any motive for not telling the truth; whether the witness had a full opportunity to observe the matters about which he or she has testified; whether the witness has any interest in the outcome of this case, or friendship or hostility toward other people concerned with this case.

In evaluating the accuracy of a witness's memory, you may consider the circumstances surrounding the event, including any circumstances that would impair or improve the witness's ability to remember the event, the time that elapsed between the event and any later recollections of the event, and the circumstances under which the witness was asked to recall details of the event.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause you to discredit such testimony.  Two or more persons witnessing an incident or transaction may see or hear it differently; an innocent mis-recollection, like a failure of recollection, is not an uncommon experience.  In weighing the effect of the inconsistency or discrepancy, always consider whether it pertains to a matter of important or unimportant detail, and whether the inconsistency or discrepancy results from innocent error or intentional falsehood.

You may consider the reasonableness or unreasonableness, the probability or improbability, of the testimony of a witness in determining whether to accept it as true and accurate.  You may consider whether the witness has been contradicted or supported by other credible evidence.

If you believe that any witness has shown him or herself to be biased or prejudiced, for or against either side in this trial, you may consider and determine whether such bias or prejudice has colored the testimony of the witness so as to affect the desire and capability of that witness to tell the truth.

You should give the testimony of each witness such weight as in your judgment it is fairly entitled to receive.

**Instruction 2.207 – LAW ENFORCEMENT OFFICER'S TESTIMONY**

A law enforcement officer's testimony should be evaluated by you just as any other evidence in the case.  In evaluating the officer's credibility, you should use the same guidelines that you apply to the testimony of any witness.  In no event should you give either greater or lesser weight to the testimony of any witness merely because he or she is a law enforcement officer.

**Instruction 2.208 – RIGHT OF DEFENDANT NOT TO TESTIFY**

Every defendant in a criminal case has an absolute right not to testify.  Ms. Messenger has chosen to exercise this right.  You must not hold this decision against her, and it would be improper for you to speculate as to the reason or reasons for her decision.  You must not assume she is guilty because she chose not to testify.

**Instruction 2.209 – DEFENDANT AS WITNESS**

A defendant has a right to become a witness in his own behalf. His testimony should not be disbelieved merely because he is the defendant. In evaluating his testimony, however, you may consider the fact that the defendant has an interest in the outcome of this trial. As with the testimony of any other witness, you should give the defendant's testimony as much weight as in your judgment it deserves.

**Instruction 2.210 – FALSE OR INCONSISTENT STATEMENT BY DEFENDANT**

You have heard evidence that Mr. Kim made statements in explanation of his actions that may have been false or inconsistent.  It is up to you to decide whether he made the statements, and whether they were, in fact, false or inconsistent.  If you find he did make such statements and that they were false or inconsistent, you may consider such evidence as tending to show his feelings of guilt, which you may, in turn, consider as tending to show actual guilt. On the other hand, you may also consider that he may have given such statements for reasons unrelated to his case or consistent with his innocence.

If you find that Mr. Kim made a false or inconsistent statement in explanation of his actions, you should give the testimony as much weight as in your judgment it deserves.


**Instruction 2.213 – CHARACTER OF DEFENDANT**

Mr. Kim has introduced testimony from Mr. Collette that he has a good reputation in the community for honesty.  And both Mr. Kim and Ms. Messenger have introduced testimony that, in Ms. Echeverria's opinion, they both have integrity and are honest. Such evidence may indicate to you that it is unlikely that a person who is honest or has integrity would commit the crime charged or it may not. You may consider this evidence along with other evidence in the case and give it as much weight as you think it deserves.

Notwithstanding the evidence of character, if, after weighing all the evidence, you are convinced beyond a reasonable doubt that Mr. Kim and Ms. Messenger are both guilty of the crimes charged, it is your duty to find each of them guilty. On the other hand, evidence of good character alone may create a reasonable doubt as to a defendant's guilt, although without it the other evidence would be convincing.

**Instruction 2.216 – EVALUATION OF PRIOR INCONSISTENT STATEMENT OF A
WITNESS**

You have heard evidence that Ms. Juliet Beyler made an earlier statement under oath,
subject to the penalty of perjury at a prior proceeding and that this statement may be
inconsistent with her testimony here at trial. If you find that the earlier statement is inconsistent
with the witness's testimony here in court, you may consider this inconsistency in judging the
credibility of the witness. You also may consider this earlier statement as evidence that what
was said in the earlier statement was true.

