UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>YONGCHUL "CHARLIE" KIM, and MEGHAN MESSENGER,<br><br>　　　　Defendants. | Case No. 1:24-cr-00265-TNM |

**YONGCHUL "CHARLIE" KIM'S AND MEGHAN MESSENGER'S
MOTION *IN LIMINE* TO EXCLUDE EVIDENCE**

**PRELIMINARY STATEMENT**

Defendants Charlie Kim and Meghan Messenger, by and through undersigned counsel, respectfully move this Court for an order *in limine* precluding the government from presenting any testimony, evidence, or argument relating to (i) the quality of Next Jump's products or services or how those products and services were received by the Navy, except insofar as it was communicated directly to Mr. Kim and Ms. Messenger before Adm. Robert Burke approved the January 2022 contract and thus probative of Defendants' states of mind, and (ii) any alleged compressed time period in which the January 2022 contract was approved and signed. Following Defendants' trial, the Court expressed its intention to exclude evidence regarding these two subjects because it is irrelevant and, even if it does have some minimal relevance, that minimal relevance is outweighed by the large amount of time wasted presenting and rebutting such evidence. Defendants request that the Court formally preclude the government from presenting such evidence now.

**BACKGROUND**

On May 30, 2025, Defendants moved *in limine* to exclude testimony that Next Jump's products were not well received or, alternatively, to admit positive reviews. ECF No. 176 at 20-24. In their motion, Defendants argued that the quality of Next Jump's services is irrelevant and/or should be excluded under Federal Rule of Evidence 403 because its minimal probative value is substantially outweighed by the dangers of unfair prejudice, confusion, misleading the jury, and wasting time. *Id*. at 16, 18.

At the July 25, 2025 pretrial conference, the Court denied Defendants' motion, stating that evidence concerning the quality of Next Jump's services was probative of Defendants' states of mind and otherwise satisfied Rule 403. ECF No. 252 (July 25, 2025 Pretrial Conf. Tr.) at 80:17-18, 82:9-10. Notwithstanding, the Court allowed Defendants to "introduce evidence to show that

1

Next Jump's product was actually well-received" and cautioned the parties to introduce "only their most salient evidence on this point." *Id*. at 82:11-17.

At Defendants' trial, the government presented extensive, cumulative testimony about the quality of Next Jump's services—the overwhelming majority of which was not communicated to Defendants. *See, e.g.*, ECF No. 325 (Aug. 19, 2025 PM Trial Tr.) at 80:3-11 (Juliet Beyler); ECF No. 334 (Aug. 21, 2025 AM Trial Tr.) at 120:6-121:15, 123:3-8, 123:12-124:1 (Amanda Kraus); ECF No. 327 (Aug. 26, 2025 PM Trial Tr.) at 87:1-7 (Pamela Hooker). The government also presented extensive, cumulative testimony about a purportedly abbreviated timeframe between the approval and execution of the January 2022 contract. Indeed, two witnesses testified almost exclusively on this topic (Amanda Kraus and Pamela Hooker). *See, e.g.*, ECF No. 325 (Aug. 19, 2025 PM Trial Tr.) at 70:10-19 (Juliet Beyler); ECF No. 334 (Aug. 21, 2025 AM Trial Tr.) at 96:15-20, 97:11-16, 100:18-23, 106:20-22 (Amanda Kraus); ECF No. 327 (Aug. 26, 2025 PM Trial Tr.) at 82:9-12 (Pamela Hooker).

Defendants were compelled to introduce evidence that rebutted these points. Specifically, Defendants presented evidence showing that Next Jump's services were highly valued and praised by Navy personnel, as well as other military branches and civilians. *See, e.g.*, ECF No. 339 (Aug. 27, 2025 AM Trial Tr.) at 22:13-14, 69:14-17. And Defendants presented evidence showing that the January 2022 contract was signed 25 days after it was approved—exactly the same time period between approval and signing of a prior, much larger Navy contract that the government does not contend was inappropriate or tainted by any alleged bribes. *See* ECF No. 326 (Aug. 21, 2025 PM Trial Tr.) at 27:1-21, 29:4-17.

