UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 1:24-cr-00265 (TNM) |
| : | |
| YONGCHUL "CHARLIE" KIM and : | |
| MEGHAN MESSENGER, : | |
| : | |
| Defendants. : | |

### GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTION TO ADMIT TESTIMONY FROM HERMAN SHELANSKI

Vice Admiral Herman Shelanski ("VADM Shelanski") is not an expert in the Navy's ethics and conflict-of-interest rules governing contracting and post-retirement employment discussions (hereinafter referred to as the "Rules") and his lay opinion testimony about these Rules is not relevant. In their Motion to Admit Expert Testimony from Herman Shelanski, ECF No. 387,[1] the Defendants argue that VADM Shelanski's testimony is admissible as fact testimony of a lay witness pursuant to Federal Rule of Evidence 701 and admissible as expert testimony pursuant to Federal Rule of Evidence 702. The Defendants' argument fails. As laid out in more detail below, VADM Shelanski cannot testify about any actions that he took or did not take based on the Navy's ethics rules that are relevant to this case—indeed, he was not even a Navy employee at the time of the alleged conspiracy and has no personal knowledge of the charged conduct. Furthermore, the Defendants described VADM Shelanski's anticipated testimony in a Notice pursuant to Federal

---

[1] The Defendants' Motion also seeks an order from this Court compelling the Navy to authorize the release of VADM Shelanksi's testimony. The Government does not take a position on the Defendants' request for such an order, and responds to the Defendants' Motion only to oppose the Defendants' position that VADM Shelanski is qualified to provide expert testimony (because he is not) or that his lay witness testimony about the Rules is relevant (because it is not). It is the Government's understanding that the Navy will comply with the determination of this Court with respect to the scope of testimony for VADM Shelanski.

Rule of Criminal Procedure 16(b)(1)(C), but that notice is lacking and a deeper dive into VADM Shelanski's background and the Navy's delegation of responsibilities indicate that VADM Shelanski is not an expert on the Rules. For the reasons discussed in more detail below, this Court should preclude VADM Shelanski from testifying about the Rules as either an expert or a lay witness.

I.   **BACKGROUND AND RELEVANT FACTS**

The Indictment charges that, from September 2020 through October 2022, Yongchul "Charlie" Kim and Meghan Messenger (collectively referred to as the "Defendants"), co-CEOs of "NextJump," conspired with Robert Burke ("Burke"), a U.S. Navy Admiral stationed in Europe, to commit bribery, specifically, to accept and receive future employment at Next Jump in exchange for a government contract. *See* ECF No. 1, ¶¶ 20-21, 23-24, 51. On August 18, 2025, the Defendants proceeded to trial, which resulted in a mistrial. In advance of the Defendant's retrial, set for April 29, 2026, the Defendants noticed VADM Shelanski to testify about Navy "ethics and conflict-of-interest rules governing contracting and post-retirement employment discussions, including their scope and applicability (or not) to Navy and private-sector personnel." Ex. A at 1 (the "Notice"). According to the Notice, VADM Shelanski's anticipated testimony will include assertions and opinions summarized as follows:

- Burke was expected to know the Navy's ethics rules and was expected to follow those rules during contracting and employment discussions;

- VADM Shelanski believes that flag officers, not contractors, are responsible for knowing and enforcing the Navy's ethics and conflict-of-interest rules and, as such, Burke would have known when to recuse himself during employment discussions with contractors;

2

- VADM Shelanski believes that contractors do not typically receive the same kind of training as flag officers and would not have the same knowledge about the Navy's ethics rules as flag officers. VADM Shelanksi would testify that the Navy's internal rules do not apply to private parties and, relatedly, that any rules concerning contractor-officer contact during a contracting action do not bind the private party; and

- There are examples of flag officers having concurrent job and contracting discussions that may have violated the Navy's ethics rules but were not discussions intending to trade a contract for a job.

*See generally* Ex. A. The Defendants assert that VADM Shelanski is going to base his testimony on the "knowledge and experience he gained throughout his 38-year Navy career and tenure as a flag officer and the Navy's Inspector General." Ex. A at 2.

While the Notice purports to comply with Federal Rule of Criminal Procedure 16(b)(1)(C) regarding expert witness disclosures, it does not. First and foremost, VADM Shelanski has not acknowledged the veracity of the anticipated testimony described in the Notice and it is unclear to the Government how the Defendants can accurately anticipate VADM Shelanski's testimony. Assuming, *arguendo*, that the Notice is accurate with respect to VADM Shelanski's anticipated testimony, the Defendants' conclusory statements that his 38-year Navy career render him an expert are not rooted in reality. As described in more detail below, not only does a closer look at VADM Shelanksi's background prove that he is unqualified to be an expert on the Rules, but also the unadopted proffered testimony is misleading. Furthermore, as the Notice makes clear, VADM Shelanski's testimony is irrelevant because he has no direct knowledge of the charged offense.