**Instruction 2.217 – EVALUATION OF PRIOR CONSISTENT STATEMENT OF A
WITNESS**

You have heard evidence that Mr. Kim made a statement on an earlier occasion and that
this statement may be consistent with his testimony here at trial. This earlier statement was
brought to your attention both to help you in evaluating the credibility of the witness and as
evidence in this case. If you find that the earlier statement is consistent with the witness's
present testimony in court, you may consider this consistency both in judging the credibility of
the witness here at trial and as proof that what was said in the earlier statement was true.

It is for you to decide whether a witness made a statement on an earlier occasion and
whether it was in fact consistent with the witness's in-court testimony here.

**Instruction 2.303 – DELETION OF EVIDENCE BY DEFENDANT**

You have heard evidence that Mr. Kim may have deleted WhatsApp messages from his

phone after a conversation with Admiral Burke. It is up to you to decide if Mr. Kim took these actions, and if Mr. Kim did so with the intent to destroy evidence. If you find that Mr. Kim did so, you may consider this evidence as tending to show his feelings of guilt, which you may, in turn, consider as to show actual guilt. On the other hand, you may also consider that he may have taken these actions for reasons fully consistent with innocence in this case. If you find that Mr. Kim destroyed evidence, you should give the evidence as much weight as in your judgment it deserves.

### Instruction 2.307 – MOTIVE

Motive is not an element of the offenses charged, and the government is not required to prove motive in this case. You may, however, consider evidence of motive or lack of evidence of motive in deciding whether or not the government has proved the charges beyond a reasonable doubt.

### Instruction 2.404 – MULTIPLE DEFENDANTS—MULTIPLE COUNTS

Each count of the indictment charges a separate offense. Moreover, each defendant is entitled to have the issue of his or her guilt as to each of the crimes for which he or she is on trial determined from his or her own conduct and from the evidence that applies to him or her as if he or she were being tried alone. You should, therefore, consider separately each offense, and the evidence which applies to it, and you should return separate verdicts as to each count of the indictment, as well as to each defendant.

The fact that you may find any one defendant guilty or not guilty on any one count of the indictment should not influence your verdict with respect to any other count of the

indictment for that defendant. Nor should it influence your verdict with respect to any other defendant as to that count or any other count in the indictment. Thus, you may find any one or more of the defendants guilty or not guilty on any one or more counts of the indictment, and you may return different verdicts as to different defendants and as to different counts. At any time during your deliberations you may return your verdict of guilty or not guilty with respect to any defendant on any count.

### Instruction 3.101 – PROOF OF STATE OF MIND

Someone's intent or knowledge ordinarily cannot be proved directly, because there is no way of knowing what a person is actually thinking, but you may infer someone's intent or knowledge from the surrounding circumstances. You may consider any statement made or acts done or omitted by Mr. Kim or Ms. Messenger, and all other facts and circumstances received in evidence which indicate their intent or knowledge.

You may infer, but are not required to infer, that a person intends the natural and probable consequences of acts he or she intentionally did or intentionally did not do. It is entirely up to you, however, to decide what facts to find from the evidence received during this trial. You should consider all the circumstances in evidence that you think are relevant in determining whether the government has proved beyond a reasonable doubt that Mr. Kim and Ms. Messenger each acted with the necessary state of mind.

**Instruction 3.102 – WILLFULLY CAUSING AN ACT TO BE DONE**

You may find Mr. Kim and Ms. Messenger guilty of the crimes charged in the indictment without finding that they personally committed each of the acts constituting the offense or were personally present at the commission of the offense. A defendant is responsible for an act which he or she willfully causes to be done if the act would be criminal if performed by him or her directly or by another. To "cause" an act to be done means to bring it about. You may convict Mr. Kim and Ms. Messenger of the offenses charged if you find that the government has proved beyond a reasonable doubt each element of the offense and that Mr. Kim and Ms. Messenger willfully caused such an act to be done, with the intent to commit the crime.

**Instruction 3.103 – ON OR ABOUT**

The indictment charges that the offenses of Conspiracy and Bribery were committed at least as early as September 2020 through October 2022.  The proof need not establish with certainty the exact date of the alleged offense. It is sufficient if the evidence in the case establishes beyond a reasonable doubt that the offense was committed on a date reasonably near the dates alleged.