Soon after declaring a mistrial, the Court informed the parties that it was "looking to streamline any subsequent trial" and stated its intention to exclude testimony concerning the

2

quality of Next Jump's services and the 2021-2022 contract timeline. ECF No. 348 (Sept. 11, 2025 Trial Tr.) at 10:17-18. First, the Court stated that it was "inclined to significantly limit evidence regarding how Next Jump's training was received at DOD," explaining that "the probative value" of such testimony for Defendants was "pretty minimal." *Id*. at 9:20-10:3. The Court stated that its "inclination would be to agree now with the defense initial view that is not relevant and bar testimony from either side on that issue." *Id.* at 10:4-6. Second, the Court stated that it was "strongly inclined to bar evidence about the quick turnaround of the holiday contract," observing that the 2021-2022 contract "was actually perhaps exactly the same number of days that a prior contract was approved within" and noting that the probative value of timing evidence was "pretty minimal compared to the amount of time we spent hearing from various witnesses about that." *Id*. at 10:7-14.

Defendants now move *in limine* to confirm the Court's initial inclination through a formal order.

## LEGAL STANDARD

Under Federal Rules of Evidence 401 and 402, "evidence should only be admitted if it is relevant, meaning it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *United States v. Darui*, 545 F. Supp. 2d 108, 110 (D.D.C. 2008) (citing Fed. R. Evid. 401, 402). Such evidence may nevertheless be excluded under Rule 403 "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Id*. (citing Fed. R. Evid. 403); *United States v. Ring*, 706 F.3d 460, 472 (D.C. Cir. 2013)

3

(noting that Rule 403 bars evidence with an "undue tendency to suggest decision on an improper basis" (citation omitted)).

## ARGUMENT

Evidence concerning the quality of Next Jump's services and the January 2022 contract timeline should be excluded under Federal Rules of Evidence 401, 402, and 403.

*First*, the evidence is irrelevant under Federal Rules of Evidence 401 and 402. The substantive charges in this case revolve around an alleged bribery scheme—not the objective quality of services provided or the speed of procurement processes. The issue in this case is Defendants' intent, which could only have been informed by information that was communicated to (or otherwise known by) them before Adm. Burke approved the January 2022 contract. *See* ECF No. 176 at 16. Additionally, Defendants effectively countered any evidence that Next Jump's services were substandard. Defendants presented substantial and compelling evidence showing that those services were valued and praised by numerous Navy personnel, including Adm. Burke. *See* ECF No. 339 (Aug. 27, 2025 AM Trial Tr.) at 22:13-14, 69:14-17; ECF No. 341 (Aug. 29, 2025 AM Trial Tr.) at 47:5-8; ECF No. 340 (Aug. 28, 2025 Trial Tr.) at 77:3-11.

In addition, and as the Court observed following Defendants' initial trial, the January 2022 contract timeline was not unusual at all—it was "exactly the same number of days that a prior contract was approved within." ECF No. 348 (Sept. 11, 2025 Trial Tr.) at 10:7-14; ECF No. 326 (Aug. 21, 2025 PM Trial Tr.) at 27:1-21, 29:4-17. Evidence about this timeline is therefore totally irrelevant. It should be excluded.

*Second*, even if minimally relevant, evidence concerning the foregoing subjects should be excluded under Rule 403 because its probative value is substantially outweighed by multiple dangers: wasting time; undue delay; unfair prejudice; confusion of issues; and misleading the jury.