## II. LEGAL STANDARDS

It is axiomatic that "evidence which is not relevant is not admissible." Fed. R. Evid. 402. Relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

Pursuant to Federal Rule of Evidence 602, a non-expert witness may testify to a matter only if evidence is introduced to support a finding that the witness has personal knowledge about that matter. Rule 701 provides that if a witness is not testifying as an expert, any opinion testimony must be: (a) rationally based on a witness's perception; (b) helpful to understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge. *See also United States v. Hampton*, 718 F.3d 978, 981 (D.C. Cir. 2013).

Expert witnesses, on the other hand, are "those who testify based on scientific, technical, or specialized knowledge in a field of expertise." *United States v. Smith*, 640 F.3d 358, 365 (D.C. Cir. 2011); Federal Rule of Evidence 702. District courts are gatekeepers for the admissibility of expert witnesses, which requires that they assess the reliability and relevance of the expert's findings. *See, e.g., Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1993). An opinion exhibits reliability if the expert is qualified to offer the opinion, and the opinion has an acceptable basis in the knowledge and experience of the expert's discipline. *United States v. Morgan*, 292 F. Supp. 3d 475, 477 (D.C. 2018) (*citing Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)); *see also Mukhtar v. CSU Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002) (noting court's "special obligations . . . to make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field") (*quoting Kumho Tire*). The Supreme Court has identified several non-exhaustive factors for courts to use in

assessing a theory or technique's reliability (the "Daubert factors"), including (1) whether the theory or technique at issue can be tested or has been tested, (2) whether the theory or technique at issue has been subject to peer review and publication, (3) whether the theory or technique has a known or potential error rate, and (4) whether the relevant expert community generally accepts the theory or technique. *Morgan*, 292 F. Supp. 3d at 477-78 (*citing Daubert*, 509 U.S. at 589). The party seeking to introduce the expert testimony must prove by a preponderance of the evidence that the proffered testimony is admissible. *See* Fed. R. Evid. 702 Adv. Comm. Note.

In this Circuit, when evaluating whether a proffered expert's testimony is admissible, the Court's first task is to determine whether the expert is qualified to offer an opinion on the issue at hand based on their "knowledge, skill, experience, training, or education[.]" *U.S. ex rel. Miller v. Bill Harbert Int'l Const., Inc.*, 608 F.3d 871, 894 (D.C. Cir. 2010). If the expert is qualified, the Court must then conduct a two-pronged inquiry to determine whether the proffered evidence is both reliable and relevant. *Ambrosini v. Labarraque*, 101 F.3d 129, 133 (D.C. Cir. 1996). Even when presenting expert testimony, a witness may not testify about ultimate issues of fact that are for the jury to decide, including about a defendant or co-conspirator's state of mind. *See* Fed. R. Evid. 704(b); *see also United States v. Boyd*, 312 F.3d 667, 671 (D.C. 1995) ("Rule 704(b) applies in fact to all instances in which expert testimony is offered as to a mental state or condition constituting an element of the crime charged or defense thereto[.]").

### III.    ARGUMENT

The Defendants anticipate that VADM Shelanski—who was not even employed by the Navy at the time of the charged criminal conduct and has no direct personal knowledge of the charged criminal conduct— will testify at trial on a host of topics relating to the Rules and opine on what Burke, as a flag officer, and the Defendants, as contractors, were likely aware of with

respect to the Rules. To the extent that the Defendants intend to call VADM Shelanski as an expert, so he may testify to conclusions and opinions based on information he does not have firsthand, he is not qualified to be one. VADM Shelanski does not have the requisite training and experience to be an expert on the Rules, and his opinions would be unreliable. Nor can he testify to the Defendants' and/or Burke's state of mind. To the extent the Defendants intend to offer VADM Shelanski as a lay witness, the anticipated testimony is irrelevant.

### a. VADM Shelanski should be precluded from providing expert testimony pursuant to Rule 702.

Under Federal Rule of 702, VADM Shelanski is not qualified to offer any specialized opinions, and the "opinions" in the Notice lack an acceptable basis in the knowledge or experience of the Rules. VADM Shelanski's wide-ranging purported conclusions and opinions are therefore inadmissible as expert testimony. *Morgan*, 292 F. Supp. 3d at 477-79. The Defendants' conclusory assertion that VADM Shelanski is "intimately familiar" with the Navy's Code of Conduct does not withstand scrutiny. In the Notice, the Defendants try to demonstrate that VADM Shelanski can be qualified as an expert in the Rules with a single detail-less assertion about the "knowledge and experience [VADM Shelanski] gained through his 38-year career and tenure as a flag officer and the Navy's Inspector General." Ex. A at 2. The Defendants also reference the ethical violations that VADM Shelanski oversaw as Inspector General, but their reference lacks all specificity. *Id.*