**OFFENSE INSTRUCTIONS**

Count One of the Indictment charges the Defendants, Yongchul "Charlie" Kim and Meghan Messenger, with conspiracy to commit bribery. Title 18, United States Code, Section 371, makes it a crime to conspire with someone else to commit an offense made illegal by federal law. It is against the law to agree with someone to commit the crime of bribery.

The charge of conspiracy to commit bribery is a separate charge from bribery itself with which each Defendant also is charged.

The Government is not required to prove that the objective was achieved.

The elements of conspiracy, each of which the Government must prove beyond a reasonable doubt, are that:

1. Between September 2020 through October 2022, an agreement existed between two or more people to commit the crime of bribery. This does not have to be a formal agreement or plan, in which everyone involved sat down together and worked out the details. On the other hand, merely because people get together and talk about common interests, or do similar things does not necessarily show that an agreement exists to commit bribery. It is enough that the Government proves beyond a reasonable doubt that there was a common understanding among those who were involved to commit the crime of bribery. So, the first thing that must be shown is the existence of an agreement.

2. The Defendant intentionally joined in that agreement. It is not necessary to find he or she agreed to all the details of the crime, or that he or she knew the identity of all the other people the Government has claimed were participating in the agreement. A person may become a member of a conspiracy even if that person agrees to play only a minor part, as long as that person understands the unlawful nature of the plan and voluntarily and intentionally joins in it with the intent to advance or further the unlawful object of the conspiracy. Even if the Defendant was not part of the agreement at the very start, he or she can become a member of a conspiracy later if the Government proves that he or she intentionally joined the agreement. Different people may become part of the conspiracy at different times. But mere presence at the scene of the agreement or of the crime, or merely being with the other participants, does not show that the

Defendant knowingly joined in the agreement. Also, unknowingly acting in a way that helps the participants, or merely knowing about the agreement itself, without more, does not make the defendant part of the conspiracy. So the second thing that must be shown is that the Defendant was part of the conspiracy.

3. One of the people involved in the conspiracy did something for the purpose of carrying out the conspiracy. This something is referred to as an overt act.

The Government need not prove that all of these overt acts were taken, but in order to find Defendant Kim and Defendant Messenger guilty, you must all agree on at least one overt act that was done. The alleged overt acts are attached as an appendix at the end of the written instructions you will receive. The appendix is not evidence but is provided merely as an aid.

### Existence of a Conspiracy

A conspiracy can be proved indirectly, by facts and circumstances that lead to a conclusion that a conspiracy existed. The Government must prove that such facts and circumstances existed and that they lead to the conclusion that a conspiracy existed.

In determining whether a conspiracy between two or more persons existed and whether the Defendant was one of its members, you may consider the acts and the statements of any other members of the conspiracy as evidence against the Defendant whether done in or out of his or her presence while the conspiracy existed. When persons enter into an agreement to commit a crime, they become agents for each other so that everything which is said or done by one of them in furtherance of that purpose is deemed to be the statement of all who have joined in that conspiracy and is evidence against all of the conspirators. However, statements of any conspirator which are made before its existence or after its termination may be considered as evidence only against the person making such statements.

16

In summary, a conspiracy is a kind of partnership in crime. For any defendant to be convicted of the crime of conspiracy, the Government must prove three things beyond a reasonable doubt: first, that between September 2020 and October 2022 there was an agreement to commit bribery; second, that the Defendant intentionally joined in that agreement; and third, that one of the people involved in the conspiracy did one of the overt acts charged.

### **Bribery**

Count Two of the Indictment charges the Defendants with bribery. Title 18, United States Code, Section 201(b)(1) makes it a crime to bribe a public official. For you to find Mr. Kim and Ms. Messenger guilty of this offense, the Government must prove each of the following beyond a reasonable doubt:

(1)  the Defendant directly or indirectly gave, offered or promised something of value to a public official; and

(2)  the Defendant acted knowingly and corruptly, with intent to influence an official act.

Anyone holding the position of Admiral, as described in the indictment, is a public official.