4

*See* Fed. R. Evid. 403. At Defendants' initial trial, the government elicited testimony from multiple witnesses—principally, Amanda Kraus and Pamela Hooker—that in their subjective views, Next Jump's services were allegedly substandard (which neither Ms. Kraus nor Ms. Hooker ever communicated to Defendants before Adm. Burke approved the January 2022 contract) and that the January 2022 contract approval timeline was far too short. *See, e.g.*, ECF No. 325 (Aug. 19, 2025 PM Trial Tr.) at 70:10-19 (Juliet Beyler); ECF No. 334 (Aug. 21, 2025 AM Trial Tr.) at 96:15-20, 97:11-16, 100:18-23, 106:20-22, 120:6-121:15, 123:3-8, 123:12-124:1 (Amanda Kraus); ECF No. 327 (Aug. 26, 2025 PM Trial Tr.) at 82:9-12, 87:1-7 (Pamela Hooker). Defendants responded by calling witnesses and introducing evidence to rebut these points. *See, e.g.*, ECF No. 339 (Aug. 27, 2025 AM Trial Tr.) at 22:13-14, 69:14-17. Following Defendants' trial, the Court specifically recognized that time spent covering the foregoing subjects was unwarranted. ECF No. 348 (Sept. 11, 2025 Trial Tr.) at 9:24-10:3 ("I felt like we spent a lot of time hearing from Government witnesses about how the Next Jump training was bad and defense witnesses about how it was good. And the probative value, I think, at this point for these Defendants seems pretty minimal."), 10:12-14 ("I think the probative value is pretty minimal compared to the amount of time we spent hearing from various witnesses about [the 2021-2022 contract timeline]."). Because the dangers of wasting time and undue delay substantially outweigh the probative value of evidence concerning the quality of Next Jump's services or the January 2022 contract timeline, the Court should exclude such evidence under Rule 403.

Furthermore, the prejudicial effect is particularly acute here. The clear point of the government's evidence concerning the alleged substandard quality of Next Jump's services and the purported abbreviated contract-approval timeline is to vilify Defendants or make them look foolish—not demonstrate that any crime was committed. Just two examples illustrate this point:

5

- First, the government presented the results of a questionnaire that was administered to Navy personnel after the January 2022 pilot program in which anonymous Navy personnel provided negative feedback, including that it seemed like a "multilevel marketing pyramid scheme," that it "felt like a sales pitch," and that the Navy should "not hold this training again." ECF No. 342 (Sept. 2, 2025 AM Trial Tr.) at 133:1-135:21 (Charlie Kim Cross-Examination); *see also* ECF No. 334 (Aug. 21, 2025 AM Trial Tr.) at 118:17-124:1. But the government presented no evidence (nor could they) that any of this feedback was ever communicated to Defendants or anyone else at Next Jump before Adm. Burke approved the 2022 contract. This feedback is therefore completely irrelevant to Defendants' state of mind and offered only to vilify and embarrass.

- Second, the government presented testimony from multiple witnesses that they suffered severe hardship from an allegedly abbreviated contracting period over the December 2021 holiday season. *See, e.g.*, ECF No. 334 (Aug. 21, 2025 AM Trial Tr.) at 110:6-12 (Amanda Kraus) ("Q. Did getting that contract done impact your holiday plans? A. Not just mine. . . . [T]here were canceled plans as well."); ECF No. 327 (Aug. 26, 2025 PM Trial Tr.) at 83:8-16 ("I spent the weekend watching videos and pulling up any information that I could find."); ECF No. 325 (Aug. 19, 2025 PM Trial Tr.) at 71:4-6 (Juliet Beyler) ("[T]here was just a lot of consternation in the staff of what are we doing and why are we doing this and this doesn't make sense to me."). Additionally, witnesses involved in the December 2021 contracting process offered testimony that had no probative value and was squarely intended to make Defendants out to be bad people. *See, e.g.*, ECF No. 334 (Aug. 21, 2025 AM Trial Tr.) at 123:6-8 (Amanda Kraus) ("I'm at a loss as to how the feedback was so positive (or if Charlie lied, hid or faked the real feedback)."); ECF No. 327 (Aug. 26, 2025 PM Trial Tr.) at 80:1-2 (Pamela Hooker) ("This proposal looks like a kindergartner wrote it."), 86:1-2 ("This is a bad company."). This evidence is irrelevant not only because none of this information was ever conveyed to Defendants, but also because the timetable for approval of the January 2022 contract was identical to that which applied to Next Jump's earlier contract with the Navy—a contract that was many multiples larger in terms of dollar value and that has never been alleged to be inappropriate or tainted by bribes. *See* ECF No. 326 (Aug. 21, 2025 PM Trial Tr.) at 27:6-10, 29:17; ECF No. 336 (Aug. 25, 2025 AM Trial Tr.) at 32:3-12.

In short, this evidence might lead the jury to improperly conclude that Defendants are bad people and therefore they must be guilty—a form of propensity reasoning that Rule 403 explicitly guards against. *See Old Chief v. United States*, 519 U.S. 172, 180-81 (1997) (discussing the risk that jurors may "generaliz[e] a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act now charged"); *see also* Adv. Com. Notes to 1972 Proposed Rules, Fed. R. Evid. 403 ("'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.").