The Defendants cannot provide the specificity required because VADM Shelanski's various positions with the Navy and general background does not support the Defendants' assertions that he is an expert in the Rules. The Secretary of the Navy delegates specific responsibilities of Navy Personnel. *See* Ex. B (ASECNAV INSTRUCTION 5430.7U, Assignment of Responsibilities and Authorities in the Office of the Secretary of the Navy). As that delegation of responsibilities makes clear, it is the General Counsel of the Navy, not the Inspector General,

6

who is responsible for "acquisition law," "acquisition-related security cooperation matters and acquisition integrity," and "ethics and standards of conduct." *See Id.* at 20. Furthermore, it is the General Counsel of the Navy, not the Inspector General, who serves as the "Designated Agency Ethics Official." *Id.* at 21. In contrast, the description of the Inspector General's role does not specifically mention any responsibilities related to ethics, acquisition/contracts, or the Navy's standards of conduct. *See* Ex. C (SECNAVINST 5430.57H, Mission and Functions of the Naval Inspector General). In fact, counteracting acquisition fraud, to include counteracting acquisitions involving bribery, is specifically delegated to the Assistant General Counsel for Acquisition Integrity ("AGC-AI"), *not* the Inspector General. *See* Ex. D (SECNAVINST 5430.92C, Assignment of Responsibilities to Counteract Acquisition Fraud, Wase, and Related Improprieties) at 2, 6. Indeed, the Inspector General is specifically instructed to notify the AGC-AI about matters involving alleged acquisition fraud as the AGC-AI is the "single point of contact for all contract fraud matters with the [Department of the Navy]." Ex. C at 5.

The United States Office of Government Ethics conducted a review of the Navy's ethics program between January and April 2017, which occurred during VADM Shelanski's tenure as the Navy's Inspector General, and summarized its findings in a report. *See* Ex. E (September 2017 Ethics Program Review). This report indicates:

> [O]verall responsibility for [the Department of the Navy's] ethics program rests with the Secretary of the Navy. The General Counsel of the Navy serves as the Designated Agency Ethics Official (DAEO) and the Judge Advocate General serves as the Alternate DAEO. The Assistant General Counsel for Ethics manages the day to day operation of the [Department of the Navy]-wide ethics program and is co-located with the Deputy Assistant Judge Advocate General (Administrative Law) who supports the Alternate DAEO. DON ethics officials believe this co-location of the [Assistant General Counsel (Ethics)] and Deputy Assistant Judge Advocate General (Administrative Law) facilitates consistency in the administration of the ethics program for both uniformed and civilian DON communities.

*Id.* at 3. Nowhere does the report mention that the Inspector General is responsible for the Navy's ethics program, indicating that VADM Shelanski would not have the extensive training and specialized knowledge required to designate him an expert on the Rules and allow him to accurately opine on the Rules. While the report acknowledges that the Inspector General conducts periodic reviews of the Navy's ethics program, the reviews "are a part of the Naval Inspector General's more comprehensive Command Inspection process and include a checklist of ethics-related requirements." *Id.* at 8. Being familiar with an ethics checklist is not the same as having the necessary deep and thorough understanding of the Rules that Rule 702 requires.

Furthermore, a review of VADM Shelanski's biography, which highlights his lengthy and distinguished career serving in many different positions, is completely devoid of any reference to ethics rules and policies, let alone any specialized training that he received in the Rules. *See* Ex. F (VADM Shelanski's Biography). In stark contrast, it is the role of the Assistant General Counsel of Ethics to explicitly "manage[] the day to day operation of the [Department of the Navy]-wide ethics program." Ex. E at 3.

The Navy's own delegation of power indicates that VADM Shelanski would not have any knowledge of, let alone expert knowledge of, contracting matters (including the ethics governing contracting matters), as even misconduct related to contracts was handled by the AGC-AI. As such, there is no reason to believe that VADM Shelanski has any knowledge of, let alone expert knowledge of, the intricacies of the contract between the Navy and Next Jump (or similar contracts), and what the Defendants, and Burke, knew or should have known.

Further underscoring VADM Shelanski's lack of expert knowledge in the Rules is that the proffered testimony contains opinions that are refuted by fact. For example, in the Defendants' Notice, they assert VADM Shelanski will testify that contractors "would not have the same

8

knowledge" as flag officers. Ex. A at 1. Yet as the evidence bore out during the first trial, Next Jump received ethics training from a government consultant and were specifically trained on rules governing conflicts-of-interest. *See e.g.*, GOVEX 150, 192, 194. As such, for VADM Shelanski to opine that government contractors generally—or Next Jump and the Defendants in particular—do not have the same knowledge as flag officers about ethical rules governing contracts—whether specifically delineated by the Navy or otherwise—is misleading at best. Moreover, even if VADM Shelanski were to testify as an expert, any testimony about the Defendants' state of mind and/or Burke's state of mind runs afoul of Rule 704(b) and must be precluded. *See United States v. Smart*, 98 F.3d 1379, 1388 (D.C. 1996) ("[I]t is now well-established that Rule 704(b) applies to all cases in which an expert testifies as to a mental state or condition constituting an element of the crime charged or defense thereto.")