To qualify as an "official act," the public official must have made a decision or taken an action on a question, matter, cause, suit, proceeding, or controversy. Further, the question, matter, cause, suit, proceeding, or controversy must involve the formal exercise of governmental power. It must be similar in nature to a lawsuit before a court, a determination before an agency, or a hearing before a committee. It must also be something specific which requires particular attention by a public official. In this case, the Government alleges that the question, matter, cause, suit, proceeding, or controversy is Next Jump's January 2022 contract with the United States Government.

The public official's decision or action on that question, matter, cause, suit, proceeding, or controversy may include using his official position to exert pressure on another official to perform an official act, or to advise another official, knowing or intending that such advice will form the basis for an official act by another official. But setting up a meeting, talking to another official, or organizing an event (or agreeing to do so) – without more – is not an official act.

It is not necessary that the public official *actually* make a decision or take an action. It is enough that he agrees to do so. The agreement need not be explicit, and the public official need not specify the means he will use to perform his end of the bargain. Nor must the public official in fact intend to perform the official act, so long as he agrees to do so.

To act "corruptly" means to act knowingly and dishonestly for a wrongful purpose.


**Proof of Success Not Required**

For a defendant to be guilty of bribery by giving, offering, or promising a thing of value, the Government must prove beyond a reasonable doubt that the defendant intended that, in exchange for a thing of value, an official act would be influenced. It is not necessary that the government prove an official act actually was influenced.


**Exchange Need Not Be Explicit**

The Defendant's intent to engage in the exchange of a bribe for an official act need not be explicit. Otherwise, the law's effect could be frustrated by knowing winks and nods. Rather, the Government can prove the Defendant's intent by circumstantial evidence, based on his or her

words, conduct, acts, and all the surrounding circumstances and the rational or logical inferences that may be drawn from them.

While you have heard about other things of value given by the defendants to Admiral Burke, the only alleged bribe here is employment with and future compensation from Next Jump for Admiral Burke, not any other thing of value.

You have also heard evidence of regulations and policies issued by the U.S. Navy, and evidence of policies and procedures issued by Next Jump, Inc. Even if there is evidence that a defendant violated any regulations or policies of the U.S. Navy, or policies and procedures at Next Jump, such a violation, standing alone, would not be sufficient to convict a defendant. While you can certainly consider that evidence in your deliberations, including in deciding whether Mr. Kim and Ms. Messenger acted knowingly and corruptly, with intent to influence an official act, it's the law that I advise you on that you need to apply.

**Mixed Motive Not a Defense**

Finally, it is not a defense to the crime of bribery that Defendant Kim and Defendant Messenger gave, offered, or promised Robert Burke a thing of value, for some purpose in addition to influencing Robert Burke's official act or acts. This is so because people rarely act for a single purpose. If you find beyond a reasonable doubt that a Defendant acted with the corrupt intent to exchange a thing of value for an official act, then it makes no difference that the Defendant may also have had additional motives—such as friendship or goodwill.

**Defense Theory of the Case**

First, Mr. Kim and Ms. Messenger contend that they acted in good faith and did not act "corruptly" as that term is defined in the jury instructions for bribery.

Second, Mr. Kim and Ms. Messenger contend that they did not give, offer, or promise Admiral Robert Burke a job at Next Jump with the intent to influence Admiral Burke in the performance of an official act, namely the award of Next Jump's January 2022 contract with the U.S. Navy.

## Instruction 2.405 – UNANIMITY

A verdict must represent the considered judgment of each juror, and in order to return a verdict, each juror must agree on the verdict. In other words, your verdict on each count must be unanimous.

## Instruction 2.407 – VERDICT FORM EXPLANATION

You will be provided with a Verdict Form for use when you have concluded your deliberations. The form is not evidence in this case, and nothing in it should be taken to suggest or convey any opinion by me as to what the verdict should be. Nothing in the form replaces the instructions of law I have already given you, and nothing in it replaces or modifies the instructions about the elements which the government must prove beyond a reasonable doubt. The form is meant only to assist you in recording your verdict.

**Instruction 2.500 – REDACTED EXHIBITS**

During the course of this trial, a number of exhibits were admitted in evidence. Sometimes only portions of an exhibit were admitted, such as portions of a longer video, a document with some words or pictures blacked out or otherwise removed, or a video played without audio. There are a variety of reasons why only a portion of an exhibit is admitted, including that the other portions are inadmissible or implicate an individual's privacy. As you examine the exhibits, and you see or hear portions where there appear to be omissions, you should consider only the portions that were admitted. You should not guess as to what has been taken out or why, and you should not hold it against either party. You are to decide the facts only from the evidence that is before you.