6

However, Defendants should be permitted to present argument and evidence that they were informed (repeatedly, by multiple sources) that their services were valuable, useful, or desired by the Navy because this evidence is probative of Defendants' mental states and, specifically, their lack of corrupt intent. *See United States v. Thompson*, 279 F.3d 1043, 1047 (D.C. Cir. 2002) ("Regardless of the actual contents of the closed cup, the jury might have been able to draw from [a co-defendant's] statements an inference as to [the defendant's] guilty knowledge *vel non* of the cup's contents. *If* [the defendant] offered [the co-defendant's] post-transaction statements only as they might tend to bear on his state of mind, the testimony would not have been hearsay."). Indeed, evidence presented at Defendants' trial showed that their services were praised by Navy officials and others and that this feedback was communicated directly to Defendants. *See, e.g.*, ECF No. 341 (Aug. 29, 2025 AM Trial Tr.) at 47:20-48:7 (describing an email from Kyle Gantt, a Navy officer who explained that he was "a better leader" and man "[c]oming out of" Next Jump's leadership academy). This evidence speaks to Defendants' states of mind—namely, it tends to suggest that Defendants had no motive to offer a bribe to obtain a contract with the Navy because Defendants' services were valued by high-level officials and had merit in their own right. *See Thompson*, 279 F.3d at 1047; *Wolfson v. Mut. Life Ins. Co. of New York*, 455 F. Supp. 82, 87 (M.D. Pa. 1978) (noting that a witness's testimony "concerning his overhearing of assurances . . . did not constitute hearsay since the existence of such assurances was itself in issue at trial and was offered directly to show effect upon decedent's state of mind"). Any rebuttal evidence offered by the government should be limited to information that was actually conveyed to Defendants before Adm. Burke approved the 2022 contract.

7

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter an order precluding the government from presenting any testimony, evidence, or argument relating to (i) the quality of Next Jump's products or services or how those products and services were received by the Navy, except insofar as it was communicated directly to Mr. Kim and Ms. Messenger and (ii) any alleged compressed time period in which the January 2022 contract was approved and signed.  The Court should permit Defendants to present evidence that they were informed that their services were positively received, and any rebuttal evidence presented by the government should be limited to material that was actually communicated to Defendants.

Respectfully submitted,

DATED February 6, 2026                  /s/ William A. Burck
                                        William A. Burck

| | |
|---|---|
| Reed Brodsky (*pro hac vice*) | William A. Burck (DC Bar No. 979677) |
| Simone Rivera (*pro hac vice*) | Avi Perry (DC Bar No. 90023480) |
| GIBSON, DUNN & CRUTCHER LLP | John (Fritz) Scanlon (DC Bar No. 983169) |
| 200 Park Avenue | Rachel G. Frank (DC Bar No. 1659649) |
| New York, New York 10166 | Brett Raffish (*pro hac vice*) |
| Work: (212) 351-5334 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| Mobile: (917) 574-8200 | 555 13th Street NW, Suite 600 |
| rbrodsky@gibsondunn.com | Washington, D.C.  20004 |
| srivera@gibsondunn.com | Tel: (202) 538-8000 |
| | Fax: (202) 538-8100 |
| *Counsel for Defendant Meghan Messenger* | williamburck@quinnemanuel.com |
| | aviperry@quinnemanuel.com |
| | fritzscanlon@quinnemanuel.com |
| | rachelfrank@quinnemanuel.com |
| | brettraffish@quinnemanuel.com |

Christopher Clore (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
295 5th Avenue
New York, NY 10016
Tel: (212) 849-7000
Fax: (212) 849-8100
christopherclore@quinnemanuel.com

*Counsel for Defendant Yongchul "Charlie" Kim*

9

## CERTIFICATE OF SERVICE

    I hereby certify that on this date, a copy of the foregoing motion was electronically filed with the Clerk of the U.S. District Court for the District of Columbia via CM/ECF and served to all counsel of record via electronic mail.

                                                    */s/ William A. Burck*
                                                    William A. Burck (DC Bar No. 979677)

Dated: February 6, 2026