In short, VADM Shelanski's Navy career, while undoubtedly impressive, does not make him an expert on the Rules and the Court should preclude him from testifying as an expert.

### b. VADM Shelanski's Lay Witness Testimony about the Rules is Irrelevant

The Court should also preclude VADM Shelanski from testifying as a lay witness on the Rules. While the Government solicited limited testimony about the Navy's ethics rules from lay witnesses at the first trial (both without objection and over objection), it was appropriately done so by witnesses with personal knowledge of conduct that is relevant to the charges in this case. For example, Agent Gardner provided nominal testimony about ethics rules in the context of the evidence he presented. Agent Gardner answered three questions about a publicly available Department of Defense Directive he personally reviewed that Burke mentioned in an email (on which, to be clear, VADM Shelanski was not included) to his assigned ethics counselor. *See* 08/22/25 AM Trial Trans. at 88:7-89:16 (Agent Gardner testifying about GOVEX 64). Agent

9

Gardner provided this relevant and admissible testimony to orient the jury as to what Burke was referring to in the admitted email—Agent Gardner did not elaborate on that directive. *Id*. As another example, Juliet Beyler provided limited testimony about her understanding of the Navy's ethics rules in her position as a senior executive, which shared the same obligations as "generals and flight officers," 8/19/25 PM Tr. Trans. at 84:21, and why the rules she and Burke were bound by required her to take certain actions, *see e.g., id.* at 92 (Ms. Beyler discussing what she would have done had she seen emails between Burke and the Defendants discussing a Navy contract and then Burke going to work at Next Jump); 08/19/25 AM Trial Trans. at 77:17-81:4 (Ms. Beyler discussing what was and was not discussed at a spring 2021 meeting and actions she would have taken had Burke told the Defendants he could be a "custodian" or an "ambassador" for Next Jump and there was no conflict for him to do so). Similarly, Admiral Brett Mietus provided limited testimony about the Navy's ethics rules to help explain why he took certain actions relevant to the charged bribery scheme. For example, he testified about an email he sent to a Next Jump employee (which was then forwarded to the Defendants) in which he wrote, "Given Admiral Burke's role and the upcoming contracting actions, it is best that Next Jump and he not have contact at this time." 08/20/25 PM Tr. Trans. at 26:1-30:20 (discussing GOVEX 11-A). Admiral Mietus explained that he had believed it was best the Defendants not have contact with Burke at that time "because of the ethical and contracting rules in place." *Id.* at 30:5-6.  Again, critically, the limited testimony from Ms. Beyler and Admiral Mietus was directly related to the facts of this case, was based on what they observed and the actions they took (or did not take) during the relevant tine period, and provided important context to assist the jury's assessment of otherwise-admissible fact testimony.

In contrast, VADM Shelanski was not even employed by the Navy at the time of the alleged bribery scheme.[2] Nor did he have any involvement in or knowledge of the events that form the basis of the charged offenses in this case. Indeed, as VADM Shelanski told the Government, the last time he had spoken to Burke was in 2021. Ex. G at 2. VADM Shelanski also told the Government that in June 2024, Next Jump asked him to reach out to the Secretary of the Navy and the Navy Inspector General on Next Jump's behalf, but he said no to the request. *Id.* at 3. As such, VADM Shelanski does not have any personal knowledge about any of the crimes alleged here— he was not involved in, consulted about, or otherwise aware of Burke's employment at Next Jump or Next Jump's 2022 contract with the Navy during the relevant time period. *Id.* Unlike Ms. Beyler and Admiral Mietus, VADM Shelanski cannot discuss actions he took or did not take that are relevant to the charged scheme. To allow VADM Shelanski to testify about the Rules would fly in the face of Rule 602's requirement that a lay witness have personal knowledge about the subject matter of his testimony. *See United States v. Lemire*, 720 F.2d 1327, 1347 (D.C. 1983).

### IV.    CONCLUSION

For the reasons discussed above, the Court should find that VADM Shelanski is not an expert on the Rules and further preclude him from testifying about the Rules as either an expert or lay witness.

//
//
//
//
//

---

[2] VADM Shelanski retired from the Navy in 2018. Ex. G at 1.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

_____/s/_____
Rebecca G. Ross
Brian P. Kelly
Sarah W. Ranney
Assistant United States Attorney
601 D Street N.W.
Washington, DC 20530
Office: (202) 252-4490