**Instruction 2.501 – EXHIBITS DURING DELIBERATIONS**

I will be sending into the jury room with you the exhibits that have been admitted into evidence. You may examine any or all of them as you consider your verdicts. Please keep in mind that exhibits that were only marked for identification but were not admitted into evidence will not be given to you to examine or consider in reaching your verdict.

**Instruction 2.502 – SELECTION OF FOREPERSON**

When you return to the jury room, you should first select a foreperson to preside over your deliberations and to be your spokesperson here in court. There are no specific rules regarding how you should select a foreperson. That is up to you. However, as you go about the task, be mindful of your mission—to reach a fair and just verdict based on the evidence. Consider selecting a foreperson who will be able to facilitate your discussions, who can help

you organize the evidence, who will encourage civility and mutual respect among all of you, who will invite each juror to speak up regarding his or her views about the evidence, and who will promote a full and fair consideration of that evidence.

### Instruction 2.505 – POSSIBLE PUNISHMENT NOT RELEVANT

The question of possible punishment of the defendant in the event a conviction is not a concern of yours and should not enter into or influence your deliberations in any way. The duty of imposing sentence in the event of a conviction rests exclusively with me. Your verdict should be based solely on the evidence in this case, and you should not consider the matter of punishment at all.

### Instruction 2.508 – CAUTIONARY INSTRUCTION ON PUBLICLITY, COMMUNICATION, AND RESEARCH

I would like to remind you that, in some cases, although not necessarily this one, there may be reports in the newspaper or on the radio, internet, or television concerning this case. If there should be such media coverage in this case, you may be tempted to read, listen to, or watch it. You must not read, listen to, or watch such reports because you must decide this case solely on the evidence presented in this courtroom. If any publicity about this trial inadvertently comes to your attention, do not discuss it with other jurors or anyone else. Just let me or my clerk know as soon after it happens as you can, and I will then briefly discuss it with you. As you retire to the jury room to deliberate, I also wish to remind you of an instruction I gave you at the beginning of the trial. During deliberations, you may not communicate with anyone not on the jury about this case. This includes any electronic communication such as email or

text or any blogging about the case. In addition, you may not conduct any independent investigation during deliberations. This means you may not conduct any research in person or electronically via the internet or in another way.

**Instruction 2.509 – COMMUNICATIONS BETWEEN COURT AND JURY DURING JURY'S DELIBERATIONS**

If it becomes necessary during your deliberations to communicate with me, you may send a note by the clerk or marshal, signed by your foreperson or by one or more members of the jury. No member of the jury should try to communicate with me except by such a signed note, and I will never communicate with any member of the jury on any matter concerning the merits of this case, except in writing or orally here in open court.

Bear in mind also that you are never, under any circumstances, to reveal to any person—not the clerk, the marshal or me—how jurors are voting until after you have reached a unanimous verdict. This means that you should never tell me, in writing or in open court, how the jury is divided on any matter—for example, 6-6 or 7-5 or 11-1, or in any other fashion—whether the vote is for conviction or acquittal or on any other issue in the case.

**Instruction 2.510 – ATTITUDE AND CONDUCT OF JURORS IN DELIBERATIONS**

The attitude and conduct of jurors at the beginning of their deliberations are matters of considerable importance. It may not be useful for a juror, upon entering the jury room, to voice a strong expression of an opinion on the case or to announce a determination to stand for a certain verdict. When one does that at the outset, a sense of pride may cause that juror to hesitate to back away from an announced position after a discussion of the case. Furthermore,

many juries find it useful to avoid an initial vote upon retiring to the jury room. Calmly reviewing and discussing the case at the beginning of deliberations is often a more useful way to proceed. Remember that you are not partisans or advocates in this matter, but you are judges of the facts.

### Instruction 2.511 – EXCUSING ALTERNATE JURORS

Now I must excuse the alternate jurors. As I told you before, the selection of alternates was an entirely random process; it's nothing personal. We selected two seats to be the alternate seats before any of you entered the courtroom. Since the rest of you have remained healthy and attentive, I can now excuse those jurors in seats 1 and 8.

Before you two leave, I am going to ask you to tear out a page from your notebook, and to write down your name and daytime phone number and hand this to the clerk. I do this because it is possible, though unlikely, that we will need to summon you back to rejoin the jury in case something happens to a regular juror. Since that possibility exists, I am also going to instruct you not to discuss the case with anyone until we call you. My earlier instruction on use of the Internet still applies; do not research this case or communicate about it on the Internet. In all likelihood, we will be calling you to tell you there has been a verdict and you are now free to discuss the case; there is, however, the small chance that we will need to bring you back on to the jury. Thank you very much for your service, and please report back to the jury office to turn in your badge on your way out.

## APPENDIX

The Government alleges the following charged overt acts in this case are:

1. On September 23, 2020, Kim, copying Messenger, emailed Burke, despite having been instructed by the Navy not to. Kim asked for "insights or guidance" about a Navy contract for Next Jump. Burke responded that he would get back to Kim and Messenger, but never did.

2. On February 19, 2021, Kim emailed Burke, asking to connect for "at least an hour or so to catch up," and promoting Next Jump's training program.

3. On February 24, 2021, Kim emailed Burke, stating "I know you must be very busy," but requesting "an hour of your time[.]" Kim again promoted Next Jump. Burke responded that an aide would schedule a meeting "in the next week or two."

4. On March 5, 2021, Kim, copying Messenger, emailed Burke, noting that Next Jump planned to open a new headquarters in New York City that summer, and inviting Burke and his spouse to visit.

5. On April 20, 2021, Kim and Messenger spoke with Burke via WhatsApp. Describing the call afterward, Kim stated that Burke "wants to work for us but we're asking for a deal first" and that while Messenger "felt slimy," Kim "was nervous but calm."

6. On May 6, 2021, Burke directed Juliet Beyler to find money for a future contract for Next Jump from U.S. Naval Forces Europe and Africa. Burke also told Kim and Messenger that Juliet Beyler was "working options and angles hard for funding our project[.]"

7. On May 10, 2021, Kim, copying Messenger, emailed Burke to propose a $20 million contract for Next Jump to provide workforce training for Burke's command – even though U.S. Naval Forces Europe and Africa had not identified a need for such training or requested that companies submit bids for such a contract.

8. On July 13, 2021, Kim, Messenger, and Burke agreed to meet ten days later in Washington, D.C.

9. On July 23, 2021, Kim, Messenger, Burke (while on duty), and Denese Canedo had lunch in Washington, D.C., paid for by Next Jump, during which Kim and Messenger proposed that:

> a. Burke use his official position to steer a workforce training contract from U.S. Naval Forces Europe and Africa to Next Jump;

> b. Burke remain in the Navy for approximately six months after Next Jump performed the contract and, pointing to its performance, influence senior Navy officers to award another contract to Next Jump – to train a larger portion of the Navy – before Burke retired; and

> c. In exchange, Kim and Messenger offered Burke a job at Next Jump – at a salary of at least $500,000 per year plus stock options and other related compensation – to commence after Burke retired from the Navy, which Burke agreed to accept.

10. On November 16, 2021, Burke (while off duty) met with Kim and Messenger at Next Jump's headquarters in New York City. Describing the meeting afterward, Kim stated, "we're about to go full force back into business with the Navy," and Burke would aim to have a contract in place and signed before Christmas. Kim stated the contract would include in-person training to Burke's command in Naples, Italy, and Rota, Spain in early 2022.

11. On December 16, 2021, Kim, copying Messenger, emailed Burke, attaching a "Pricing worksheet" that listed a total price of $413,500 for Next Jump's training: $213,500 for the training, plus a $200,000 surcharge to give it in person in Italy and Spain.

12. On December 17, 2021, Burke ordered Juliet Beyler to provide a contract to Next

Jump, to make sure the contract was in place by January 10, 2022, and for it to be valued at approximately $350,000.

13. On December 20, 2021, Burke emailed Kim and Messenger, stating that his staff could not implement a contract by January 10, 2022. The same day, Kim replied asking, "for the sake of speed," that Burke consider issuing the contract to Next Jump through PowerTrain.

14. On December 21, 2021, Kim, copying Messenger, again told Burke that Next Jump could get the contract through OPM and PowerTrain. Kim added, "we prefer to get this done as soon as possible." The same day, Burke replied, "We'll work with both and take the fastest route."

15. On December 27, 2021, U.S. Naval Forces Europe and Africa submitted a Military Interdepartmental Purchase Request ("MIPR") to OPM. The MIPR ordered a training program that would include applications only Next Jump provided; thus, the MIPR was actually a sole-source contract. The MIPR required the training program to occur on January 10, 2022, in Naples, Italy, and Rota, Spain. The value of the MIPR was $355,135.

16. On January 5, 2022, OPM sent PowerTrain a task order based on the requirements stated in the MIPR. The order included a travel allowance of $13,200.

17. PowerTrain later contracted with and paid Next Jump approximately $257,000 related to this task order.

18. From January 8 to January 15, 2022, Next Jump employees, including Kim and Messenger, traveled to Naples, Italy, and Rota, Spain, and provided the "On My Mind" training to personnel under Burke's command pursuant to the MIPR.

19. Burke remained in the Navy and promoted Next Jump to senior Navy officers – while suggesting another contract for Next Jump to train a larger portion of the Navy – without

disclosing his prior employment offer from Kim and Messenger. For example:

      a. On March 12, 2022, Burke emailed a Foreign Military Officer asking him/her to report back about the Foreign Military's efforts to contract with Next Jump because such information would advance Next Jump's efforts to market Next Jump to a wider U.S. Navy audience.

      b. On March 14, 2022, Burke sent an email introducing Kim and Messenger to Daryl Caudle, a four-star Navy Admiral who oversaw training programs for Navy recruits' "pipeline schools." Burke promoted Next Jump's training program to Daryl Caudle.

      c. On March 28, 2022, Burke forwarded an email to Daryl Caudle that contained a proposal for Next Jump to provide training to the Foreign Military. Burke commented that the Foreign Military's proposal had "sort of the same components I would see us using."

      d. On May 25, 2022, Burke emailed a Senior Foreign Military Official, stating, "I wanted to write you a short note on [Next Jump] – something I know the [Foreign Military] is exploring." Burke promoted Next Jump's training, said that he had "put together a proposal for wider US Navy implementation," and added, "my team is standing by as your local US Navy team to help in any way as the [Foreign Military] considers a similar path."

20. The conspiracy was concealed from the Navy through misleading and false statements and material omissions. For example:

      a. On August 26, 2021 (about one month after Burke met in Washington, D.C.), Burke sent the Secretary of the Navy a memo requesting voluntary retirement in May

2022. Burke also affirmed that he had "read and thoroughly examined DOD Directive 5500.07R concerning pre- and post-retirement standards of conduct and employment activities," falsely implying that Burke had been and would continue to follow those standards.

b. On March 28, 2022, Burke emailed a Navy Ethics Counselor, and falsely stated, with respect to post-Government employment, that he "had no conversations, have no intent to aim for a specific company, and most likely will not actively seek employment until after 1 July."

c. On May 6, 2022, Burke emailed the Navy Ethics Counselor, falsely implying that Next Jump had just approached him to ask "if I would be interested in having post-Navy employment discussions," and falsely stating that he told Next Jump that "I could not, had some prerequisites to meet and would get back to them if/when I met those prerequisites." Burke disclosed that U.S. Naval Forces Europe and Africa had given Next Jump the contract discussed above, but he also falsely claimed the contract decision was through Juliet Beyler.

d. On May 9, 2022, Burke signed a memorandum to the Navy's Chief of Naval Operations with the subject line "DISQUALIFICATION STATEMENT (EMPLOYMENT)". The memorandum stated, "I anticipate commencing discussions related to employment with the company listed below . . . [Next Jump]," even though he already negotiated for and obtained a promise of employment at Next Jump from Kim and Messenger.

e. On July 18, 2022, Burke submitted to the Office of Government Ethics in Washington, D.C., an "Executive Branch Personnel Public Financial Disclosure Report

(OGE Form 278e)." In a section called "Filer's Employment Agreements and Arrangements," Burke stated that he had "tentatively accepted a job offer from [Next Jump]" and "Disqualification memo signed 9 May 22. Letter of offer received 24 May and accepted 26 May 22." Burke e-signed the document, "certify[ing that] the statements I have made in this form are true, complete and correct to the best of my knowledge" – even though the form did not include any information about his prior job discussions with Kim and Messenger.

21. In or about October 2022, Burke began employment as a "Senior Partner" at Next Jump and by January 2023 had received gross compensation of about $125,000.